1  David M. Arbogast (SBN 167571)
   David@SpiroMoss.com
2  Ira Spiro (SBN 67641)
   Ira@SpiroMoss.com
3  **SPIRO MOSS BARNESS LLP**
   11377 W. Olympic Boulevard, Fifth Floor
4  Los Angeles, CA 90064-1683
   Phone: (310) 235-2468; Fax: (310) 235-2456
5
6  Paul R. Kiesel, Esq. (SBN 119854)          Jonathan Shub (SBN 237708)
   kiesel@kbla.com                            jshub@seegerweiss.com
7  Patrick DeBlase, Esq. (SBN 167138)         **SEEGER WEISS LLP**
   deblase@kbla.com                           1515 Market Street, Suite 1380
8  Michael C. Eyerly, Esq. (SBN 178693)       Philadelphia, PA 19107
   eyerly@kbla.com                            Phone: (215) 564-2300; Fax (215) 851-8029
9  **KIESEL BOUCHER LARSON LLP**
   8648 Wilshire Boulevard                    Jeffrey K. Berns, Esq. (SBN 131351)
10 Beverly Hills, California 90211            jberns@jeffbernslaw.com
   Phone: (310) 854-4444; Fax: (310) 854-0812 **LAW OFFICES OF JEFFREY K. BERNS**
11                                            19510 Ventura Boulevard, Suite 200
                                              Tarzana, California 91356
12                                            Phone: (818) 961-2000; Fax: (818) 867-4820

   Attorneys for Plaintiff and all others Similarly Situated

13

14                    **UNITED STATES DISTRICT COURT**

15           **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

16  BERTHA ROMERO, individually and on      )   **CASE NO. C-O7-04491 RS**
    behalf of all others similarly situated, )
17                                          )   **FIRST AMENDED CLASS ACTION**
                        Plaintiff,          )   **COMPLAINT FOR:**
18                                          )
                                            )   **(1)    Violations of the Truth in Lending Act, 15**
19           v.                             )          **U.S.C.A. §1601, *et seq*;**
                                            )
20                                          )   **(2)    Violation of Bus. & Prof. Code §17200, *et***
    FIRST MAGNUS FINANCIAL                  )          ***seq*. - "Unlawful" Business Practices**
21  CORPORATION and DOES 1 through 10       )          **(TILA);**
    inclusive,                              )
22                                          )   **(3)    Violation of Bus. & Prof. Code §17200, *et***
                        Defendants.         )          ***seq*. – "Unfair" and "Fraudulent" Business**
23                                          )          **Practices;**
                                            )
24                                          )   **(4)    Breach of Contract;**
                                            )
25                                          )   **(5)    Breach of the Covenant of Good Faith and**
                                            )          **Fair Dealing; and**
26                                          )
                                            )   **(6)    Violation of Bus. & Prof. Code  §17200, *et***
27  ───────────────────────────────────    )          ***seq*. – "Unlawful" Business Practices (Fin.**
                                            )          **Code § 22302).**
28
                                                **JURY TRIAL DEMANDED**

1    Plaintiff, BERTHA ROMERO, individually and on behalf of all others similarly situated alleges

2 as follows:

3

4    **I.**

5    **INTRODUCTION**

6    1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601, *et*

7 *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other

8 statutory and common law in effect.  Plaintiff BERTHA ROMERO, individually, and on behalf of all

9 others similarly situated, brings this action against PLAZA HOME MORTGAGE, INC. and DOES 1-10

10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose

11 to Plaintiff and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan

12 documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate

13 on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in

14 negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the

15 initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and

16 Class members would be paying on the Note(s).

17

18    **II.**

19    **THE PARTIES**

20    2.    Plaintiff, BERTHA ROMERO ("Plaintiff") is, and at all times relevant to this Complaint,

21 was an individual residing in San Jose, California.  On or about March 10, 2006, Plaintiff refinanced her

22 existing home loan and entered into an Option ARM loan agreement with Defendants.  The Option

23 ARM loan was secured by Plaintiff's primary residence.  Attached hereto as Exhibit 1 is a true and

24 correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

25    3.    Defendant FIRST MAGNUS FINANCIAL CORPORATION ("FIRST MAGNUS") is a

26 California corporation licensed to do, and is doing business in California.  At all relevant times hereto,

27 FIRST MAGNUS, was and is engaged in the business of promoting, marketing, distributing and selling

28 the Option Arm loans that are the subject of this Complaint.  FIRST MAGNUS transacts business in

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

Santa Clara County, California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including Santa Clara County, California. FIRST MAGNUS has significant contacts with Santa Clara County, California, and the activities complained of herein occurred, in whole or in part, in Santa Clara County, California.

4.    At all times mentioned herein, Defendants, and each of them, were engaged in the business of promoting, marketing, distributing, and selling the Option Arm loans that are the subject of this Complaint, throughout the United States, including Santa Clara County, California.

5.    Plaintiff is informed and believes, and thereon alleges that each and all of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately caused by the conduct of Defendants.

6.    Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

7.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

8.    Plaintiff is informed and believes, and thereon alleges, that Defendants, FIRST MAGNUS and DOES 1-10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

9.      Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action.  Plaintiff will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by Plaintiff herein.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time, and Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff alleges, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiff will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

11.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.

### III.
### JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28 U.S.C. § 1331.

13.     This Court has personal jurisdiction over the parties in this action by the fact that Defendants are either individuals who reside in this District within California or are corporations duly licenced to do business in California.

14.     Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendant because it regularly conducts business in this judicial district.

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

**IV.**

**FACTS COMMON TO ALL CAUSES OF ACTION**

15.     FIRST MAGNUS FINANCIAL CORPORATION ("FIRST MAGNUS") is one of the largest privately held mortgage companies in the United States.  FIRST MAGNUS sells a variety of home loans.  The ARM or adjustable rate mortgages are the loans that are the subject of this Complaint.

16.     The instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiff and the Class members, in writing, as required by law.

17.     This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

18.     Plaintiff, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiff and the Class is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low, fixed interest rate, when in fact Plaintiff and the Class were charged a different, much greater interest rate than promised.  Further, Defendants disguised from Plaintiff and the Class the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans.  Defendants' Option ARM loan includes a stiff and onerous prepayment penalty making it extremely difficult to extricate from the loans.

19.     The Option ARM loan Defendants sold to Plaintiff violates the Truth In Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiff and the Class.

20.     At all times relevant, Defendants promoted their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner.  Defendants promoted to the general

1   public a loan which would provide a very low, fixed interest rate for a period of three (3) to five (5)

2   years and no negative amortization.  Defendants used this "teaser" rate to lure Plaintiff into purchasing

3   Defendants' Option ARM loan product.  However, the low fixed rate was illusory, a false promise.

4   Plaintiff and others similarly situated did not receive the benefit of the low rate promised to them.  Once

5   signed on to Defendants' loan, the interest rate applied to Plaintiff's and Class members' loans was

6   immediately and significantly increased.

7       21.     Plaintiff and others similarly situated were consumers who applied for a mortgage loan

8   through Defendants.  During the loan application process, in each case, Defendants promoted,

9   advertised, and informed Plaintiff and the Class members that in accepting these loan terms, Plaintiff

10  would be able to lower their mortgage payment and save money.  Defendants initiated this scheme in

11  order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

12      22.     Based on the Defendants' representations, and the conduct alleged herein, Plaintiff and

13  Class members agreed to finance their primary residence through Defendants' Option ARM loan.

14  Plaintiff and Class members were told they were being sold a home loan with a low interest rate of

15  between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first

16  three (3) to five (5) years of the loan.  Defendants also informed Plaintiff, and Plaintiff was led to

17  believe, that if they made payments based on the promised low interest rate, which were the payments

18  reflected in the written payment schedule provided to them by Defendants, the loan was a no negative

19  amortization home loan.  Plaintiff's payments were to be applied to their principal loan balances as well

20  as to interest.

21      23.     After, the purported three (3) - five (5) year fixed interest period, Plaintiff and the Class

22  members reasonably believed, based on the representations contained in the documents Defendant

23  provided to Plaintiff and the Class members, that they would be able to refinance their loan and get a

24  new loan before their scheduled payments increased.  However, the payment schedule provided by

25  Defendants failed to disclose and by omission failed to inform these consumers that due to the negative

26  amortization that was purposefully built into these loans, Plaintiff and the Class members would be

27  unable to refinance their homes as their would be little or no equity left to refinance.

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

1      24.    Plaintiff believed these facts to be true because that is what the Defendants wanted

2  consumers to believe.  Defendants aggressively marketed their product as a fixed, low interest home

3  loan.  Defendants knew that if marketed in such a manner, their Option ARM loan product would be a

4  hugely popular and profitable product for them.  Defendants also knew, however, that they were

5  marketing their product in a false and deceptive manner.  While Defendants trumpeted their low, fixed

6  rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

7      25.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,

8  fixed interest rate.  Unbeknownst to Plaintiff and Class members, the actual interest rate they were

9  charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

10  documentation and was in fact considerably higher than going market rates.  And, after purchasing

11  Defendants' Option ARM loan product, Plaintiff and Class members did not actually receive the benefit

12  of the low, teaser rate at all in some cases, or at best, received that rate for only a single month.

13  Immediately, thereafter, Defendants in every instance and for every loan, increased the interest rate they

14  charged consumers.  The now-increased interest charges incurred by Plaintiff and Class members over

15  and above the fixed interest payment rate were added to the principal balance on their home loans in

16  ever increasing increments, substantially reducing the equity in these borrowers' homes.

17      26.    In stark contrast to this reality, Defendants, through the standardized loan contracts they

18  created and supplied to Plaintiff and the Class, stated that negative amortization was only a possibility

19  and would occur only if the payments were not sufficient.  Defendants concealed and failed to disclose

20  the fact that the loan as presented and designed, in fact, *guaranteed* negative amortization.  Defendants

21  failed to disclose and omitted the objectively material fact that negative amortization would occur if the

22  consumer followed the payment schedule set forth by Defendants in the loan documents.  This

23  information was objectively material and necessary for consumers to make an informed decision

24  because this would have revealed that the loan's principal balance would increase if the payment

25  schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the

26  prepayment penalty expired and/or by the time the interest and payment rates re-set.   In this respect,

27  Defendants utterly failed to place any warning on the Truth and Lending Disclosure Form about

28  negative amortization.

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

27.     At all times relevant, once Plaintiff and the Class members accepted Defendants' Option ARM loan, they had no viable option by which to extricate themselves because these Option ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

28.     The Option ARM loans sold by Defendants all have the following uniform characteristics:

(a)     There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiff into entering into the loan.  The rate offered was typically 1%-3%;

(b)     The loan has with it a corresponding low payment schedule.  The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low interest rate being offered;

(c)     The initial payments in the required disclosures were equal to the low interest rate being offered.  The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

(d)     The payment has a capped annual increase on the payment amount; and

(e)     The loan includes a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

29.     Defendants uniformly failed to disclose and by omission failed inform consumers, including Plaintiff and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the promised, advertised rate.

30.     Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiff and the Class members, that the payments set forth in Defendants' schedule of payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause the Plaintiff's and the Class members to lose the equity they have in their home.

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

1    31.    Defendants uniformly failed to disclose and by omission failed to inform consumers,

2  including Plaintiff and the Class members, that when the principal balance increased to a certain level,

3  they would no longer have the option of making the fixed interest payment amount.

4    32.    Disclosing whether a payment will result in negative amortization is of critical

5  importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest,

6  one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times

7  relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a

8  payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely

9  important material information.

10    33.    At all times relevant, Defendants, and each of them, knew or should have known, or were

11  reckless in not knowing, that: (i) the payment rate provided to Plaintiff and the Class members was

12  insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to

13  occur if Plaintiff and the Class members made payments according to the payment schedule provided by

14  Defendants; and (iii) that loss of equity and/or loss of Plaintiff's and the Class members residence was

15  substantially certain to occur if Plaintiff and the Class members made payments according to the

16  payment schedule provided by Defendants.

17    34.    In spite of its knowledge, Defendants marketed its ARM loans as product that would

18  provide Plaintiff and the Class members with a low interest rate for the first three (3) to five (5) years of

19  the loan, and at all times relevant, failed to disclose and/or concealed by making partial representations

20  of material facts when Defendants had exclusive knowledge of material facts that negative amortization

21  was certain to occur.  This concealed and omitted information was not known to Plaintiff and the Class

22  members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by

23  making such statements and partial, misleading representations to Plaintiff and all others similarly

24  situated.  Because the ARM loans did not provide a low interest rate for the first three (3) to five (5)

25  years of the Note and the payment rate disclosed by Defendants was insufficient to pay both principle

26  and interest, negative amortization occurred.

27    35.    The true facts about Defendants' ARM loans is that they do not provide the low interest

28  rate promised, and are certain to result in negative amortization.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

36.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences is that negative amortization or loss of equity will occur. Defendants are and at all times relevant hereto have been aware that the ability of the disclosed payment rate to pay both principle and interest so as to avoid negative amortization is one of the most important terms of a loan.

37.    To this day, Defendants continue to conceal material information from consumers, and the public, that: (i) the payment rate provided to Plaintiff and the Class members is and was insufficient to pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiff and the Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless, Defendants have refused to clearly and conspicuously disclose to Plaintiff and the Class members the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

38.    In the end, the harm caused by Defendants failures to disclose and omissions grossly outweighs any benefit that could be attributed to them.

39.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

40.    The ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

41.    The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiff and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

42.    Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

43.    Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would receive a home loan that would actually provide the low interest and payment rate for the first three (3) to five (5) years of the loan that is sufficient to pay both principle and interest.

44.    Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise marketed and sold these ARM loans throughout the United States, including the State of California.

## V.

## CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiff seeks to represent are defined as follows:

**The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

**The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff's complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

An appropriate sub-Class exists for the following Class Members:

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiff's complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiff reserves the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through

1   discovery, legal arguments advanced by Defendants or otherwise.

2      46.   <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members is

3   impracticable under the circumstances of this case.  While the exact number of Class members is

4   unknown at this time, Plaintiff is informed and believes that the entire Class or Classes consist of

5   approximately tens of thousands of members.

6      47.   <u>Commonality</u>: Common questions of law or fact are shared by the Class members.  This

7   action is suitable for class treatment because these common questions of fact and law predominate over

8   any individual issues.  Such common questions include, but are not limited to, the following:

9           (1)   Whether Defendants' acts and practices violate the Truth in Lending Act;

10          (2)   Whether Defendants' conduct violated 12 C.F.R. § 226.17;

11          (3)   Whether Defendants' conduct violated 12 C.F.R. § 226.19;

12          (4)   Whether Defendants engaged in unfair business practices aimed at deceiving

13                Plaintiff and the Class members before and during the loan application process;

14          (5)   Whether Defendants, by and through their officers, employees, and agents failed

15                to disclose that the interest rate actually charged on these loans was higher than

16                the rate represented and promised to Plaintiff and the Class members;

17          (6)   Whether Defendants, by and through their officers, employees and agents

18                concealed, omitted and/or otherwise failed to disclose information they were

19                mandated to disclose under TILA;

20          (7)   Whether Defendants failed to disclose the true variable nature of interest rates on

21                adjustable rate mortgage loans and adjustable rate home equity loans;

22          (8)   Whether Defendants failed to properly disclose the process by which negative

23                amortization occurs, ultimately resulting in the recasting of the payment structure

24                over the remaining lifetime of the loans;

25          (9)   Whether Defendants' failure to apply Plaintiff's and the Class members'

26                payments to principal as promised in the form Notes constitutes a breach of

27                contract, including a breach of the covenant of good faith and fair dealing;

28          (10)  Whether Defendants' conduct in immediately raising the interest rate on

-12-

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

1    consumers' loans so that no payments were made to the principal balance

2    constitutes breach of the covenant of good faith and fair dealing;

3    (11)    Whether Defendants' marketing plan and scheme misleadingly portrayed or

4    implied that these loans were fixed rate loans, when Defendants knew that only

5    the periodic payments were fixed (for a time) but that interest rates were not, in

6    fact, "fixed;"

7    (12)    Whether the terms and conditions of Defendants' Option ARM home loan are

8    unconscionable;

9    (13)    Whether Plaintiff and the Class are entitled to damages;

10   (14)    Whether Plaintiff and the Class members are entitled to punitive damages; and

11   (15)    Whether Plaintiff and the Class members are entitled to rescission.

12   48.    Typicality:  Plaintiff's claims are typical of the claims of the Class members.  Plaintiff

13   and the other Class members were subjected to the same kind of unlawful conduct and the claims of

14   Plaintiff and the other Class members are based on the same legal theories.

15   49.    Adequacy:  Plaintiff is an adequate representative of the Class because her interests do

16   not conflict with the interests of the other members of the Class Plaintiff seeks to represent.  Plaintiff has

17   retained counsel competent and experienced in complex class action litigation and Plaintiff intends on

18   prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately

19   protected by Plaintiff and her counsel.

20   50.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be

21   identified and located using information contained in Defendants' mortgage lending records.

22   51.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

23   23(b)(2), and 23(b)(3):

24   (a)    Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as

25   alleged herein, constitute a course of conduct common to Plaintiff and each Class

26   member.  Prosecution of separate actions by individual Class members would create a

27   risk of inconsistent or varying adjudications which would establish incompatible

28   standards of conduct for Defendants and/or substantially impair or impede the ability of

-13-

1    individual Class members to protect their interests;

2    (b)    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>:  Defendants, and each of

3        them, have acted or refused to act on grounds generally applicable to the Class, thereby

4        making final injunctive relief or corresponding declaratory relief with respect to the Class

5        as a whole appropriate; and

6    (c)    <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to the Class

7        members, including those identified above, predominate over questions affecting only

8        individual Class members (if any), and a class action is superior to other available

9        methods for the fair and efficient adjudication of the controversy.  Class action treatment

10        will allow a large number of similarly situated consumers to prosecute their common

11        claims in a single forum, simultaneously, efficiently, and without the unnecessary

12        duplication of effort and expense that numerous individual actions would require.

13        Further, an important public interest will be served by addressing the matter as a class

14        action.  The cost to the court system of adjudicating each such individual lawsuit would

15        be substantial.

16

17                                **VI.**

18                        **<u>FIRST CAUSE OF ACTION</u>**

19            **(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,**

20                        **(Against All Defendants)**

21    52.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

22    53.    15 U.S.C.A. §1601, *et seq*., is the Federal Truth in Lending Act ('TILA').  The Federal

23    Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12

24    C.F.R. §226 ) and its Official Staff Commentary.  Compliance by lenders with Regulation Z became

25    mandatory October 1, 1982.  Likewise, Official Staff Commentary issued by the Federal Reserve Board

26    is also binding on all lenders.

27    54.    The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R. § 226.1, which

28    reads:

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

1       **§226.1 Authority, purpose, coverage, organization, enforcement and**

2       **liability. . .**

3       (b)     Purpose.  The purpose of this regulation is to promote the informed

4       use of consumer credit by requiring disclosures about its terms and costs.

5       The regulation also gives consumers the right to cancel certain credit

6       transactions that involve a lien on a consumer's principal dwelling . . .

7     55.  Reg. Z also mandates very specific disclosure requirements regarding home loans with

8 which lenders, including Defendants, must comply:

9       **§ 226.17. General disclosure requirements.**

10       (a)  Form of disclosures. (1) The creditor shall make the disclosures

11       required by this subpart clearly and conspicuously in writing, in a form

12       that the consumer may keep. The disclosures shall be grouped together,

13       shall be segregated from everything else, and shall not contain any

14       information not directly related to the disclosures required under §

15       226.18.

16     56.  The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

17 borrowers will be able to compare more readily the various credit terms available to them and avoid the

18 uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

19 practices.

20     57.  Defendants' Option ARM loan violates TILA because Defendants failed to comply with

21 the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

22 Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or

23 accurately disclose the terms of the Option ARM loan to Plaintiff as Defendants were required to do

24 under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

25 / / /

26 / / /

27 / / /

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

58.     The TILA violations committed by Defendants are more specifically detailed as follows:

**A.      Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

59.     12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure mandates required of them concerning the interest rate Defendants actually applied to Plaintiff's and Class members' loans, as well as the interest actually charged to Plaintiff and the Class members.

60.     Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly different than the interest rate set forth by Defendants in the TILA Disclosure Form.  The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILA Disclosure Form.

61.     The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to the loan for a single month.  However, Defendants do not make clear in the Note or anywhere else that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiff) is only offered for the first thirty (30) days of the loan.  Defendants employ the most convoluted, confusing and circuitous methodology in describing the interest rate.  In one part of the Note, Defendants state that the promised low interest rate is the rate until the "change date."  A description of the change date is found in another part of the Note.  The convoluted and disjointed method employed by which Defendants provide this information makes it extremely difficult, if not impossible for anyone to determine that, in fact, that the change date corresponds to the very first monthly payment Plaintiff and the Class members made on their loans.

62.     The convoluted language used by Defendants to disclose the interest rate on Plaintiff's and the Class members loans is not clear and conspicuous.  Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and confuse Plaintiff and the Class members.  In particular, it is virtually impossible to discern when Plaintiff and the Class members would receive the low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that

Plaintiff and the Class members *never* received the low interest rate, or in some cases received it for only thirty days. Defendants promise of a low interest rate is and was wholly illusory and the deception, as alleged herein, was uniformly practiced on Plaintiff and Class members by Defendants to facilitate sales of their loans to consumers.

63.    The Note also sets forth the amount of Plaintiff's and Class members' initial monthly payments. That amount is equal to what the payment would be if the low interest rate promised to Plaintiff by Defendants was true and was being applied to the principal balance on the loans. This is a further deception committed by Defendants, because the real interest rate charged on the loans by Defendants is much higher than the low interest rate promised to Plaintiff and Class members. Thus, the payment amount provided by Defendants was intended to and did deceive consumers into falsely believing they would, in fact, receive the teaser interest rate promised to them.

64.    The TILA Disclosure Form is also confusing and deceptive for much the same reason. It shows the scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser" rate Plaintiff and Class members were promised. In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiff and the Class members on their loans.

65.    Defendants' failure to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiff's and Class members' loans, the Notes expressly state and/or implies that Plaintiff's and the Class members payments will pay off principal and interest on the loan. Based on the payment schedule provided by Defendants in the Note and TILA Disclosure Form, Plaintiff and the Class members were led to believe that they would be paying off both principal and interest on their loans by making payments according to the payment schedule. The contractual language in the Note only makes sense, and can only be true, if the promised low interest rate actually applied to Plaintiff's and the Class members loans was, in fact, the "teaser" rate promised by Defendants. Thus, Plaintiff and the Class members reasonably believed that the low rate promised to them would be applied to their loans. However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all. The payment schedule provided by Defendants only covered a portion of the interest Defendants charged Plaintiff and the Class members for these loans.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

66.     Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiff and the Class members, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

**B.     Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

67.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19.   Certain residential mortgage and variable-rate transactions.** . . .
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .
>
> (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover*. (Emphasis added.)

68.     These required disclosures must be made in the TILA Disclosure Form with the other disclosures.  The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and whether unpaid interest *is* being added to principal.

69.     In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps, that the disclosure required a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

1                ACTION: Final rule; official staff interpretation.

2                "For the program that gives the borrower an option to cap

3                monthly payments, the creditor must fully disclose the rules

4                relating to the payment cap option, including the effects of

5                exercising it (such as **negative amortization occurs** and

6                that the **principal balance will increase**)…" (Found at

7                C.F.R. § 226.19)

8      70.    At all times relevant, statutory and common law in effect make it unlawful for a lender,

9 such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as

10 Regulation Z and TILA.

11      71.    Defendants sold Plaintiff and the Class members an Option ARM loan which has a

12 variable rate feature with payment caps.  Defendants failed to include any reference on the TILA

13 Disclosure Form that there was negative amortization.  There is nothing that would indicate to anyone

14 that the loan schedule had negative amortization.  The payment schedule makes no reference to negative

15 amortization and makes it appear that the payments cover both principal and interest.

16      72.    In fact, the only place where Defendants even inferentially reference negative

17 amortization is in the Note.  However, they mention it in such a way as to make a reasonable person

18 believe that negative amortization is only a possibility, rather than a certainty.  And, these loans are, in

19 fact, designed in such a manner so as to make negative amortization an absolute certainty.

20      73.    This attempt at a disclosure did not actually serve to alert or inform the borrowers of

21 anything, much less clearly and conspicuously disclose that the payment schedule provided by

22 Defendants absolutely would not pay both principal and interest, and therefore would guarantee that

23 negative amortization was to occur on these loans.  Rather, Defendants made it appear that as long as the

24 payment schedule provided by Defendants was followed, there would be no negative amortization.

25      74.    So, even where any language is found describing negative amortization, the language is

26 misleading and deceptive.  In fact, Defendants' Option ARM loan was designed in such a way as to

27 guarantee negative amortization.  TILA demands more than a statement that the payment <u>could</u> be less

28 when Defendants were well aware that the payment is less, and would always be less, than the full

1   interest and principal.

2   **C.    Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

3   **Rate is Discounted Violates Truth in Lending Laws**

4   75.    As previously stated, the informed use of credit means being able to make decisions, as

5   well as being able to plan an individual's finances.  Every month consumers look at their income and

6   budget where their funds must be paid.  The biggest investment in one's life is generally that person's

7   home.  In fact, it is often referred to as "the American Dream" to own a home.

8   76.    Variable rate loans are based on a "margin" and an "index."  The index is often the Prime

9   Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically

10  it is the lender's profit on the loan.

11  77.    TILA and Regulation Z require disclosures to be clear and conspicuous so people

12  understand what their obligations are.  In particular, when the payment is not based on that index and

13  margin a separate disclosure is required.  Further, the disclosure must inform the borrower that the

14  payment they are making is not based on what the index and margin really should be in order to avoid

15  negative amortization.  The disclosure must also inform that interest rate and payment may go up and

16  clearly and conspicuously provide  the circumstances under which the rate and payment will increase.

17  78.    The Federal Reserve Board established disclosure requirements for variable rate loans.

18  26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

19  to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

20  payment changes, a creditor must disclose the frequency and timing of both types of changes.

21  79.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

22  Plaintiff and other consumers similarly situated need this information in order to budget their money.

23  They need to know if their house payments are going to go up so that they can plan for it.  If the change

24  comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

25  homes.

26  80.    Defendants, and each of them, state only that the interest rate *may* increase in the future.

27  However, an interest rate increase was in fact far more certain than this disclosure led Plaintiff and the

28  Class members to believe.  If Defendants had given the Plaintiff and the Class members the promised

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

1   low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any

2   change in the index. Thus, the increase in the interest rate on these loans was not just a possibility; it

3   was an absolute certainty and Defendants failed and omitted this material information in their

4   disclosures to Plaintiff and the Class members.

5        81.   Defendants disclosure statement provided that the interest rate may increase during the

6   term of this transaction if the index increases. This, however, was not the only circumstance that could

7   cause an increase in the interest rate. The Defendants, and each of them, failed to disclose that the initial

8   interest rate is discounted, creating the possibility of an increase even when the index did not rise. Due

9   to the initial discounted interest rate, the annual interest rate would increase if the index remained

10  constant, or even if the index declined. Because Defendants' disclosure failed to provide this extremely

11  important, material information, Defendants disclosure failed to meet the clear and conspicuous standard

12  mandated under TILA.

13       82.   Defendants failed to disclose to Plaintiff and the Class members that their rate was, with

14  100% certainty, going to increase, regardless of whether or not the index upon which their loans are

15  based changed. As such, Defendants violated TILA and Regulation Z with unclear, deceptive and

16  poorly drafted or intentionally misleading disclosure.

17       **D.   Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in**

18            **Lending Laws**

19       83.   Defendants provided Plaintiff and Class members with multiple, conflicting interest rates

20  when describing the costs of this loan. On the TILA Disclosure Form Defendants set forth one interest

21  rate, while on the Note, Defendants set forth one or two other, different interest rates.

22       84.   The official staff commentary to 226 C.F.R. § 17(C)(8) states:

23            *Basis of disclosures in variable-rate transactions*. The disclosures for a

24            variable-rate transaction must be given for the full term of the transaction

25            and must be based on the terms in effect at the time of consummation.

26            Creditors should base the disclosures only on the initial rate and should

27            not assume that this rate will increase. For example, in a loan with an

28            initial rate of 10 percent and a 5 percentage points rate cap, creditors

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

should base the disclosures on the initial rate and should not assume that this rate will increase 5 percentage points. **However, in a variable-rate transaction with a** seller buydown that is reflected in the credit contract, a consumer buydown, or **a discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.** (See the commentary to section 226.17(c) for a discussion of buydown, discounted, and premium transactions and the commentary to section 226.19(a)(2) for a discussion of the redisclosure in certain residential mortgage transactions with a variable-rate feature.)

85.     The reason for this requirement is clear.  Consumers cannot make informed decisions when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon Defendants to show the composite interest rate in effect so that the borrowers can understand exactly what they are paying for the loan.

86.     A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiff and Class members by Defendants is a discounted variable-rate loan.  Because Defendants failed to properly, clearly and conspicuously, disclose a composite annual percentage rate on these loans Defendants violated TILA and Regulation Z.

87.     As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiff and Class members have suffered injury an amount to be determined at time of trial.  If Defendants had not violated TILA and had instead properly disclosed the material terms of Defendants' Option ARM loan product, as alleged herein, Plaintiff and Class members would not have entered into the home loan agreements which are the subject of this action.  Because Defendants failed to make proper disclosures in violation of TILA, Plaintiff and Class members now seek redress in an amount and/or type as proven at time of trial.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

88.     WHEREFORE, Plaintiff and the Class members are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, *et seq.*, that Plaintiff and the Class have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640, attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiff's individual mortgage and those of any class member desirous of such relief, and for an order awarding other relief as the Court deems just and proper.

## VII.

## SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -**

**"Unlawful" Business Acts or Practices Predicated on Violations of TILA**

**(Against All Defendants)**

89.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

90.     Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

91.     Plaintiff asserts these claims as she is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq.*

92.     The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

93.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, *et seq.*

/ / /

1    94.    Defendants' unlawful business acts and/or practice as alleged herein have violated

2    numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

3    *seq*.  These predicate unlawful business acts and/or practices include Defendants failure to comply with

4    the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official

5    Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above,

6    Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan

7    to Plaintiff and the Class members as required under TILA.

8    95.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

9    advantage over their competitors.

10    96.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

11    them, received monies and continues to hold the monies expended by Plaintiff and others similarly

12    situated who purchased the ARM loans as described herein.

13    97.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a

14    constructive trust over, and restitution of, the monies collected and realized by Defendants.

15    98.    The unlawful acts and practices, as fully described herein, present a continuing threat to

16    members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiff and

17    other members of the general public have no other remedy of law that will prevent Defendants

18    misconduct as alleged herein from occurring and/or reoccurring in the future.

19    99.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff

20    and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and

21    the Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each

22    has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

23    competition.

24    100.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief,

25    including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

26    unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

27    injunction enjoining Defendants from their unlawful activity.

28    / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VIII.**

**THIRD CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200** *et seq.*,

**"Unfair" and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

101.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

102.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her capacity as a private attorney general against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

103.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

104.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices. The Plaintiff and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

105.    At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, marketed and sold Plaintiff and the Class members a deceptively devised financial product. Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendants marketed and advertised to the general public through brochures, flyers and other substantially identical marketing material, a loan which appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Further, Defendants disguised from Plaintiff and the Class members the fact that

1   Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

2       106.    Defendants lured Plaintiff and the Class members into the Option ARM loan with

3   promises of low fixed interest.  Once Plaintiff and the Class members entered into these loans,

4   Defendants switched the interest rate charged on the loans to a much higher rate than the one they

5   advertised and promised to Plaintiff and the Class members.  After entering these loans, Class members

6   could not escape because Defendants purposefully placed into these loans an extremely onerous

7   prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

8   these loans.  Thus, once on the hook, consumers could not escape from Defendants loans.

9       107.    Plaintiff and Class members were consumers who applied for a mortgage loan through

10  Defendants.  During the loan application process, in each case, Defendants uniformly promoted,

11  advertised, and informed Plaintiff and Class members that in accepting these loan terms, Plaintiff and

12  Class members would be able to lower their mortgage payment and save money.

13      108.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,

14  typically between 1% and 3%.  However, Defendants did not disclose that this was just a "teaser" rate,

15  the purpose of which was to get consumers to enter into loan agreements with Defendants.  Defendants

16  did not disclose to Plaintiff and the Class members that the "teaser" rate was not the fixed rate that

17  Defendants would actually charge Plaintiff and the Class members on their outstanding loan balances.

18      109.    Based on the Defendants' representations and conduct, Plaintiff and the Class members

19  agreed to finance their primary residence through Defendants' Option ARM loan.  Plaintiff and the

20  Class members were told they were being sold a home loan with a low interest rate, fixed for the first

21  three (3) to five (5) years of the loan.  Plaintiff and the Class members were also led to believe that if

22  they made payments based on this advertised interest rate, and the payment schedule provided to them

23  by Defendants, the loan was a no negative amortization home loan.  After, the fixed interest period,

24  Plaintiff and the Class members were told their rate "may" change.  And, Plaintiff believed they would

25  then be able to re-finance to another home loan.  Plaintiff and the Class members believed these facts to

26  be true because that is what the Defendants wanted consumers to believe, that is what Defendants led

27  consumers to believe.

28  / / /

110.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendants also knew, however, that they were marketing their product in a false and deceptive manner.  While Defendants trumpeted their low, fixed rate loans to the public, Defendants knew, however, that this was not entirely true.

111.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate.  Unbeknownst to Plaintiff and Class members, the actual interest rate they were charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product, Plaintiff and class members never actually received the benefit of the low advertised interest rate, or, in some cases, consumers received the low rate for just a single month.  Immediately, thereafter, Defendants in every instance and for every loan increased the interest rate they charged Plaintiff and the Class members.  Once Plaintiff and Class members accepted Defendants' Option ARM loan, they had no viable option to extricate themselves because of these loan agreements included a draconian pre-payment penalty.

112.    Defendants perpetrated a bait and switch scheme on Plaintiff and Class members.  Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

113.    The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

114.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

115.    Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

/ / /

116.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

117.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans as described herein.

118.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

119.    The harm to Plaintiff, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

120.    The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants ARM loans as described herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

121.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

122.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

/ / /

/ / /

/ / /

**IX.**

**FOURTH CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

123.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

124.    Plaintiff and Class members entered into a written home loan agreement – the contract or Note – with Defendants. The Note was drafted by Defendants and could not be modified by Plaintiff or Class members. The Note describes terms and respective obligations applicable to the parties herein.

125.    The Note describes Plaintiff's and Class members' interest rate on the loan as a low interest rate, typically between 1% and 3%. In addition, as required by federal law, the Defendants provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment schedule based on that low 1% to 3% interest rate. For the first three (3) to five (5) years the payment schedule shows that Plaintiff's and Class members' monthly payment obligations to Defendants are the exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest rate actually charged by Defendants on the loans was the low interest rate promised.

126.    Defendants drafted the Note and did not allow Plaintiff or the Class members any opportunity to make changes to the Note and due to Defendants superior bargaining position, the Note was offered on a take it or leave it basis. As such, the Notes at issue are contracts of adhesion.

127.    Defendants expressly and/or through their conduct and actions agreed that Plaintiff's and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans. Defendants breached this agreement and never applied any of Plaintiff's and the Class members' payments to principal.

128.    The written payment schedules prepared by Defendants, and applicable to Plaintiff's and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants did as promised, the payments would have been sufficient to pay both principal and interest amounts.

/ / /

1        129.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rates and

2   applied *no part* of Plaintiff's and Class members' payments were applied to the principal balances on

3   their loans.  In fact, because Defendants charged more interest than was agreed to and payments, as

4   disclosed by Defendants, were, at all times relevant, insufficient to cover the interest charge and thus

5   principal balances increased (which is the negative amortization built into the loan).

6        130.    Defendants breached the written contractual agreement by failing to apply any portion of

7   Plaintiff's and the Class members' monthly payments towards their principal loan balances.

8        131.    Plaintiff and the Class members, on the other hand, did all of those things the contract

9   required of them.  Plaintiff and the Class members made monthly payments in the amount required by

10  the terms of the Note and reflected in the payment schedule prepared by Defendants.

11       132.    As a result of Defendants' breach of the agreement, Plaintiff and the Class members have

12  suffered harm.  Plaintiff and Class members have incurred additional charges to their principal loan

13  balance.  Plaintiff and Class members have incurred and will continue to incur additional interest

14  charges on the principal loan balance and surplus interest added to Plaintiff's and Class members'

15  principal loan balance.  Furthermore, Defendants' breach has placed Plaintiff and Class members in

16  danger of losing their homes through foreclosure, as Defendants have caused Plaintiff's and Class

17  members' principal loan balances to increase and limited these consumers' ability to make their future

18  house payments or obtain alternative home loan financing.

19       133.    At all times relevant, there existed a gross inequality of bargaining power between the

20  parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

21  exploited their superior bargaining position and foisted upon Plaintiff and the Class members extremely

22  harsh, one-sided provisions in the contract, which Plaintiff and Class members were not made aware of

23  and did not comprehend (*e.g.*, Defendants fraud and failures to clearly and conspicuously disclose as

24  alleged herein), and which attempt to severely limit Defendants obligations under the contracts at the

25  expense of Plaintiff and Class members, as alleged herein.  As a result of these extremely harsh, one-

26  sided provisions, including but not limited to the provisions which seek to limit the "teaser" interest rate

27  for one month or less, these provisions are unconscionable and therefore unenforceable.

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

134.    WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief, compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## X.

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

135.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

136.    Defendants entered into written agreements with Plaintiff and Class members based on representations Defendants made directly and indirectly to Plaintiff and the Class members about the terms of their loans.

137.    Defendants expressly and impliedly represented to Plaintiff and the Class members that they would provide loans secured by Plaintiff's and Class members' homes, and that the loans would have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

138.    Defendants also represented that if Plaintiff and the Class members made the monthly payments in the amount prescribed by Defendants that no negative amortization would occur.  The Note expressly states and/or implies that Plaintiff's and Class members' monthly payment obligation **will** be applied to pay both principal and interest owed on the loan.  The Note further states that for each monthly payment Plaintiff and the Class members interest shall be paid before principal.

139.    The written payment schedules prepared by Defendants, and applicable to Plaintiff's and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised.  If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

140.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rate and applied *no part* of Plaintiff's and Class members' payment to principal.  In fact, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiff and the Class members'

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

1    payments were insufficient to cover the interest that Defendants charged resulting in an increase in the

2    amount of principal Plaintiff and the Class members owed on their homes.

3         141.    Defendants unfairly interfered with Plaintiff's and Class members' rights to receive the

4    benefits of the contract.  These loans will cost Plaintiff and Class members thousands of dollars more

5    than represented by Defendants.  Plaintiff and Class members did not receive the fixed low interest rate

6    home loan promised them by Defendants.  Defendants have caused Plaintiff and Class members to lose

7    equity in their homes and therefore have denied Plaintiff and Class members the enjoyment, security of

8    one of their most important investments.

9         142.    Plaintiff and Class members, on the other hand, did all of those things the contract

10   required of them.  Plaintiff and Class members made monthly payments in the amount required by the

11   terms of the Note and reflected in the payment schedule prepared by Defendants.

12        143.    At all times relevant, Defendants unreasonably denied Plaintiff and members of the Class

13   the benefits promised to them under the terms of the Note, including but not limited to a low interest rate

14   for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a payment

15   amount sufficient to pay both principle and interest so as to avoid negative amortization and the other

16   failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, et seq.,

17   Regulation Z and Official Staff Commentary issued by the Federal Reserve Board as alleged herein

18        144.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

19   and willfully breached the implied covenant of good faith and fair dealing by engaged in the acts and/or

20   omissions to mislead and/or deceive Plaintiff and others similarly situated as alleged herein.

21        145.    Defendants breaches, as alleged herein were committed with willful and wanton

22   disregard for whether or not Plaintiff or others similarly situated would actually receive a home loan that

23   would provide the promised low interest and payment rate for the first three (3) to five (5) years of the

24   loan sufficient to pay both principle and interest.

25        146.    Upon information and belief and at all times relevant, Defendants possessed full

26   knowledge and information concerning the above facts about the ARM loans, and otherwise marketed

27   and sold these ARM loans throughout the United States, including the State of California.

28   / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

147.    Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiff and the General Public.

148.    At all times relevant, Defendants' conduct, as alleged herein was malicious, oppressive, and/or fraudulent.

149.    As a result of Defendants' conduct, Plaintiff and Class members have suffered harm. Plaintiff and the Class members have incurred additional charges to their principal loan balance. Plaintiff and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's and Class members' principal loan balance.  Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiff and the Class members in danger of losing their homes through foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiff's and the Class members' principal loan balances to increase limiting these consumers' ability to make their future house payments or obtain alternative home loan financing.

150.    WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief, all damages proximately caused by Defendants breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XI.

## SIXTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., –**

**"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

**(Against All Defendants)**

151.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

152.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which prohibits all unlawful business acts and/or practices.

153.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq*.

154.    The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

155.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

156.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq*.  These predicate unlawful business acts and/or practices include Defendants violation of California Financial Code § 22302.

157.    California Financial Code § 22302 applies to consumer loan contracts.  It states that a loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be deemed to be a violation of Financial Code § 22302.

158.    The loan contracts prepared by Defendants and entered into between Plaintiff and Class members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

159.    The relative bargaining power between Plaintiff and Class members and Defendants was unequal.  Plaintiff and Class members could not negotiate or change any of the particular terms related to the loan and drafted by Defendants.  To secure the loan Plaintiff and Class members were given no choice but to make payments as described in the payment schedule and to accept and sign all the associating documents numbering over a hundred pages.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

160.    The period of time where Defendants offered Plaintiff and Class members a low interest rate, often was for only one month.  Because Defendants packaged the documents in such a manner as to lead Plaintiff and Class members to believe that they had a low interest rate and therefore low payments for three to five years, Plaintiff and Class members would end up owing significantly more than before they started and with a significant chance of losing their homes through foreclosure.

161.    Defendants drafted these loan documents for use on tens of thousands of individuals.  The loan process was such that individual terms could not be modified.  The documents evidencing the loan were delivered to Plaintiff and Class members at the time of signature.  The loan process offered by Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents at the time of execution.

162.    Defendants further inserted into the loan documents a prepayment penalty that has as it sole purpose to cause Plaintiff and Class members to continue under the terms of ther loans or lose thousands of dollars if Plaintiff try to refinance the loans.

163.    The loans as drafted by Defendants were so "one-sided" that they could only lead Plaintiff and Class members to one result, which was a significant loss of money.  As a result of Defendants' unconscionable behavior, Plaintiff and the Class members have suffered direct and actual injury.

164.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section 1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and constitutes a violation of the UCL.

165.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans as described herein.

166.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

167.    The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04491 RS

1   misconduct as alleged herein from occurring and/or reoccurring in the future.

2       168.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff

3   and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and

4   Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has

5   suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

6       169.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief,

7   including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

8   unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

9   a permanent injunction enjoining Defendants from their unlawful activity.

10

11                              **PRAYER FOR RELIEF**

12       WHEREFORE, Plaintiff and all Class members pray for judgment against each Defendant,

13   jointly and severally, as follows:

14       A.    An order certifying ther case as a class action and appointing Plaintiff and their counsel

15             to represent the Class;

16       B.    For actual damages according to proof;

17       C.    For compensatory damages as permitted by law;

18       D.    For consequential damages as permitted by law;

19       E.    For statutory damages as permitted by law;

20       F.    For punitive damages as permitted by law;

21       G.    For rescission;

22       H.    For equitable relief, including restitution;

23       I.    For restitutionary disgorgement of all profits Defendants obtained as a result of their

24             unfair competition;

25       J.    For interest as permitted by law;

26       K.    For Declaratory Relief;

27       L.    For a mandatory injunction requiring Defendants to permanently include in every Option

28             ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

1   interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. §

2   226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure

3   statement(s) that payments on the variable interest rate loan during the initial period at

4   the teaser rate will result in negative amortization and that the principal balance will

5   increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure

6   that the initial interest rate provided is discounted and does not reflect the actual interest

7   that Plaintiff and Class members would be paying on the Note(s).

8        M.    For reasonable attorneys' fees and costs; and

9        N.    For such other relief as is just and proper.

10  DATED: October 11, 2007                    **SPIRO MOSS BARNESS LLP**

11

12                              By:    _____/S/_____
                                       David M. Arbogast, Esq.
13                                     11377 W. Olympic Boulevard, Fifth Floor
                                       Los Angeles, CA 90064-1683
                                       Phone: (310) 235-2468; Fax:  (310) 235-2456
14
                                       Paul R. Kiesel, Esq.
15                                     Patrick Deblase, Esq.
                                       Michael C. Eyerly, Esq.
16                                     **KIESEL BOUCHER LARSON LLP**
                                       8648 Wilshire Boulevard
17                                     Beverly Hills, California 90210
                                       Phone:  (310) 854-4444; Fax:  (310) 854-0812
18
                                       Jonathan Shub, Esq.
19                                     **SEEGER WEISS LLP**
                                       1515 Market Street, Suite 1380
20                                     Philadelphia, PA 19107
                                       Phone: (215) 564-2300; Fax (215) 851-8029
21
                                       Jeffrey K. Berns, Esq.
22                                     **LAW OFFICES OF JEFFREY K. BERNS**
                                       19510 Ventura Blvd, Suite 200
23                                     Tarzana, California 91356
                                       Phone: (818) 961-2000; Fax:  (818) 867-4820
24
                                       Attorneys for Plaintiff and all others Similarly
25                                     Situated

26  / / /

27  / / /

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

3     DATED: October 11, 2007                **SPIRO MOSS BARNESS LLP**

4

5                                           By:     _____/S/_____
                                            David M. Arbogast, Esq.
6                                           11377 W. Olympic Boulevard, Fifth Floor
                                            Los Angeles, CA 90064-1683
7                                           Phone: (310) 235-2468; Fax: (310) 235-2456

8                                           Paul R. Kiesel, Esq.
                                            Patrick Deblase, Esq.
9                                           Michael C. Eyerly, Esq.
                                            **KIESEL BOUCHER LARSON LLP**
10                                          8648 Wilshire Boulevard
                                            Beverly Hills, California 90210
11                                          Phone: (310) 854-4444; Fax: (310) 854-0812

12                                          Jonathan Shub, Esq.
                                            **SEEGER WEISS LLP**
13                                          1515 Market Street, Suite 1380
                                            Philadelphia, PA 19107
14                                          Phone: (215) 564-2300; Fax (215) 851-8029

15                                          Jeffrey K. Berns, Esq.
                                            **LAW OFFICES OF JEFFREY K. BERNS**
16                                          19510 Ventura Blvd, Suite 200
                                            Tarzana, California 91356
17                                          Phone: (818) 961-2000; Fax:  (818) 867-4820

18                                          Attorneys for Plaintiff and all others Similarly
                                            Situated

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-O7-04491 RS

# Exhibit No. 1

LOAN NO.: 7515911204

MIN: 100039275159112045
MERS Phone: 1-888-679-6377

## ADJUSTABLE RATE NOTE
(MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

| JUNE 23, 2006 | SAN JOSE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

786 DORRIE AVENUE, SAN JOSE, CA 95116
[Property Address]

1.  **BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $      576,000.00       (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed  ONE HUNDRED FIFTEEN AND 000/1000THS  (    115.000    %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST**
    (A) Interest Rate
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      1.750      %. The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

    (B) Interest Rate Change Dates
    The interest rate I will pay may change on the      1st      day of      AUGUST, 2006      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

    (C) Index
    Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

    (D) Calculation of Interest Rate Changes
    Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding      THREE AND 575/1000THS      percentage point(s) (      3.575      %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than      9.950      %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

PayOption ARM Note - MTA Index                                                          Initials: _____
FE-5312 (0511)                              Page 1 of 5              LENDER SUPPORT SYSTEMS, INC. FE5312XX.CCU 12/05

00001

3.    PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the    1st    day of each month beginning on    AUGUST, 2006    .
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on    JULY 01, 2036    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 North Wilmot Road, TUCSON, AZ 85711
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    2,057.72
unless adjusted under Section 3(F).

(C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of    AUGUST, 2007    ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment"
is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change
Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest
due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to
pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have
the option to pay the Full Payment for my monthly payment.

(E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the
interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to    ONE HUNDRED FIFTEEN AND 000/1000THS    percent
(115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

00002

Minimum Payment and that my payment is increased. In the event that I decide that my paying my monthly payment would cause me to exceed that limit, I will have to pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:
(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii) Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

4.    NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of     FIFTEEN    ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000     % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

00003

B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all th interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me o delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8.  GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

10.  WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  SECURED NOTE
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
MARGARITA CASTRO                        -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                                -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                                -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                                -Borrower                                                      -Borrower

PayOption ARM Note - MTA Index
FE-5312 (0511)                                    Page 5 of 5

## FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Creditor:
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Borrower:
MARGARITA CASTRO

10451 DOUBLE R BLVD
RENO, NV 89521

786 DORRIE AVENUE
SAN JOSE, CA 95116
Loan Number: 7511911204

Date:    JUNE 23, 2006
Check box if applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | [ ] Total Sale Price The total cost of your purchase on credit including your down-payment of $ N/A |
|---|---|---|---|---|
| 7.991 % | $ 1,100,433.31 | $ 565,771.77 | $ 1,666,205.08 | $ N/A |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 12 | 2,057.72 | 08/01/2006 | | | | | | |
| 12 | 2,212.05 | 08/01/2007 | | | | | | |
| 12 | 2,377.95 | 08/01/2008 | | | | | | |
| 12 | 2,556.30 | 08/01/2009 | | | | | | |
| 4 | 2,748.02 | 08/01/2010 | | | | | | |
| 308 | 5,015.47 | 12/01/2010 | | | | | | |

THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM.

[ ] DEMAND FEATURE: This obligation has a demand feature.
[x] VARIABLE RATE: Your loan contains variable rate features.
   [ ] Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
   [x] Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate"). The rate that you will pay may not be changed more often than every ___ONE___ ___MONTH___ commencing ___08/01/2006___ .
      [ ] Rate Change Limits: The rate may not be changed by more than ___ ___ % on any one Rate Change Date.
      [x] The rate will never be greater than ___9.950___ %
      [ ] Any increase in the rate will result in a corresponding increase in the payment.
      [x] Rate increases may occur without immediate and/or corresponding payment increases.
      [x] Unpaid interest will be added to the principal.
      The "Index" (or "Reference Rate") is the:
THE TWELVE MONTH AVERAGE OF THE MONTHLY YIELDS ON UNITED STATES TREASURY SECURITIES, ADJUSTED TO A CONSTANT MATURITY OF ONE YEAR, AS MADE AVAILABLE BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

INSURANCE: The following insurance is required to obtain credit:
[ ] Credit life insurance and credit disability      [x] Property insurance      [ ] Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ] If you purchase [ ] property [ ] flood insurance from creditor you will pay $ ___ for one year term.
SECURITY: You are giving a security interest in:
   786 DORRIE AVENUE, SAN JOSE, CA 95116
[ ] The goods or property being purchased      [x] Real property you already own.
FILING FEES: $
LATE CHARGE: If a payment is more than  15  days late, you will be charged  5.00  % of the Principal & Interest payment.
PREPAYMENT: If you pay off early, you
[x] may   [ ] will not   have to pay a penalty.
[ ] may   [x] will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
[ ] may   [x] may, subject to conditions   [ ] may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
[ ] e means an estimate   [ ] all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[x] I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

___MARGARITA CASTRO___                              ___Date___

___                              ___Date___

___                              ___Date___

___                              ___Date___

000006