1  Lee A. Weiss (admitted *pro hac vice*)
   lweiss@dreierllp.com
2  Rebecca Tingey (admitted *pro hac vice*)
   rtingey@dreierllp.com
3  **DREIER LLP**
   499 Park Avenue
4  New York, NY 10022
   Phone: (212) 328-6100
5  Fax: (212) 328-6101

6  Paul R. Kiesel (SBN 119854)          David M. Arbogast (SBN 167571)
   kiesel@kbla.com                      darbogast@law111.com
7  Patrick DeBlase (SBN 167138)         Jeffrey K. Berns (SBN 131351)
   deblase@kbla.com                     jberns@law111.com
8  Michael C. Eyerly (SBN 178693)       **ARBOGAST & BERNS LLP**
   eyerly@kbla.com                      19510 Ventura Boulevard, Suite 200
9  **KIESEL BOUCHER LARSON LLP**        Tarzana, CA 91356
   8648 Wilshire Blvd.                  Phone: (818) 961-2000
10 Beverly Hills, CA 90211              Fax: (818) 867-4820
   Phone: (310) 854-4444
11 Fax: (310) 854-0812

12 Attorneys for Plaintiffs and all others similarly situated

13

14              UNITED STATES DISTRICT COURT

15      NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

16 BERTHA ROMERO, JAMES RUIZ,           ) **CASE NO. C-O7-04491 JW RS**
   MARGARITA CASTRO, TERESA             )
17 AGUILERA, GILBERT GOMEZ, and         ) **SECOND AMENDED CLASS ACTION**
   EDWARD TENORIO and DONNA TENORIO     ) **COMPLAINT FOR:**
18 individually and on behalf of all others similarly )
   situated,                           ) **(1)    Violations of the Truth in**
19                                      )        **Lending Act, 15 U.S.C. § 1601,**
                        Plaintiffs,     )        ***et seq***;
20                                      ) **(2)    Violation of Bus. & Prof. Code**
   v.                                   )        **§ 17200, *et seq.* - "Unlawful"**
21                                      )        **Business Practices (TILA);**
   COUNTRYWIDE BANK, N.A.,              ) **(3)    Fraudulent Omissions;**
22 COUNTRYWIDE HOME LOANS, INC.,        ) **(4)    Violation of Bus. & Prof. Code**
   HOMECOMINGS FINANCIAL LLC,           )        **§ 17200, *et seq.* – "Unfair" and**
23 WASHINGTON MUTUAL BANK, AURORA       )        **"Fraudulent" Business Practices;**
   LOAN SERVICES and DOES 6 through 10  ) **(5)    Breach of Contract; and**
24 inclusive,                           ) **(6)    Tortious Breach of the Covenant**
                                        )        **of Good Faith and Fair Dealing.**
25                      Defendants.     )
                                        )
26                                      ) **JURY TRIAL DEMANDED**
                                        )
27                                      )

28

1  Plaintiffs BERTHA ROMERO, JAMES RUIZ, MARGARITA CASTRO, TERESA

2  AGUILERA, GILBERT GOMEZ, EDWARD TENORIO and DONNA TENORIO, individually

3  and on behalf of all others similarly situated allege as follows:

## I.      INTRODUCTION

4

5      1.      This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601,

6  *et seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*, and

7  other statutory and common law in effect.  Plaintiffs individually, and on behalf of all others

8  similarly situated, bring this action against Countrywide Bank, N.A. (formerly named as Doe No.

9  1), Countrywide Home Loans, Inc. (formerly named as Doe No. 2), Homecomings Financial LLC

10 (formerly named as Doe No. 3), Washington Mutual Bank (formerly named as Doe No. 4), Aurora

11 Loan Services (formerly named as Doe No. 5), and Does 6-10 (collectively "Defendants"), based, in

12 part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs and Class members,

13 in Defendants' Option Adjustable Rate Mortgage ("Option ARM") loan documents, and in the

14 required disclosure statements accompanying the loans, (i) the actual interest rate on the loans, as

15 required by 12 C.F.R. § 226.18; (ii) that payments on the loans made according to the payment

16 schedule provided by Defendants will result in negative amortization and that the principal balance

17 on the loans would therefore increase, as required by 12 C.F.R. § 226.19; and (iii) that the initial

18 interest rate provided was discounted and did not reflect the actual interest that Plaintiffs and Class

19 members would be paying on the loans, as required by 12 C.F.R. § 226.19.

20     2.      By this action, Plaintiffs seek to obtain for themselves and for a Class of similarly

21 situated persons the remedies afforded to them by TILA and other laws.

## II.      THE PARTIES

22

23     3.      Plaintiff Bertha Romero is, and at all times relevant to this Complaint was, an

24 individual residing in San Jose, California.  On or about March 10, 2006, Plaintiff Romero

25 refinanced her existing home loan and entered into an Option ARM loan agreement with First

26 Magnus Financial Corporation ("First Magnus"). The Option ARM loan was secured by Plaintiff

27 Romero's primary residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note

28 and Truth in Lending Disclosure Statement ("TILDS") pertinent to this action.

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

4.     Plaintiff James Ruiz is, and at all relevant times to this Complaint was, an individual residing in San Bernadino, California. On or about December 7, 2006, Plaintiff Ruiz refinanced his existing home loan and entered into an Option ARM loan agreement with First Magnus. The Option ARM loan was secured by Plaintiff Ruiz's primary residence. Attached hereto as Exhibit 2 is a true and correct copy of the Note and TILDS pertinent to this action.

5.     Plaintiff Margarita Castro is, and at all relevant times to this Complaint was, an individual residing on San Jose, California. On or about June 23, 2006, Plaintiff Castro refinanced her existing home loan and entered into an Option ARM loan agreement with First Magnus. The Option ARM loan was secured by Plaintiff Castro's primary residence. Attached hereto as Exhibit 3 is a true and correct copy of the Note and TILDS pertinent to this action.

6.     Plaintiffs Teresa Aguilera and Gilbert Gomez are, and at all relevant times to this Complaint were, individuals residing in Lemon Grove, California. On or about August 17, 2006, Plaintiffs Aguilera and Gomez refinanced their existing home loan and entered into an Option ARM loan agreement with First Magnus. The Option ARM loan was secured by Plaintiffs' primary residence. Attached hereto as Exhibit 4 is a true and correct copy of the Note and TILDS pertinent to this action.

7.     Plaintiffs Edward Tenorio and Donna Tenorio are, and at all relevant times to this Complaint were, individuals residing in Temecula, California. On or about June 1, 2005, Plaintiffs refinanced their existing home loan and entered into an Option ARM loan agreement with First Magnus. The Option ARM loan was secured by Plaintiffs' primary residence. Attached hereto as Exhibit 5 is a true and correct copy of the Note and TILDS pertinent to this action.

8.     Plaintiffs Bertha Romero, James Ruiz, Margarita Castro, Teresa Aguilera, Gilbert Gomez, Edward Tenorio and Donna Tenorio shall hereinafter be referred to collectively as "Plaintiffs."

9.     Defendant Countrywide Bank, N.A. is a Delaware corporation, headquartered at 4500 Park Granada Blvd., Calabasas, California 91302. Upon information and belief, some or all of the loans that are the subject of this Complaint, including Plaintiffs' loans, or rights associated therewith (including servicing rights) were sold, transferred or assigned to Countrywide Bank, N.A.

1    At all relevant times hereto Countrywide Bank, N.A. was and is engaged in the business of

2    purchasing, owning and/or servicing Option ARM loans that are the subject of this Complaint.

3    Countrywide Bank, N.A. transacts business in Santa Clara County, California and at all relevant

4    times purchased, owned and/or serviced Option ARM loans throughout the United States, including

5    in Santa Clara County, California. Countrywide Bank, N.A. has significant contacts with Santa

6    Clara County, California, and the activities complained of herein occurred, in whole or in part, in

7    Santa Clara County, California.

8        10.    Defendant Countrywide Home Loans, Inc. is a New York corporation, headquartered

9    at 4500 Park Granada Blvd., Calabasas, California 91302. Upon information and belief, some of

10    the loans that are the subject of this Complaint, including Plaintiffs' loans, or rights associated

11    therewith (including servicing rights) were sold, transferred or assigned to Countrywide Home

12    Loans, Inc. At all relevant times hereto Countrywide Home Loans, Inc. was and is engaged in the

13    business of purchasing, owning and/or servicing Option ARM loans that are the subject of this

14    Complaint. Countrywide Home Loans, Inc. transacts business in Santa Clara County, California

15    and at all relevant times purchased, owned and/or serviced Option ARM loans throughout the

16    United States, including in Santa Clara County, California. Countrywide Home Loans, Inc. has

17    significant contacts with Santa Clara County, California, and the activities complained of herein

18    occurred, in whole or in part, in Santa Clara County, California.

19        11.    Countrywide Bank, N.A., and Countrywide Home Loans, Inc. are sometimes

20    referred to herein collectively as "Countrywide."

21        12.    Defendant Homecomings Financial LLC ("Homecomings") is a Delaware

22    corporation, headquartered at 8400 Normandale Lake Blvd., Minneapolis, Minnesota 55437. Upon

23    information and belief, some of the loans that are the subject of this Complaint, including Plaintiff

24    Ruiz's loan, or rights associated therewith (including servicing rights) were sold, transferred or

25    assigned to Homecomings. At all relevant times hereto Homecomings was and is engaged in the

26    business of servicing Option ARM loans that are the subject of this Complaint. Homecomings

27    transacts business in Santa Clara County, California and at all relevant times serviced Option ARM

28    loans throughout the United States, including in Santa Clara County, California. Homecomings has

1   significant contacts with Santa Clara County, California, and the activities complained of herein

2   occurred, in whole or in part, in Santa Clara County, California.

3         13.    Defendant Washington Mutual Bank ("Washington Mutual") is a Washington

4   corporation, headquartered at 1301 Second Avenue, Seattle, Washington 98101.  Upon information

5   and belief, some of the loans that are the subject of this Complaint, including Plaintiffs Teresa

6   Aguilera and Gilbert Gomez's loan, or rights associated therewith (including servicing rights) were

7   sold, transferred or assigned to Washington Mutual.  At all relevant times hereto Washington

8   Mutual was and is engaged in the business of servicing Option ARM loans that are the subject of

9   this Complaint.  Washington Mutual transacts business in Santa Clara County, California and at all

10  relevant times serviced Option ARM loans throughout the United States, including in Santa Clara

11  County, California.  Washington Mutual has significant contacts with Santa Clara County,

12  California, and the activities complained of herein occurred, in whole or in part, in Santa Clara

13  County, California.

14        14.    Defendant Aurora Loan Services ("Aurora") is a Delaware corporation,

15  headquartered at 10350 Park Meadows Drive, Littleton, Colorado 80124, and doing business in

16  California at all relevant times.  Upon information and belief, some of the loans that are the subject

17  of this Complaint, including Plaintiff Ruiz's loan, or rights associated therewith (including servicing

18  rights) were sold, transferred or assigned to Aurora.  At all relevant times hereto Aurora was and is

19  engaged in the business of servicing Option ARM loans that are the subject of this Complaint.

20  Aurora transacts business in Santa Clara County, California and at all relevant times serviced

21  Option ARM loans throughout the United States, including in Santa Clara County, California.

22  Aurora has significant contacts with Santa Clara County, California, and the activities complained

23  of herein occurred, in whole or in part, in Santa Clara County, California.

24        15.    At all times mentioned herein, Defendants, and each of them, were engaged in the

25  business of distributing, selling, purchasing, owning, and/or servicing the Option ARM loans that

26  are the subject of this Complaint, throughout the United States, including in Santa Clara County,

27  California.

28

16.     Plaintiffs are informed, believe, and thereon allege, that each and all of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the conduct of Defendants.

17.     Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants (both named and Doe defendants) sued herein was the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

18.     At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

19.     Plaintiffs are informed, believe, and thereon allege, that Defendants, and each of them, are performing, and at all material relevant times to this Complaint performed, the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, and have or are doing business in this judicial district.

20.     Plaintiffs are informed, believe, and thereon allege, that Does 6 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action.  Plaintiff alleges, on information and belief, that each Doe Defendant is responsible for the actions herein alleged. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 6 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs

1  therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend

2  this Complaint when the names of said Doe defendants have been ascertained.

3      21.    Plaintiffs are informed, believe, and thereon allege, that at all relevant times during

4  the liability period, Defendants, and each of them, including without limitation those Defendants

5  herein sued as Does, were acting in concert or participation with each other, or were joint

6  participants and collaborators in the acts complained of, and were the agents or employees of the

7  others in doing the acts complained of herein, each and all of them acting within the course and

8  scope of said agency and/or employment by the others, each and all of them acting in concert one

9  with the other and all together.

10                    **III.    JURISDICTION AND VENUE**

11      22.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601, *et seq.* and

12  28 U.S.C. § 1331.

13      23.    This Court has personal jurisdiction over the parties in this action by the fact that

14  Defendants reside in this District or are licensed to do and do business in California.

15      24.    Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b)

16  because a substantial part of the events and omissions giving rise to the claims occurred in this

17  district, and because there is personal jurisdiction in this district over the named Defendants because

18  they regularly conduct business in this judicial district.

19            **IV.    FACTS COMMON TO ALL CAUSES OF ACTION**

20      25.    The instant action arises out of residential mortgage loan transactions in which

21  Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs

22  and Class members, in writing, as required by law.

23      26.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts

24  or practices. Defendants engaged in a campaign of deceptive conduct and concealment aimed at

25  maximizing the number of consumers who would accept Option ARM loans in order to maximize

26  Defendants' profits, even as Defendants knew their conduct would cause many of these consumers

27  to lose their homes through foreclosure.

28

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

27.     Plaintiffs, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants. The Option ARM loan sold to Plaintiffs and Class members is a deceptively devised financial product. The loan has a variable rate feature with payment caps. The product was sold based on the promise of a low fixed payment resulting from a prominently featured low interest rate. In fact, Plaintiffs and Class members were charged a different, much greater interest rate than promised. Further, Defendants disguised from Plaintiffs and Class members that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur. Further still, once lured into these loans, consumers could not easily extricate themselves from the loans because Defendants included in the loans a stiff and onerous prepayment penalty making it extremely difficult, if not impossible, for borrowers to pay off the loans.

28.     The methods used by Defendants to sell the Option ARM loans to Plaintiffs and Class members violate TILA. TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans. Defendants failed to make these disclosures in connection with the Option ARM loans sold to Plaintiffs and the Class.

29.     At all relevant times, Defendants sold their Option ARM loan to consumers, including Plaintiffs, in a false or deceptive manner. Defendants represented to the general public that their Option ARM loan would provide a very low, fixed interest rate for a period of three to five years and no negative amortization. Defendants used this "teaser" rate to lure Plaintiffs into purchasing Defendants' Option ARM loan. However, the low fixed rate was illusory -- a false promise. Plaintiffs and others similarly situated did not receive the benefit of the low rate promised to them. Once signed on to Defendants' loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly increased.

30.     Plaintiffs and others similarly situated were consumers who applied for a mortgage loan through Defendants. During the loan application process, in each case, Defendants represented to Plaintiffs and Class members that in accepting these loan terms, they would be able to lower their

mortgage payments and save money. Defendants initiated this scheme in order to maximize the amount of loans it sold to consumers and to maximize their profits.

31. Based on Defendants' representations, and the misconduct alleged herein, Plaintiffs and Class members agreed to finance their primary residences through Defendants' Option ARM loan. Plaintiffs and Class members were told they were being sold a home loan with a low interest rate of typically between 1% and 3% (the "teaser" rate), and that the interest rate was fixed for the first three to five years of the loan. Defendants also informed Plaintiffs, and Plaintiffs were led to believe, that if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, that the loan was a no negative amortization home loan. Plaintiffs' payments were to be applied to their principal loan balance as well as to interest.

32. After the purported three to five year fixed interest period, Plaintiffs and Class members reasonably believed, based on the representations contained in the documents Defendants provided to Plaintiffs and Class members, that they would be able to refinance their loans and obtain a new loan before their scheduled payments increased. However, the payment schedule provided by Defendants failed to disclose to, and by omission failed to inform these consumers that due to the negative amortization that was purposefully built into these loans, Plaintiffs and Class members would be unable to refinance their loans as there would be little or no equity left to refinance, and indeed, the principal balance owed on the loan would be more than Plaintiff had originally borrowed.

33. Plaintiffs believed these facts to be true because that is what the Defendants wanted consumers to believe. Defendants aggressively positioned their product as a fixed, low interest home loan. Defendants knew that if it was positioned in such a manner, their Option ARM loan would be a hugely popular and profitable product for them. Defendants also knew, however, that they were selling the product in a false and deceptive manner. While Defendants trumpeted the low rate loans to the public, Defendants knew their promise of a low interest rate was illusory.

34. In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate. Unbeknownst to Plaintiffs and Class members, the actual interest rate they were

1   charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

2   documentation, and was in fact considerably higher than going market rates. And after purchasing

3   Defendants' Option ARM loan product, Plaintiffs and Class members did not actually receive the

4   benefit of the low, teaser rate at all in some cases, or at best, they received that rate for only a single

5   month.  Immediately thereafter, Defendants in every instance and for every loan, increased the

6   interest rate they charged to consumers. The now-increased interest charges incurred by Plaintiffs

7   and Class members over and above the fixed interest payment rate were added to the principal

8   balance on their home loans in ever increasing increments, substantially reducing the equity in these

9   borrowers' homes.

10          35.     In stark contrast to this reality, Defendants, through the standardized loan documents

11   they created and supplied to Plaintiffs and Class members, stated that negative amortization was

12   only a mere possibility. Defendants concealed and failed to disclose to Plaintiff and the Class the

13   fact that the loan, as presented and designed, in fact *guaranteed* negative amortization.  Defendants

14   failed to disclose and omitted the objectively material fact that negative amortization was absolutely

15   certain to occur if consumers followed the payment schedule listed by Defendants in the TILDS.

16   This information was objectively material and necessary for consumers to make an informed

17   decision because this would have revealed that the loan's principal balance would increase if the

18   payment schedule was followed, thereby rendering it impossible to refinance the loan at or around

19   the time the prepayment penalty expired and/or by the time the interest and payment rates re-set.  In

20   this respect, Defendants utterly failed to place any warning on the TILDS about negative

21   amortization.

22          36.     At all relevant times, once Plaintiffs and Class members accepted Defendants'

23   Option ARM loan contract, they had no viable option by which to extricate themselves because

24   these Option ARM loan agreements included a draconian pre-payment penalty for a period of up to

25   three years.

26          37.     The Option ARM loans sold by Defendants all have the following uniform

27   characteristics:

28

1        (a)     There is an initial low interest rate or "teaser" rate that was used to entice the

2   borrower into entering into the loan. The rate offered was typically 1%-3%;

3        (b)     The loan has a corresponding low payment schedule. The documentation

4   provided intended to misleadingly portray to consumers that the low payments for the first several

5   years were a direct result of the low interest rate being offered;

6        (c)     The initial payments in the required disclosures were precisely the amount

7   that would be required to pay both interest and principal in a fully amortized 30 year loan based

8   upon the low interest rate being offered. The purpose was to assure that if someone were to

9   calculate what the payment would be at the low offered interest rate, it corresponded to the payment

10   schedule. This portrayal was intended to further mislead consumers into believing that the

11   payments were enough to cover all principal and interest;

12        (d)     The payment has a capped annual increase on the payment amount; and

13        (e)     A substantial number of the loans include a prepayment penalty preventing

14   consumers from securing a new loan for a period of up to three years.

15        38.     Defendants uniformly failed to disclose to, and by omission failed to inform,

16   consumers, including Plaintiffs and Class members, in a clear and conspicuous manner, that the

17   "teaser" rate offered by Defendants was actually a discounted rate and only applied to the loans for

18   thirty (30) days. Thereafter, the true interest charged on the loans was significantly higher than the

19   promised rate.

20        39.     Defendants uniformly failed to disclose to, and by omission failed to inform,

21   consumers, including Plaintiffs and Class members, that the payments set forth in the TILDS were

22   insufficient to cover the actual charges and that this was, in fact, a loan that would cause Plaintiffs

23   and Class members to lose the equity they had in their homes.

24        40.     Defendants uniformly failed to disclose to, and by omission failed to inform,

25   consumers, including Plaintiffs and Class members, that when the principal balance increased to a

26   certain level, they would no longer have the option of making the fixed interest payment amount.

27        41.     Disclosing whether a payment will result in negative amortization is of critical

28   importance to consumers. If the disclosed payment rate is insufficient to pay both principal and

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

1   interest, one of the consequences of negative amortization is a loss of equity. Defendants, and each

2   of them, are, and at all relevant times hereto have been, aware that clear and conspicuous disclosure

3   of the actual interest rate and a payment rate sufficient to avoid negative amortization and the

4   concomitant loss of equity is extremely important, material information.

5       42.   At all relevant times, Defendants, and each of them, knew or should have known, or

6   were reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and Class members

7   was insufficient to pay both interest and principal; (ii) that negative amortization was substantially

8   certain to occur if Plaintiffs and Class members made payments according to the payment schedule

9   provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and Class members'

10  residences was substantially certain to occur if Plaintiffs and Class members made payments

11  according to the payment schedule provided by Defendants.

12      43.   In spite of their knowledge, Defendants sold their Option ARM loans as a product

13  that would provide Plaintiffs and Class members with a low interest rate for the first three to five

14  years of the loan, and at all relevant times, failed to disclose and/or concealed this information by

15  making partial representations of material facts when Defendants had exclusive knowledge of

16  material facts that negative amortization was certain to occur. This concealed and omitted

17  information was not known to Plaintiffs and Class members. Because the Option ARM loans did

18  not provide a low interest rate for the first three to five years of the Note and the payment amounts

19  set forth by Defendants were insufficient to pay both principal and interest, negative amortization

20  occurred.

21      44.   The true facts about Defendants' Option ARM loans are that they do not provide the

22  low interest rate promised, and they are certain to result in negative amortization.

23      45.   Disclosure of a payment rate that is sufficient to pay both principal and interest on

24  the loans is of critical importance to consumers. If the disclosed payment rate is insufficient to pay

25  both principal and interest, one of the consequences is that negative amortization or loss of equity

26  will occur. Defendants, and each of them are, and at all relevant times have been, aware that the

27  ability of the disclosed payment rate to pay both principal and interest so as to avoid negative

28  amortization is one of the most important terms of a loan.

46.     To this day, Defendants continue to conceal material information from consumers, and the public, that: (i) the payment amounts on the payment schedules provided to Plaintiffs and Class members are and were insufficient to pay both principal and interest; (ii) if the disclosed payment schedule is followed, Plaintiffs and Class members will suffer negative amortization; and (iii) loss of equity and/or loss of the property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless, Defendants have refused to clearly and conspicuously disclose to Plaintiffs and Class members the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

47.     In the end, the harm caused by Defendants' failures to disclose and omissions, as alleged herein, grossly outweighs any benefit that could be attributed to them.

48.     Knowing the truth and motivated by profit and market share, Defendants knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and all others similarly situated.

49.     Defendants' failure of disclosure regarding their Option ARM loans have resulted and will continue to result in significant loss and damage to Plaintiffs and Class members, including but not limited to the loss of equity these consumers have or had in their homes.

50.     The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase Option ARM loans in that Plaintiffs and Class members would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

51.     Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiffs and Class members would receive a home loan that would actually provide the low interest and payment rate, as promised, for the first three to five years of the loan that would be sufficient to pay both principal and interest.

52.     Upon information and belief, at all relevant times during the liability period, Defendants possessed full knowledge and information concerning the above facts about the Option

ARM loans, and nevertheless sold these Option ARM loans throughout the United States, including in the State of California.

## V.   CLASS ACTION ALLEGATIONS

53.   Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), and 23(b), and the case law thereunder. The class Plaintiffs seek to represent is defined as follows:

All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through First Magnus on their primary residence located in the United States of America (the "Class"). Excluded from the Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Appropriate sub-Classes exists for the following Class members:

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through First Magnus on their primary residence located in the United States of America. Excluded from the Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

All Class members whose loans or rights associated therewith (including servicing rights) were sold, transferred or assigned to Homecomings Financial LLC (the "Homecomings sub-class").

All Class members whose loans or rights associated therewith (including servicing rights) were sold, transferred or assigned to Washington Mutual Bank (the "Washington Mutual sub-Class").

All Class members whose loans or rights associated therewith (including servicing rights) were sold, transferred or assigned to Aurora Loan Services (the "Aurora sub-Class").

Plaintiffs reserve the right to amend or otherwise alter the definitions of the Class presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

54.     <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class consists of thousands of members.

55.     <u>Commonality</u>: Common questions of law or fact are shared by members of the Class. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

(1)     Whether Defendants' acts and practices violate the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*;

(2)     Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)     Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)     Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and Class members before and during the loan application process;

(5)     Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and Class members;

(6)     Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(7)    Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)    Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)    Whether Defendants' failure to apply Plaintiffs' and Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)   Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were made to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)   Whether Defendants' scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12)   Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

(13)   Whether Plaintiffs and the Class are entitled to damages;

(14)   Whether Plaintiffs and the Class are entitled to punitive damages; and

(15)   Whether Plaintiffs and the Class are entitled to rescission.

56.    Typicality: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class members are based on the same legal theories.

57.    Adequacy: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other members of the Class Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

58.    <u>Ascertainable Class</u>: The proposed Class is ascertainable in that the members can be identified and located using information contained in Defendants' records.

59.    This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

(a)    <u>Risk of Inconsistent Judgments</u>: The unlawful acts and practices of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and Class members. Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class members to protect their interests;

(b)    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>: Defendants, and each of them, have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

(c)    <u>Predominant Questions of Law or Fact</u>: Questions of law or fact common to Class members, including those identified above, predominate over questions affecting only individual Class members, if any, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be substantial.

## VI.    FIRST CAUSE OF ACTION

### VIOLATIONS OF TRUTH IN LENDING LAWS, 15 U.S.C. § 1601, *et seq.*

**(Plaintiffs Romero, Ruiz, Aguilera, Gomez, Edward Tenorio and Donna Tenorio against Defendants Countrywide Bank, N.A., Countrywide Home Loans, Inc. and Does 6-10)**

60.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

61.     This cause of action is brought by all Plaintiffs except Castro on behalf of themselves against Countrywide and Does 6-10.

62.     15 U.S.C. § 1601, *et seq.*, is the Federal Truth in Lending Act ("TILA"). The Federal Reserve Board of Governors implements TILA through Regulation Z (12 C.F.R. § 226) and its Official Staff Commentary ("FRB Commentary").  Compliance by lenders with Regulation Z became mandatory on October 1, 1982.  Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

63.     The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which reads:

**§226.1 Authority, purpose, coverage, organization, enforcement and liability. . .**

(a)     Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

64.     Regulation Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendants, must comply:

**§ 226.17. General disclosure requirements.**

(a) Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18.

65.     The purpose of TILA is to assure meaningful disclosure of credit terms so that borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect consumers against inaccurate and unfair credit billing practices.

66.     Defendants' Option ARM loan violates TILA because Defendants failed to comply with the disclosure requirements mandated by Regulation Z and FRB Commentary.  Defendants

1    failed in a number of ways to clearly, conspicuously and/or accurately disclose the terms of the

2    Option ARM loan to Plaintiffs and Class members as Defendants were required to do under TILA.

3    These violations are apparent on the face of the Note, the TILDS and other loan documents.

4         67.    The TILA violations committed by Defendants are more specifically detailed as

5    follows:

6    **A.    Defendants' Failure to Clearly and Conspicuously Disclose A Single APR Violates Truth in Lending Laws**

7         68.    15 U.S.C. § 1638(a)(4) requires lenders to disclose only one annual percentage rate

8    ("APR") and not an additional APR that is only applicable for the first 30 days of a loan.

9         69.    FRB Commentary to 12 C.F.R. § 226.17(C)-6 requires that the APR must "reflect a

10   composite annual percentage rate based on the initial rate for as long as it is charged and, for the

11   remainder of the term, the rate that would have been applied using the index or formula at the time

12   of consummation."

13        70.    15 U.S.C. § 1638(a)(8) and 12 C.F.R. § 226.18(e) also require lenders to provide a

14   descriptive explanation of the APR.

15        71.    12 C.F.R. § 226.18(e) defines "APR" as the cost of credit expressed as a yearly rate.

16        72.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require lenders to make disclosures

17   concerning the APR in a clear and conspicuous manner and a misleading disclosure is as much a

18   violation of TILA as a failure to disclose at all.

19        73.    In addition, FRB Commentary to § 226.17(a)(1)-1 provides that TILA's clear and

20   conspicuous requirement applies to the disclosure and explanation of the cost of the loan as an APR,

21   and where there is a contradiction between the TILDS and other information provided to the

22   borrower, the disclosure is unclear.

23        74.    At all relevant times during the liability period, Defendants provided Plaintiffs and

24   Class members with loan documents that list two completely different APRs.  For example, Plaintiff

25   Romero's Note states, at ¶ 2(A), "I will pay interest at a *yearly rate* of 1.500%."  However, in the

26   TILDS provided to Plaintiff Romero, in the box entitled "ANNUAL PERCENTAGE RATE" it

27   describes the APR as "[t]he cost of your credit as a *yearly rate*" and then lists an APR of "7.505%."

28   Plaintiff Ruiz's Note states, at ¶ 2(A), "I will pay interest at a yearly rate of 3.500%."  In the TILDS

provided to Plaintiff Ruiz, in the box entitled "ANNUAL PERCENTAGE RATE" it describes the APR as "[t]he cost of your credit as a *yearly rate*" and then lists an APR of "9.353%." Plaintiff Castro's Note states, at ¶ 2(A), "I will pay interest at a yearly rate of 1.750%." In the TILDS provided to Plaintiff Castro, in the box entitled "ANNUAL PERCENTAGE RATE" it describes the APR as "[t]he cost of your credit as a *yearly rate*" and then lists an APR of "7.991%." Plaintiffs Aguilera and Gomez's Note states, at ¶ 2(A), "I will pay interest at a yearly rate of 1.750%." In the TILDS provided to Plaintiffs Aguilera and Gomez, in the box entitled "ANNUAL PERCENTAGE RATE" it describes the APR as "[t]he cost of your credit as a *yearly rate*" and then lists an APR of "8.177%." And, Plaintiffs Edward Tenorio and Donna Tenorio's Note states, at ¶ 2(A), "I will pay interest at a *yearly rate* of 1.000%." However, in the TILDS provided to the Tenorios, in the box entitled "ANNUAL PERCENTAGE RATE" it describes the APR as "[t]he cost of your credit as a *yearly rate*" and then lists an APR of "5.786%." (emphasis added).

75.    At all relevant times during the liability period, Defendants violated 12 C.F.R. § 226.17(a)(1)-1 by listing two completely different APRs in the loan documents. In particular, for Plaintiff Romero, the TILDS lists an APR of "7.505%," while the Note lists an APR of "1.500%," for Plaintiff Ruiz, the TILDS lists an APR of "9.353%," while the Note lists an APR of "3.500%," for Plaintiff Castro, the TILDS lists an APR of "7.991%," while the Note lists an APR of "1.750%," for Plaintiffs Aguilera and Gomez, the TILDS lists an APR of "8.177%" while the Note lists an APR of "1.750%," and for Plaintiffs Edward Tenorio and Donna Tenorio, the TILDS lists an APR of "5.786%" while the Note lists an APR of "1.000%."

76.    At all relevant times during the liability period, Defendants failed to clearly and conspicuously explain in the Note or TILDS that the low APR (the same APR upon which Defendants based the written payment schedule provided to Plaintiffs and Class members) was only offered for the first thirty days of the loan.

77.    At all relevant times during the liability period, Defendants also failed to clearly, conspicuously and accurately disclose the APR that they charged Plaintiffs and Class members on their loans. Defendants also failed to disclose to, and by omission, failed to inform Plaintiffs and Class members that the APR listed in the TILDS was not the APR used to determine the first five

1    years of payments listed in the very same TILDS; rather, Defendants listed payments amounts for

2    the first five years of the loan based on the APR listed in the Note which was correct for *only* thirty

3    days.

4        78.    At all relevant times during the liability period, Defendants created and caused the

5    contradiction in the loan documents they provided to Plaintiffs and Class members by purposefully

6    disclosing two different APRs.

7    **B.    Defendants' Failure to Clearly and Conspicuously Disclose That the Payment
         Schedules Are Not Based on the APR Stated in the TILDS Violates TILA**

8

9        79.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

10    concerning the annual interest rate and payments in a clear and conspicuous manner.  Further, a

11    misleading disclosure is as much a violation of TILA as a failure to disclose at all.

12        80.    As for Plaintiffs' and Class members' Option ARM loans, Defendants violated 12

13    C.F.R. § 226.17 and 12 C.F.R. § 226.19 in that they failed to clearly and conspicuously disclose the

14    annual interest rate upon which the payments listed in the TILDS are based.

15        81.    The scheduled payment amounts and APR listed in the Note and TILDS for each of

16    the subject loans are unclear and inconspicuous.  In fact, the payment amounts for the first three to

17    five years are not based on the APR listed in the TILDS, but instead, were based upon an APR

18    listed in the Note that existed for only thirty days.

19        82.    At all relevant times, Defendants knowingly and intentionally included in each

20    TILDS, a schedule of payments which was not based upon the interest rate listed in these same

21    documents.  Defendants' failure to clearly and conspicuously disclose the payment amounts due

22    based on the listed APR was, and is, deceptive.

23        83.    Worse still, the other documents and representations supplied by Defendants

24    expressly and/or impliedly represented that Plaintiffs' payments would be applied to both principal

25    and interest.  That suggested that the payments listed on the TILDS were consistent with the interest

26    rate actually applicable to the loan, when they in fact were not.  In truth, if Plaintiffs made payments

27    according to the schedule provided in the TILDS, the payments were guaranteed to be insufficient

28

1   to pay the principal and interest on the loan, and thus, negative amortization was not just a mere

2   possibility, it was an absolute certainty.

3       84.   At all relevant times, Defendants failed to clearly and conspicuously disclose to

4   Plaintiffs and Class members that if they made payments according to the payment schedule set

5   forth in the TILDS, negative amortization was not just a mere possibility, it was an absolute

6   certainty.

7       85.   At all relevant times, Defendants purposefully and intentionally failed to disclose to

8   Plaintiffs and Class members the interest rate upon which the payment schedule was based and

9   thereby misled Plaintiffs and Class members into believing that they would be getting a loan with a

10  low fixed payment rate that would be sufficient to pay both interest and principal.

11      86.   At all relevant times, the payment amount provided by Defendants was intended to

12  and did deceive consumers into falsely believing that they would receive the low interest rate upon

13  which the payment schedule is based.  While the Note states the amount of Plaintiffs' initial

14  monthly payment, the initial monthly payment amounts stated in the Note and TILDS are not in any

15  way related to the interest rate listed in the Note and TILDS.

16      87.   Defendants employed the aforementioned bait-and-switch tactics on a common and

17  uniform class-wide basis.  In particular, had Defendants clearly and conspicuously disclosed a

18  payment amount sufficient to cover both principal and interest, the payment amounts would have

19  been almost double the payment amounts listed.

20      88.   The TILDS is also deceptive for much the same reason.  The TILDS list a schedule

21  of payments, yet for up to five years the listed payment amounts have no relation to, and are also

22  not based on, the annual interest rate listed in the TILDS.

23      89.   At all relevant times, Defendants failed to clearly, conspicuously, and accurately

24  disclose a payment amount that corresponds to the APR being charged on the loan and that was

25  sufficient to pay the true costs of the loan.  Plaintiffs and Class members reasonably believed that if

26  they made the payments according to Defendants' payment schedule, the payments would, in fact,

27  be paying off the loan.   However, the true fact is that the payment amounts stated in Defendants'

28

1 | payment schedule did not include any principal on the loans at all and only covered a portion of the

2 | interest Defendants were charging on these loans.

3 |      90.     FRB Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that

4 | disclosures be in a reasonably understandable form.  For example, while the regulation requires no

5 | mathematical progression or format, *the disclosures must be presented in a way that does not*

6 | *obscure the relationship of the terms to each other*…"  (emphasis added).

7 |      91.     At all relevant times, Defendants' Option ARM loans violated 12 C.F.R. §

8 | 226.17(a)(1) in that the amount of the payments, for the first several years of the loan term, bear no

9 | relationship to the interest rate listed in the TILDS.  Therefore, as a direct and proximate result, the

10 | form of disclosure used by Defendants obscured the relationship between the interest rate listed in

11 | the Note(s) and TILDS and the payment schedule provided.

12 |      **C.**     **Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

13 |

14 |      92.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for

15 | residential home loans:

16 |      Certain residential mortgage and variable-rate transactions. . . .

17 |      (b) Certain variable-rate transactions. If the annual percentage rate may increase after

18 |      consummation in a transaction secured by the consumer's principal dwelling with a

19 |      term greater than one year, the following disclosures must be provided at the time an

20 |      application form is provided or before the consumer pays a non-refundable fee,

21 |      whichever is earlier. . . (vii) *Any rules relating to changes in the index, interest rate,*

22 |      *payment amount, and outstanding loan balance including, for example, an*

23 |      *explanation of interest rate or payment limitations, negative amortization, and*

24 |      *interest rate carryover.* (emphasis added).

25 |      93.     The negative amortization disclosure is required and must be made clearly and

26 | conspicuously, and done in a manner that does not obscure its significance.  The disclosure must

27 | state whether the loan and payments established under the terms dictated by the lender is a negative

28 | amortizing loan.

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

94.     In 1995, and continuing each time new FRB Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, the disclosure requires a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the principal balance **will increase**)…" (Found at C.F.R. § 226.19) (emphasis added).

95.     At all relevant times, statutory and common law in effect make it unlawful for a lender, such as Defendants, to fail to comply with FRB Commentary as well as Regulation Z and TILA.

96.     The loans sold to Plaintiffs and Class members are Option ARM loans which have a variable rate feature with payment caps. Defendants failed to include any reference in the TILDS or in the Note that negative amortization would occur if Plaintiffs and Class members followed the payment schedule provided by Defendants.

97.     In fact, the only place in the Note where Defendants even inferentially reference negative amortization caused Plaintiffs and Class members to believe that negative amortization is only a mere possibility, rather than an absolute certainty. In fact, these loans were designed in such a way so as to make negative amortization an absolute certainty. And even when a separate explanation was provided, Defendants omitted the important material fact that these loans and payments schedules would, in fact, guarantee negative amortization.

98.     Defendants' statement in the Note, at ¶ 3(E) "my Minimum Payment *could* be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe ..." was a half truth and did not alert or inform Plaintiffs that the payment schedule provided by Defendants guaranteed that negative amortization was going to occur on these loans.  Rather, Defendants made it appear that as long as the payments were made according to the schedule listed in the TILDS, there would be no negative amortization.

99.     Defendants' statements in the Note, TILDS, and any other disclosures they provided, described negative amortization as only a mere possibility, and therefore were misleading, deceptive and inconsistent with the requirements of TILA.

**D.     Defendants' Failure to Clearly and Conspicuously Disclose the Legal Obligation Violates Truth in Lending Laws**

100.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal obligation between the parties."

101.    The FRB Commentary to 12 C.F.R. § 226.17(c)(1) requires that:  "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction. In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the disclosures are provided."

102.    This Commentary further states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."

103.    The FRB Commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."

104.    At all relevant times during the liability period, Defendants' Option ARM loans violated 12 C.F.R. § 226.17(c) in that the Note and TILDS did not disclose, and by omission failed to disclose, the amounts that Plaintiffs and Class members were legally obligated to pay.  In particular, borrowers' monthly obligations to Defendants (*i.e.,* the amount charged to them each

1    month under the Note) were much higher than Defendants' disclosures indicated. Defendants

2    accomplished this deception by only listing a partial payment in the TILDS, rather than a payment

3    amount that was sufficient to pay what these borrowers were being charged for their loans and were

4    legally obligated to pay.

5       105.    As a direct and proximate result of Defendants' omissions and failures to clearly and

6    conspicuously disclose Plaintiffs' and Class members' legal obligations under the loans, Defendants

7    took the partial payments and secretly added the deficit, each month, to principal, thereby causing

8    negative amortization to occur.

9       **E.**      **Defendants' Failure to Disclose the Composite APR Violates Truth in Lending Laws**

10

11       106.    Defendants provided Plaintiffs and Class members with multiple, conflicting annual

interest rates when describing the costs of this loan. On the TILDS, Defendants set forth one annual

12
interest rate, while on the Note, Defendants set forth a different annual interest rate.

13       107.    FRB Commentary to 12 C.F.R. § 226.17(c)(6) requires that the APR must "reflect a

14    composite annual percentage rate based on the initial rate for as long as it is charged and, for the

15    remainder of the term, the rate that would have been applied using the index or formula at the time

16    of consummation." It also provides that "in a variable rate transaction with a . . . discounted or

17    premium rate, *disclosures should not be based solely on the initial terms*. In those transactions, *the*

18    *disclosed annual percentage rate should be a composite rate* based on the rate in effect during the

19    initial period and the rate that is the basis of the variable rate feature for the remainder of the term."

20    (emphasis added).

21       108.    The reason for this requirement is clear. Consumers cannot make an informed

22    decision when they cannot compare the cost of credit to other proposals. It is therefore incumbent

23    upon Defendants to show the composite interest rate in effect so that the borrowers can understand

24    exactly what they will be paying for the loan.

25       109.    A lender violates TILA and Regulation Z by failing to list the composite annual

26    interest rate in variable rate loans that have a discounted initial rate. The Option ARM loan sold to

27    Plaintiffs and Class members by Defendants is a variable rate loan. At all relevant times during the

28

1  liability period, Defendants listed an annual interest rate in the Note that, in truth, would only be

2  provided for the first thirty to forty-five days of a thirty year loan, and would, with one hundred

3  percent certainty, be increased after that first month.  Because Defendants failed to clearly and

4  conspicuously disclose the composite annual percentage rate on these loans, and instead listed a

5  different interest rate in the documents provided to consumers, Defendants violated TILA and

6  Regulation Z, and failed to provide disclosures that did not obscure relevant information.

7  110.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.18 require lenders to make disclosures

8  concerning the interest rates applicable to home loans in a clear and conspicuous manner.  A

9  misleading disclosure is as much a violation of TILA as a failure to disclose.  Further, the

10  regulations require lenders to present the interest rate disclosures "in a way that does not obscure

11  the relationship of the terms to each other."  Defendants failed to meet the disclosure mandates

12  required of them concerning the APR they actually applied to Plaintiffs' and Class members' loans,

13  as well as the interest rate Defendants actually charged to Plaintiffs and Class members.

14  111.    Defendants' disclosure in the Note concerning the APR is, at best, unclear and

15  inconspicuous.  At worst, it is intentionally deceptive.  In either case, it is certainly different from

16  the APR set forth by Defendants in the TILDS.

17  112.    The APR set forth in the Note is the teaser rate that actually applied to the loan for

18  only one month.  At no time did Defendants make it clear in the Note or TILDS that this low

19  promised rate (the same rate upon which Defendants based the first three to five years of the written

20  payment schedule they provided to Plaintiffs and Class members) was absolutely certain to apply

21  only for the first thirty days of the loan.  Instead, Defendants used terms like "may" when discussing

22  potential interest rate increases, when in fact it was an absolute certainty that the interest rate listed

23  would only be provided for the first thirty days of the loan, and would be raised when the first

24  payment was due.

25  113.    Moreover, Defendants employed a convoluted, confusing and circuitous

26  methodology in the Note to describe the interest rates applicable to the loan.  In one part of the

27  Note, Defendants state that the promised low interest rate is the rate until the "change date."  A

28  description of the change date is found in another part of the Note.  A description of how the

interest rate is calculated on the change date is found in yet another part of the Note. This disjointed method employed by Defendants to provide this information to consumers makes it extremely difficult, if not impossible, for anyone to determine that the change date corresponds to the very first monthly payment Plaintiffs and Class members make on their loans and that the interest rate will certainly increase on that date.

114.   The convoluted language used by Defendants to disclose the interest rate on Plaintiffs' and Class members' loans is not clear and conspicuous. Rather, the disclosures used by Defendants were unclear and misleading. Defendants' promise of a low interest rate is and was wholly illusory and the deception, as alleged herein, was uniformly practiced on Plaintiffs and all Class members by Defendants to facilitate sales of these Option ARM loans to consumers.

115.   Defendants further concealed the APR applicable to the loan when they identified the amount of Plaintiffs' and Class members' initial monthly payments in the Note. The "initial monthly payments" amount figure is exactly equal to what the payments would be if the APR listed in the note as promised to Plaintiffs actually applied to the principal balance on the loans. By identifying "initial monthly payments" based upon the Note APR, rather than the Composite APR, Defendants made their "disclosures" regarding the interest rate applicable to the loan unclear, inconspicuous and confusing. Thus, the "initial monthly payments" amount provided by Defendants was unclear and deceptive as it caused consumers to believe that they would, in fact, receive the teaser interest rate promised to them.

116.   The payment schedule identified in the TILDS has the same effect. The TILDS lists monthly payment amounts for the first several years of the loan based on the low "teaser" rate. That payment schedule suggests that the low "teaser" rate is applied to the loan continuously throughout the first several years of the loan term. In truth, however, this payment schedule has no relation to the APR Defendants actually charged Plaintiffs and Class members on their loans. As a result, that payment schedule made Defendants' other "disclosures" regarding the interest rate applicable to Plaintiffs' and Class members' loans unclear, inconspicuous and confusing.

117.   Defendants failed to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiffs' loans. Defendants also failed to disclose to, and by omission failed to

1    inform Plaintiffs that the payment amounts listed in the payment schedule did not include any

2    amount for the principal on the loan and were in fact insufficient to pay all of the interest accruing.

3    Based on the payment schedule listed in the Note and TILDS, Plaintiffs and Class members

4    reasonably believed that the payments would be sufficient to meet the loan obligations in the Note.

5    However, the payment schedule provided by Defendants did not pay any principal on the loan and

6    only included a partial payment towards the interest Defendants charged Plaintiffs and Class

7    members for these loans.

8        118.    At all relevant times during the liability period, Defendants failed to clearly,

9    conspicuously and accurately disclose in the Note and TILDS a payment amount that was sufficient

10   to pay both principal and interest.  Plaintiffs reasonably believed that if they made the payments

11   according to Defendants' payment schedule, the payments would, in fact, be paying off both

12   principal and interest.  However, the payment amounts stated in Defendants' payment schedule did

13   not include any principal on the loans at all and were only a partial payment of the interest

14   Defendants were charging on these loans.

15   **F.    Defendants' Failure to Clearly and Conspicuously Disclose that the Initial**
     **Interest Rate is Discounted Violates TILA**
16

17       119.    Variable rate loans are based on a "margin" and an "index."  The index is often the

18   Prime Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over and

19   above that indexed rate.

20       120.    TILA and Regulation Z require that when the interest rate on a loan is a "discounted

21   rate" (*i.e.*, not based on the index and margin) a separate disclosure is required.  The disclosure must

22   also inform borrowers that, after the discounted rate falls away, the interest rate will increase and it

23   must conspicuously describe all of the circumstances under which the interest rate will increase.

24   Further, the disclosure must inform the borrower what the true cost of the loan is.

25       121.    The Federal Reserve Board has established disclosure requirements for variable rate

26   loans.  26 C.F.R. § 226.19 requires lenders to disclose the frequency of interest rate and payment

27   adjustments to borrowers.  If interest rate changes will be imposed more frequently or at different

28

1  intervals than payment changes, a creditor must disclose the frequency and timing of both types of

2  changes.

3       122.   Here, the Notes at issue only stated that the interest rate *may* increase in the future.

4  However, it was absolutely certain, not merely possible, that the interest rate would increase above

5  the initial, discounted interest rate.   The interest rate was guaranteed to go up after 30 days when

6  the discounted interest rate expired.   At all relevant times, Defendants failed to clearly,

7  conspicuously and unambiguously disclose this critical fact as required by law.

8       123.   Further violating TILA's disclosure requirements, Defendants' loan documents state

9  that the interest rate *may* increase during the term of this transaction if the index increases.   That

10 statement is incomplete and misleading, as an increase in the index was not the only thing that could

11 cause an increase in the interest rate.   Because the disclosed interest rate was discounted, it was

12 absolutely certain to increase even without any change in the index.   Thus, Defendants' disclosures

13 were unclear, inconspicuous, ambiguous and misleading in violation of TILA.

14      124.   Defendants failed to disclose to, and by omission, failed to inform, Plaintiffs and

15 Class members that the initial interest rate was discounted, and that it was absolutely certain to

16 increase even when the index did not rise.   Due to the initial discounted interest rate being listed at

17 between 1.0% to 3.5%, the interest rate would increase because the index and margin were several

18 points higher.   Even when Defendants did provide a disclosure that stated the initial payment was

19 not based on the index, they did so in a manner that was not clear and conspicuous.   Because the

20 loan documents failed to provide this extremely important material information in a clear and

21 conspicuous manner that did not obscure its importance, Defendants' disclosure failed to satisfy the

22 requirements of TILA.

23      125.   Defendants failed to disclose to Plaintiffs and Class members that their interest rate

24 was, with 100% certainty, going to increase, regardless of whether the index upon which their loans

25 are based changed.   As such, Defendants violated TILA and Regulation Z by providing Plaintiffs

26 and Class members with unclear, deceptive and poorly drafted or intentionally misleading

27 disclosures.

28

126.     Defendants also failed to disclose all of the ways by which the interest rate applicable to Plaintiffs' and Class members' loans could increase, in violation of TILA.

### G.     Defendants' Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws

127.     The Option ARM loans at issue contained a variable rate feature with an initial teaser rate with payment caps.  The payment cap is a limit on how much the payment may be increased annually.  Its purpose is to provide borrowers with a limit on how much their payment can increase from year to year.  The loans issued by Defendants had a 7.5% payment cap, which means that a borrower would only see their payment rise each year by a maximum of 7.5%. (*i.e.*, a $1,000 monthly payment in year one, could go to a $1,075 payment in year two).

128.     FRB Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii)  states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."  Thus, at all relevant times during the liability period, Defendants had a duty to Plaintiffs and Class members to disclose in the payment schedule of the TILDS the effect the payment cap would have on the loans.

129.     Defendants failed to disclose to, and by omission, failed to inform, Plaintiffs and Class members that the payment cap would cause hundreds, if not thousands, of dollars each month, to be secretly added to principal.

130.     As a direct and proximate result, Defendants failed to disclose to, and by omission failed to inform, Plaintiffs and Class members of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

131.     The violations of TILA and Regulation Z described in this Complaint are apparent on the face of the Note, TILDS and other disclosure documents provided to Plaintiffs and Class members because the disclosures provided can be determined to be incomplete or inaccurate by a comparison among the TILDS, the other disclosure statements, and the Note described herein.

132.     As a direct and proximate result of Defendants' violations of TILA, as alleged herein, Plaintiffs and Class members have suffered injury in an amount to be determined at time of trial. If Defendants had not violated TILA and had instead clearly and conspicuously disclosed the

1  material terms of Defendants' Option ARM loan, as alleged herein, Plaintiffs and Class members

2  would not have entered into the home loan contracts which are the subject of this action.  Because

3  Defendants failed to make the proper disclosures required under TILA, Plaintiffs and Class

4  members now seek redress in an amount and/or type as proven at time of trial.

5        133.   WHEREFORE, Plaintiffs and Class members are entitled to an order declaring that

6  Defendants violated TILA, 15 U.S.C. § 1601, *et seq.*, and that Plaintiffs and the Class have the right

7  to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys' fees, litigation costs and

8  expenses and costs of suit, and rescinding Plaintiffs' individual mortgages and those of any Class

9  member desirous of such relief, and for such other relief as the Court deems just and proper.

10                **VII.   SECOND CAUSE OF ACTION**

11  **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUS. & PROF. CODE**
   **§ 17200, *et seq.* - "UNLAWFUL" BUSINESS ACTS OR PRACTICES PREDICATED ON**
12  **VIOLATIONS OF TILA**

13  **(All Plaintiffs against Defendants Countrywide Bank, N.A., Countrywide Home Loans,**
   **Inc. and Does 6-10)**

14        134.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

15        135.   Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class

16  and in their capacity as private attorneys general against all Defendants for their unlawful business

17  acts and/or practices pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful

18  business acts and/or practices.

19        136.   Plaintiffs assert these claims as they are representatives of an aggrieved group and as

20  private attorneys general on behalf of the general public and other persons who have expended

21  funds that Defendants should be required to pay or reimburse under the equitable and restitutionary

22  remedies provided by Cal. Bus. & Prof. Code § 17200, *et seq.*,

23        137.   The unlawful acts and practices of Defendants alleged above constitute unlawful

24  business acts and/or practices within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

25        138.   By engaging in the above-described acts and practices, Defendants have committed

26  one or more acts of unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, *et*

27  *seq.*

28

139.    Defendants' unlawful business acts and/or practices as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of § 17200, *et seq.*  These predicate unlawful business acts and/or practices include Defendants' failure to comply with the disclosure requirements mandated by TILA, 15 U.S.C. § 1601, *et seq.*, Regulation Z and FRB Commentary.  And, as described in more detail above, Defendants also failed in a number of ways to clearly or accurately disclose the terms of the Option ARM loan to Plaintiffs as required under TILA.

140.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

141.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continue to hold the monies expended by Plaintiffs and others similarly situated who purchased the Option ARM loans as described herein.

142.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

143.    The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendants as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants' misconduct as alleged herein from occurring and/or reoccurring in the future.

144.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiffs and Class members have lost thousands if not millions of dollars of equity in their homes. Plaintiffs and Class members are direct victims of Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and has lost money or property as a result of Defendants' unfair competition.

145.    WHEREFORE, Plaintiffs and Class members are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts and practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

## VIII. THIRD CAUSE OF ACTION

## FRAUDULENT OMISSIONS

### (All Plaintiffs against Defendants Countrywide Bank, N.A., Countrywide Home Loans, Inc. and Does 6-10)

146.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

147.     As alleged herein, pursuant to TILA, 15 U.S.C. § 1601, *et seq.*, Regulation Z (12 C.F.R. § 226) and FRB Commentary, Defendants had a duty to disclose to Plaintiffs and each Class member: (i) the actual interest rate being charged on the Note; (ii) that negative amortization would occur and that the "principal balance *will* increase"; and (iii) that the initial interest rate on the note was discounted.

148.     Defendants further had a duty to disclose to Plaintiffs and each Class member, (i) the actual interest rate being charged on the Note; (ii) that negative amortization would occur and that the "principal balance *will* increase"; and (iii) that the initial interest rate on the Note was discounted, based upon Defendants' partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.

149.     Defendants did not disclose these facts that they had a duty to disclose.  Instead, they concealed them.

150.     The Notes state at ¶ 3(A) "I will make a payment every month" and "I will make these payments every month until I have paid all the Principal and Interest and any other charges … that I may owe under this Note."  The Notes then state at ¶ 3(D), while referencing the Payment Cap provision, "[t]his Payment Cap applies only to the Principal and Interest payment . . . "  And, in ¶ 7(A), under the heading "BORROWERS FAILURE TO PAY AS REQUIRED," the Notes state "[t]he amount of the charge will be 5.000% of *my overdue payment of Principal and Interest*." (emphasis added).  However, the truth was Plaintiffs' payments would not be and were not applied to both principal and interest because the payment rates Defendants provided were insufficient to pay both principal and interest.  In fact, the payment rates were not even sufficient to pay all of the interest, causing negative amortization to occur.

151.   The Notes further state, at ¶ 3(E) that "my Minimum Payment *could be less* than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal..." And, "[f]or each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal..." (emphasis added). However, the payment schedules provided by Defendants in the TILDS were absolutely incapable of covering the amount of interest due and therefore these statements were false in that they omitted this material fact.

152.   The Notes list an interest rate and a payment amount based on that initial interest rate. However, the TILDS given to Plaintiffs and Class members and never corrected by any of the Defendants includes a schedule of payments which includes that initial payment rate, but discloses a different interest rate. In truth, the payment schedule stated in the TILDS is wholly unrelated to the true interest rate being charged on the loans and, at all relevant times during the liability period, Defendants failed to disclose to, and by omission failed to inform, Plaintiffs and Class members of this important material information.

153.   The aforementioned omitted information was not known to Plaintiffs and Class members. At all relevant times, Defendants failed to disclose and/or actively concealed it by making such statements and partial, misleading representations alleged herein to Plaintiffs and Class members. Because the Option ARM loans did not provide a low interest rate for the first three to five years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principal and interest, negative amortization occurred.

154.   Defendants, and each of them, failed to disclose to, and by omission failed to inform, Plaintiffs and Class members that: (i) the payment rate provided to Plaintiffs and Class members on the TILDS was insufficient to pay both principal and interest; (ii) negative amortization was absolutely certain to occur if Plaintiffs and Class members made payments according to the payment schedule provided by Defendants; and (iii) loss of equity and/or loss of Plaintiffs' and Class members' residences was substantially certain to occur if Plaintiffs and Class members made payments according to the payment schedule provided by Defendants.

155.   As alleged herein, Defendants had a duty to disclose to Plaintiffs and Class members, and at all relevant times, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to, (i) that the disclosed interest was not the actual interest rate charged on the Note; (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted.  The concealed and omitted information was not known to Plaintiffs and Class members.  Because the Option ARM loans did not provide a low interest rate for the first three to five years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principal and interest, negative amortization occurred.

156.   From the inception of the Option ARM loan scheme until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiffs and Class members, regarding the true facts concerning the actual interest rate charged on the loans, that negative amortization that was certain to occur, and that the initial interest rate was discounted, all of which Defendants were duty bound to clearly and conspicuously disclose to Plaintiffs and Class members in the TILDS.

157.   Defendants have known from the inception of their Option ARM loan scheme that these loans: (i) do not provide the promised initial interest rate for the first three to five years of the Note, (ii) that negative amortization would occur and that Plaintiffs' and Class members' principal balances would increase, and (iii) that the initial interest rate was discounted and did not accurately reflect the interest that consumers were being charged on the loans.

158.   Defendants purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan for the first three to five years of the Note and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principal and interest.

159.   The omitted information, as alleged herein, was material to Plaintiffs and Class members.  Had the information been disclosed, Plaintiffs and Class members would not have entered into the loans.

160.    As a direct and proximate result of Defendants' failures to disclose and omission of material facts, as alleged herein, Plaintiffs and Class members have suffered damages, which include, but are not limited to, the loss of equity Plaintiffs and Class members had in their homes prior to entering these loans.

161.    The wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiffs and Class members.  Accordingly, Plaintiffs and Class members seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the future.

162.    WHEREFORE, Plaintiffs and Class members are entitled to all legal and equitable remedies provided by law, including but not limited to actual damages, exemplary damages, prejudgment interest and costs.

## IX.    FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUS. & PROF. CODE § 17200, *et seq.*, "UNFAIR" AND "FRAUDULENT" BUSINESS ACTS OR PRACTICES

#### (All Plaintiffs against Defendants Countrywide Bank, N.A., Countrywide Home Loans, Inc. and Does 6-10)

163.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

164.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class and in their capacity as private attorneys general against all Defendants for their unlawful business acts and/or practices pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits all unfair and/or fraudulent business acts and/or practices.

165.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by Cal. Bus. & Prof. Code § 17200, *et seq.*

166.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts and on the duty to refrain from unfair and deceptive business practices.  Plaintiffs and Class members hereby seek to enforce a general proscription of

1  unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim

2  is predicated on duties that govern anyone engaged in any business and anyone contracting with

3  anyone else.

4      167.  At all relevant times, Defendants engaged in a pattern of deceptive conduct and

5  concealment aimed at maximizing the number of borrowers who would accept their Option ARM

6  loan.  Defendants, and each of them, sold Plaintiffs and Class members a deceptively devised

7  financial product.  Defendants sold their Option ARM loan product to consumers, including

8  Plaintiffs, in a false or deceptive manner.  Defendants represented to the general public through

9  brochures, flyers and other substantially identical materials, a loan which appeared to have a very

10  low, fixed interest rate for a period of three to five years and no negative amortization.  Further,

11  Defendants disguised from Plaintiffs and Class members the fact that Defendants' Option ARM

12  loan was designed to, and did, cause negative amortization to occur.

13      168.  Defendants lured Plaintiffs and Class members into the Option ARM loan with

14  promises of low fixed interest rates.  Once Plaintiffs and Class members entered into these loans,

15  Defendants switched the interest rate charged on the loans to a much higher rate than the one they

16  advertised and promised to Plaintiffs and Class members.  After entering these loans, Plaintiffs and

17  Class members could not escape because Defendants purposefully included in these loans an

18  extremely onerous prepayment penalty that made it prohibitively expensive for consumers to

19  extricate themselves from these loans.

20      169.  Plaintiffs and Class members were consumers who applied for a mortgage loan

21  through Defendants.  During the loan application process, in each case, Defendants uniformly

22  represented to Plaintiffs and Class members that in accepting these loan terms, Plaintiffs and Class

23  members would be able to lower their mortgage payments and save money.

24      170.  Defendants represented their Option ARM loan as having a low fixed interest rate,

25  *i.e.*, typically between 1% and 3%.  However, Defendants did not disclose that this was just a

26  "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with

27  Defendants.  Defendants did not disclose to Plaintiffs and Class members that the "teaser" rate was

28

1   not the fixed rate that Defendants would actually charge Plaintiffs and Class members on their

2   outstanding loan balances.

3       171.    Based on Defendants' representations and conduct, Plaintiffs and Class members

4   agreed to finance their primary residences through Defendants' Option ARM loans.  Plaintiffs and

5   Class members were told they were being sold a home loan with a low interest rate, fixed for the

6   first three to five years of the loan.  Plaintiffs and Class members were also led to believe that if

7   they made payments based on this advertised interest rate, and the payment schedule provided to

8   them by Defendants, the loan was a no negative amortization home loan.  After the fixed interest

9   period, Plaintiffs and Class members were told that their rate "may" change.  Plaintiffs and Class

10  members believed that they would then be able to re-finance to another home loan.  Plaintiffs and

11  Class members believed these facts to be true because that is what Defendants led consumers to

12  believe.

13      172.    Defendants aggressively sold their Option ARM product as a fixed low interest rate

14  home loan.  Defendants knew that if positioned in such a manner, their Option ARM loan product

15  would be a hugely popular and profitable product for them.  Defendants also knew, however, that

16  they were selling their product in a false and deceptive manner.  While Defendants trumpeted their

17  low, fixed rate loans to the public, Defendants knew, however, that this was not entirely true.

18      173.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,

19  fixed interest rate.  Unbeknownst to Plaintiffs and Class members, the actual interest rate they were

20  charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product,

21  Plaintiffs and Class members never actually received the benefit of the low advertised interest rate,

22  or, in some cases, consumers received the low rate for just a single month.  Immediately thereafter,

23  Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs

24  and Class members.  Once Plaintiffs and Class members accepted Defendants' Option ARM loan,

25  they had no viable option to extricate themselves because these loan agreements included a

26  draconian pre-payment penalty.

27      174.    Defendants perpetrated a bait and switch scheme on Plaintiffs and Class members.

28  Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

1  describing the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated

2  this scheme in order to maximize the amount of the loans issued to consumers and to maximize

3  Defendants' profits.

4      175.    The acts, misrepresentations, omissions, and practices of Defendants alleged above

5  constitute unfair, and/or fraudulent business acts and/or practices within the meaning of Cal. Bus. &

6  Prof. Code § 17200, *et seq.*

7      176.    By engaging in the above described acts and practices, Defendants have committed

8  one or more acts of unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, *et*

9  *seq.*

10     177.    Defendants' conduct, as fully described above, was likely to deceive members of the

11  consuming public, and at all times, Defendants' failures to disclose and omission of material facts

12  have been and continue to be unfair, fraudulent, untrue and/or deceptive.

13     178.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

14  advantage over their competitors.

15     179.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

16  them, received monies and continue to hold the monies expended by Plaintiffs and others similarly

17  situated who purchased the Option ARM loans as described herein.

18     180.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition

19  of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

20     181.    The harm to Plaintiffs, members of the general public and others similarly situated

21  outweighs the utility of Defendants' policies, acts and/or practices, and consequently, Defendants'

22  conduct herein constitutes an unlawful business act or practice within the meaning of Cal. Bus. &

23  Prof. Code § 17200, *et seq.*

24     182.    The unfair, deceptive and/or fraudulent business practices of Defendants, as fully

25  described herein, present a continuing threat to members of the public to be misled and/or deceived

26  by Defendants' Option ARM loans as described herein.  Plaintiffs and other members of the general

27  public have no other remedy at law that will prevent Defendants' misconduct as alleged herein from

28  reoccurring in the future.

183.     As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and has lost money or property as a result of Defendants' unfair competition.

184.     WHEREFORE, Plaintiffs and Class members are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

## X.     FIFTH CAUSE OF ACTION

## BREACH OF CONTRACT

**(All Plaintiffs against Defendants Countrywide Bank, N.A., Countrywide Home Loans, Inc. and Does 6-10)**

185.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

186.     Plaintiffs and Class members entered into written home loan agreements – the contract or Note – with First Magnus, which agreements were subsequently sold or assigned to Countrywide Bank, N.A. and Countrywide Home Loans, Inc.  Additionally, Countrywide Bank, N.A. and Countrywide Home Loans, Inc. serviced or service the loans at issue here and, in that capacity, are responsible for enforcing the provisions of the Notes relevant to this claim and applying Plaintiffs' and Class members' payments in the manner required by the notes.

187.     The Notes were drafted by Defendants and could not be modified by Plaintiffs or Class members due to Defendants' superior bargaining position.  The Notes were offered to Plaintiffs and the Class on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.  The Notes describes terms and respective obligations applicable to the parties herein.

188.     The Notes describes Plaintiffs' and Class members' interest rate on the loan as a low interest rate, typically between 1% and 3%.  In addition, as required by federal law, Defendants provided a TILDS concerning the home loan agreement that shows a payment schedule based on

1  that low 1% to 3% interest rate. For the first three to five years the payment schedule shows that

2  Plaintiffs' and Class members' monthly payment obligations to Defendants are the exact payments

3  necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest

4  rate actually charged by Defendants on the loans was the low interest rate promised.

5        189.    Defendants expressly and/or through their conduct and actions impliedly agreed that

6  Plaintiffs' and Class members' monthly payment obligations would be sufficient to pay and would

7  be applied to pay both the principal and interest owed on the loans. Defendants breached this

8  agreement and never applied any of Plaintiffs' and Class members' payments to principal.

9        190.    The written payment schedules provided to Plaintiffs reinforced the promise that

10  Plaintiffs' and Class members' payments would be applied to both principal and interest. Those

11  scheduled show that the payment amounts owed by Plaintiffs and Class members in year one are

12  exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on

13  the loan was the low interest rate promised. Had the Defendants done as promised, the payments

14  would have been sufficient to pay both principal and interest.

15        191.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rates

16  and applied *no part* of Plaintiffs' and Class members' payments to the principal balances on their

17  loans. In fact, because Defendants charged more interest than was agreed to, the payments, as

18  disclosed by Defendants, were insufficient to cover the interest charge, and thus principal balances

19  increased (which is the negative amortization built into the loan).

20        192.    Defendants breached the written contractual agreement by failing to apply any

21  portion of Plaintiffs' and Class members' monthly payments towards their principal loan balances.

22        193.    Plaintiffs and Class members, on the other hand, did all of the things that the contract

23  required of them. Plaintiffs and Class members made monthly payments in the amount required by

24  the terms of the Note and reflected in the payment schedule prepared by Defendants.

25        194.    As a result of Defendants' breach of the agreement, Plaintiffs and Class members

26  have suffered harm. Plaintiffs and Class members have incurred additional charges to their

27  principal loan balance. Plaintiffs and Class members have incurred and will continue to incur

28  additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and

1  Class members' principal loan balance. Furthermore, Defendants' breach has placed Plaintiffs and

2  Class members in danger of losing their homes through foreclosure, as Defendants have caused

3  Plaintiffs' and Class members' principal loan balances to increase and limited these consumers'

4  ability to make their future house payments or obtain alternative home loan financing.

5       195.   At all relevant times, there existed a gross inequality of bargaining power between

6  the parties to the Option ARM loan contracts. At all relevant times, Defendants unreasonably and

7  unconscionably exploited their superior bargaining position and foisted upon Plaintiffs and Class

8  members extremely harsh, one-sided provisions in the contract, which Plaintiffs and Class members

9  were not made aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and

10  conspicuously disclose as alleged herein), and which attempted to severely limit Defendants'

11  obligations under the contracts at the expense of Plaintiffs and Class members, as alleged herein. As

12  a result of these extremely harsh, one-sided provisions, including but not limited to the provisions

13  which limit the "teaser" interest rate for one month or less, these provisions are unconscionable and

14  therefore unenforceable.

15       196.   WHEREFORE, Plaintiffs and Class members are entitled to declaratory relief,

16  compensatory damages proximately caused by Defendants' breach of contract as alleged herein,

17  pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

18       **XI.    SIXTH CAUSE OF ACTION**

19       **BREACH OF CONTRACT**

20       **(Plaintiff Ruiz against Defendant Homecomings Financial LLC)**

21       197.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

22       198.   This cause of action is brought by Plaintiff Ruiz against Homecomings on behalf of

23  himself and all members of the Homecomings sub-class.

24       199.   Plaintiff and Class members entered into written home loan agreements – the

25  contract or Note – with First Magnus, which agreements were subsequently sold or assigned to

26  Countrywide Bank, N.A. and Countrywide Home Loans, Inc. Homecomings serviced or services

27  the loans at issue here and, in that capacity, is responsible for enforcing the provisions of the Notes

28

1  relevant to this claim and applying Plaintiff's and Class members' payments in the manner required

2  by the notes.

3      200.    The Notes were drafted by Defendants and could not be modified by Plaintiff or

4  Class members due to Defendants' superior bargaining position.  The Notes were offered to

5  Plaintiff and the Class on a take it or leave it basis.  As such, the Notes at issue are contracts of

6  adhesion.  The Notes describes terms and respective obligations applicable to the parties herein.

7      201.    The Notes describes Plaintiff's and Class members' interest rate on the loan as a low

8  interest rate, typically between 1% and 3%.  In addition, as required by federal law, Defendants

9  provided a TILDS concerning the home loan agreement that shows a payment schedule based on

10  that low 1% to 3% interest rate.  For the first three to five years the payment schedule shows that

11  Plaintiff's and Class members' monthly payment obligations to Defendants are the exact payments

12  necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest

13  rate actually charged by Defendants on the loans was the low interest rate promised.

14      202.    Defendants expressly and/or through their conduct and actions impliedly agreed that

15  Plaintiff's and Class members' monthly payment obligations would be sufficient to pay and would

16  be applied to pay both the principal and interest owed on the loans.  Defendants breached this

17  agreement and never applied any of Plaintiff's and Class members' payments to principal.

18      203.    The written payment schedules provided to Plaintiff reinforced the promise that

19  Plaintiff's and Class members' payments would be applied to both principal and interest.  Those

20  scheduled show that the payment amounts owed by Plaintiff and Class members in year one are

21  exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on

22  the loan was the low interest rate promised.  Had the Defendants done as promised, the payments

23  would have been sufficient to pay both principal and interest.

24      204.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rates

25  and applied *no part* of Plaintiff's and Class members' payments to the principal balances on their

26  loans. In fact, because Defendants charged more interest than was agreed to, the payments, as

27  disclosed by Defendants, were insufficient to cover the interest charge, and thus principal balances

28  increased (which is the negative amortization built into the loan).

205.   Defendants breached the written contractual agreement by failing to apply any portion of Plaintiff's and Class members' monthly payments towards their principal loan balances.

206.   Plaintiff and Class members, on the other hand, did all of the things that the contract required of them.  Plaintiff and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

207.   As a result of Defendants' breach of the agreement, Plaintiff and Class members have suffered harm.  Plaintiff and Class members have incurred additional charges to their principal loan balance.  Plaintiff and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's and Class members' principal loan balance.  Furthermore, Defendants' breach has placed Plaintiff and Class members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiff's and Class members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

208.   At all relevant times, there existed a gross inequality of bargaining power between the parties to the Option ARM loan contracts. At all relevant times, Defendants unreasonably and unconscionably exploited their superior bargaining position and foisted upon Plaintiff and Class members extremely harsh, one-sided provisions in the contract, which Plaintiff and Class members were not made aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously disclose as alleged herein), and which attempted to severely limit Defendants' obligations under the contracts at the expense of Plaintiff and Class members, as alleged herein. As a result of these extremely harsh, one-sided provisions, including but not limited to the provisions which limit the "teaser" interest rate for one month or less, these provisions are unconscionable and therefore unenforceable.

209.   WHEREFORE, Plaintiff and Class members are entitled to declaratory relief, compensatory damages proximately caused by Defendants' breach of contract as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XII.   SEVENTH CAUSE OF ACTION

## BREACH OF CONTRACT

**(Plaintiffs Teresa Aguilera and Gilbert Gomez against Defendant Washington Mutual Bank)**

210.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

211.   This cause of action is brought by Plaintiffs Teresa Aguilera and Gilbert Gomez against Washington Mutual on behalf of themselves and all members of the Washington Mutual sub-Class.

212.   Plaintiffs and Class members entered into written home loan agreements – the contract or Note – with First Magnus, which agreements were subsequently sold or assigned to Countrywide Bank, N.A. and Countrywide Home Loans, Inc.  Washington Mutual serviced or services the loans at issue here and, in that capacity, is responsible for enforcing the provisions of the Notes relevant to this claim and applying Plaintiffs' and Class members' payments in the manner required by the notes.

213.   The Notes were drafted by Defendants and could not be modified by Plaintiffs or Class members due to Defendants' superior bargaining position.  The Notes were offered to Plaintiffs and the Class on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.  The Notes describes terms and respective obligations applicable to the parties herein.

214.   The Notes describes Plaintiffs' and Class members' interest rate on the loan as a low interest rate, typically between 1% and 3%.  In addition, as required by federal law, Defendants provided a TILDS concerning the home loan agreement that shows a payment schedule based on that low 1% to 3% interest rate.  For the first three to five years the payment schedule shows that Plaintiffs' and Class members' monthly payment obligations to Defendants are the exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest rate actually charged by Defendants on the loans was the low interest rate promised.

215.   Defendants expressly and/or through their conduct and actions impliedly agreed that Plaintiffs' and Class members' monthly payment obligations would be sufficient to pay and would be applied to pay both the principal and interest owed on the loans.  Defendants breached this agreement and never applied any of Plaintiffs' and Class members' payments to principal.

216.   The written payment schedules provided to Plaintiffs reinforced the promise that Plaintiffs' and Class members' payments would be applied to both principal and interest. Those scheduled show that the payment amounts owed by Plaintiffs and Class members in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. Had the Defendants done as promised, the payments would have been sufficient to pay both principal and interest.

217.   Instead, Defendants immediately raised Plaintiffs' and Class members' interest rates and applied *no part* of Plaintiffs' and Class members' payments to the principal balances on their loans. In fact, because Defendants charged more interest than was agreed to, the payments, as disclosed by Defendants, were insufficient to cover the interest charge, and thus principal balances increased (which is the negative amortization built into the loan).

218.   Defendants breached the written contractual agreement by failing to apply any portion of Plaintiffs' and Class members' monthly payments towards their principal loan balances.

219.   Plaintiffs and Class members, on the other hand, did all of the things that the contract required of them. Plaintiffs and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

220.   As a result of Defendants' breach of the agreement, Plaintiffs and Class members have suffered harm. Plaintiffs and Class members have incurred additional charges to their principal loan balance. Plaintiffs and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members' principal loan balance. Furthermore, Defendants' breach has placed Plaintiffs and Class members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

221.   At all relevant times, there existed a gross inequality of bargaining power between the parties to the Option ARM loan contracts. At all relevant times, Defendants unreasonably and unconscionably exploited their superior bargaining position and foisted upon Plaintiffs and Class members extremely harsh, one-sided provisions in the contract, which Plaintiffs and Class members

1   were not made aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and

2   conspicuously disclose as alleged herein), and which attempted to severely limit Defendants'

3   obligations under the contracts at the expense of Plaintiffs and Class members, as alleged herein. As

4   a result of these extremely harsh, one-sided provisions, including but not limited to the provisions

5   which limit the "teaser" interest rate for one month or less, these provisions are unconscionable and

6   therefore unenforceable.

7          222.    WHEREFORE, Plaintiffs and Class members are entitled to declaratory relief,

8   compensatory damages proximately caused by Defendants' breach of contract as alleged herein,

9   pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XIII.   EIGHTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (Plaintiff Ruiz against Defendant Aurora Loan Services)

13         223.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

14         224.    This cause of action is brought by Plaintiff Ruiz against Aurora on behalf of himself

15  and all members of the Aurora sub-Class.

16         225.    Plaintiff and Class members entered into written home loan agreements – the

17  contract or Note – with First Magnus, which agreements were subsequently sold or assigned to

18  Countrywide Bank, N.A. and Countrywide Home Loans, Inc.  Aurora serviced or services the loans

19  at issue here and, in that capacity, is responsible for enforcing the provisions of the Notes relevant

20  to this claim and applying Plaintiff's and Class members' payments in the manner required by the

21  notes.

22         226.    The Notes were drafted by Defendants and could not be modified by Plaintiff or

23  Class members due to Defendants' superior bargaining position.  The Notes were offered to

24  Plaintiff and the Class on a take it or leave it basis.  As such, the Notes at issue are contracts of

25  adhesion.  The Notes describes terms and respective obligations applicable to the parties herein.

26         227.    The Notes describes Plaintiff's and Class members' interest rate on the loan as a low

27  interest rate, typically between 1% and 3%.  In addition, as required by federal law, Defendants

28  provided a TILDS concerning the home loan agreement that shows a payment schedule based on

1   that low 1% to 3% interest rate.  For the first three to five years the payment schedule shows that

2   Plaintiff's and Class members' monthly payment obligations to Defendants are the exact payments

3   necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest

4   rate actually charged by Defendants on the loans was the low interest rate promised.

5        228.   Defendants expressly and/or through their conduct and actions impliedly agreed that

6   Plaintiff's and Class members' monthly payment obligations would be sufficient to pay and would

7   be applied to pay both the principal and interest owed on the loans.  Defendants breached this

8   agreement and never applied any of Plaintiff's and Class members' payments to principal.

9        229.   The written payment schedules provided to Plaintiff reinforced the promise that

10  Plaintiff's and Class members' payments would be applied to both principal and interest.  Those

11  scheduled show that the payment amounts owed by Plaintiff and Class members in year one are

12  exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on

13  the loan was the low interest rate promised.  Had the Defendants done as promised, the payments

14  would have been sufficient to pay both principal and interest.

15       230.   Instead, Defendants immediately raised Plaintiff's and Class members' interest rates

16  and applied *no part* of Plaintiff's and Class members' payments to the principal balances on their

17  loans. In fact, because Defendants charged more interest than was agreed to, the payments, as

18  disclosed by Defendants, were insufficient to cover the interest charge, and thus principal balances

19  increased (which is the negative amortization built into the loan).

20       231.   Defendants breached the written contractual agreement by failing to apply any

21  portion of Plaintiff's and Class members' monthly payments towards their principal loan balances.

22       232.   Plaintiff and Class members, on the other hand, did all of the things that the contract

23  required of them.  Plaintiff and Class members made monthly payments in the amount required by

24  the terms of the Note and reflected in the payment schedule prepared by Defendants.

25       233.   As a result of Defendants' breach of the agreement, Plaintiff and Class members

26  have suffered harm.  Plaintiff and Class members have incurred additional charges to their principal

27  loan balance.  Plaintiff and Class members have incurred and will continue to incur additional

28  interest charges on the principal loan balance and surplus interest added to Plaintiff's and Class

members' principal loan balance. Furthermore, Defendants' breach has placed Plaintiff and Class members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiff's and Class members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

234. At all relevant times, there existed a gross inequality of bargaining power between the parties to the Option ARM loan contracts. At all relevant times, Defendants unreasonably and unconscionably exploited their superior bargaining position and foisted upon Plaintiff and Class members extremely harsh, one-sided provisions in the contract, which Plaintiff and Class members were not made aware of and did not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously disclose as alleged herein), and which attempted to severely limit Defendants' obligations under the contracts at the expense of Plaintiff and Class members, as alleged herein. As a result of these extremely harsh, one-sided provisions, including but not limited to the provisions which limit the "teaser" interest rate for one month or less, these provisions are unconscionable and therefore unenforceable.

235. WHEREFORE, Plaintiff and Class members are entitled to declaratory relief, compensatory damages proximately caused by Defendants' breach of contract as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XIV. NINTH CAUSE OF ACTION

### TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (All Plaintiffs against Defendants Countrywide Bank, N.A., Countrywide Home Loans, Inc. and Does 6-10)

236. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

237. Defendants entered into or were the assignees of written agreements with Plaintiffs and Class members based on representations Defendants made directly and indirectly to Plaintiffs and Class members about the terms of their loans.

238. Defendants expressly represented to Plaintiffs and Class members that they would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would have a promised fixed low interest rate for a period of three to five years.

239.    Defendants also represented that if Plaintiffs and Class members made the monthly payments in the amount prescribed by Defendants that no negative amortization would occur. The Note expressly states and/or implies that Plaintiffs' and Class members' monthly payment obligation *will* be applied to pay both principal and interest owed on the loan.

240.    The written payment schedules prepared by Defendants that were applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan pursuant to an amortization schedule based upon the low interest rate promised. If Defendants acted as they promised, the payments would have been sufficient to pay both principal and interest.

241.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rate and applied *no part* of Plaintiffs' and Class members' payments to principal. Moreover, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiffs' and Class members' payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiffs and Class members owed on their homes.

242.    Defendants unfairly interfered with Plaintiffs' and Class members' rights to receive the benefits of the contract. These loans will cost Plaintiffs and Class members thousands of dollars more than represented by Defendants. Plaintiffs and Class members did not receive the fixed low interest rate home loan promised them by Defendants. Defendants have caused Plaintiffs and Class members to lose equity in their homes and therefore have denied Plaintiffs and Class members the enjoyment and security of one of their most important investments.

243.    Plaintiffs and Class members, on the other hand, performed all of the actions that the contract required of them. Plaintiffs and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

244.    At all relevant times, Defendants unreasonably denied Plaintiffs and Class members the benefits promised to them under the terms of the Note, including but not limited to a low interest rate for the first three to five years of the loan, clear and conspicuous disclosure of a payment amount sufficient to pay both principal and interest so as to avoid negative amortization, and the

499 PARK AVENUE
NEW YORK, NY
10022

- 50 -
SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

1  other failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. § 1601, *et*

2  *seq.*, Regulation Z and FRB Commentary, as alleged herein.

3      245.    Knowing the truth and motivated by profit and market share, Defendants have

4  knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging

5  in the acts and/or omissions to mislead and/or deceive Plaintiffs and all others similarly situated as

6  alleged herein.

7      246.    Defendants' breaches, as alleged herein were committed with willful and wanton

8  disregard for whether or not Plaintiffs or Class members would actually receive a home loan that

9  would provide the promised low interest and payment rate for the first three to five years of the loan

10  sufficient to pay both principal and interest.

11      247.    Upon information and belief and at all relevant times, Defendants possessed full

12  knowledge and information concerning the above facts about the Option ARM loans, and otherwise

13  sold these Option ARM loans throughout the United States, including in the State of California.

14      248.    Defendants' placing of their corporate and/or individual profits over the rights of

15  others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were

16  performed on the part of officers, directors, and/or managing agents of each corporate defendant

17  and/or taken with the advance knowledge of the officers, directors, and/or managing agents who

18  authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and

19  complete indifference to and/or conscious disregard for the rights and safety of others, including

20  Plaintiff and Class members.

21      249.    At all relevant times, Defendants' conduct, as alleged herein was malicious,

22  oppressive, and/or fraudulent.

23      250.    As a result of Defendants' conduct, Plaintiffs and Class members have suffered

24  harm.  Plaintiffs and Class members have incurred additional charges to their principal loan

25  balance.  Plaintiffs and Class members have incurred and will continue to incur additional interest

26  charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'

27  principal loan balance.  Furthermore, Defendants' breach has caused and/or otherwise placed

28  Plaintiffs and Class members in danger of losing their homes through foreclosure and, as a direct

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

1   and proximate result of said misconduct, caused Plaintiffs' and Class members' principal loan

2   balances to increase, which has limited these consumers' ability to make their future mortgage

3   payments or obtain alternative home loan financing.

4        251.   WHEREFORE, Plaintiffs and Class members are entitled to declaratory relief, all

5   damages proximately caused by Defendants' breach of the implied covenant of good faith and fair

6   dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as

7   the Court deems just and proper.

8   ## PRAYER FOR RELIEF

9        WHEREFORE, Plaintiffs and Class members pray for judgment against each Defendant,

10   jointly and severally, as follows:

11        A.   An order certifying this case as a class action and appointing Plaintiffs and their

12   counsel to represent the Class;

13        B.   For actual damages according to proof;

14        C.   For compensatory damages as permitted by law;

15        D.   For consequential damages as permitted by law;

16        E.   For statutory damages as permitted by law (against all Defendants other than

17   Homecomings Financial LLC, Washington Mutual Bank and Aurora Loan Services);

18        F.   For punitive damages as permitted by law (against all Defendants other than

19   Homecomings Financial LLC, Washington Mutual Bank and Aurora Loan Services);

20        G.   For rescission (against all Defendants other than Homecomings Financial LLC,

21   Washington Mutual Bank and Aurora Loan Services);

22        H.   For equitable relief, including restitution (against all Defendants other than

23   Homecomings Financial LLC, Washington Mutual Bank and Aurora Loan Services);

24        I.   For restitutionary disgorgement of all profits Defendants (other than Homecomings

25   Financial LLC, Washington Mutual Bank and Aurora Loan Services) obtained as a result of their

26   unfair competition;

27        J.   For interest as permitted by law;

28        K.   For Declaratory Relief;

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

- 52 -

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

1         L.     For a mandatory injunction requiring Defendants to permanently include in every

2 Option ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

3 interest rate on the Note and disclosure statement as required under 12 C.F.R. § 226.17; (ii) clear

4 and conspicuous disclosure in the Note and the disclosure statement that payments on the variable

5 interest rate loan during the initial period at the teaser rate will result in negative amortization and

6 that the principal balance will increase as required under 12 C.F.R. § 226.19; and (iii) clear and

7 conspicuous disclosure that the initial interest rate provided is discounted and does not reflect the

8 actual interest that Plaintiffs and Class members would be paying on the Note;

9         M.    For reasonable attorneys' fees and costs; and

10         N.    For such other relief as is just and proper.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS

DATED:   November 14, 2008

**DREIER LLP**

By: _____

Lee A. Weiss (admitted *pro hac vice*)
lweiss@dreierllp.com
Rebecca Tingey (admitted *pro hac vice*)
rtingey@dreierllp.com
499 Park Avenue
New York, NY 10022
Phone: (212) 328-6100
Fax: (212) 328-6101

**ARBOGAST & BERNS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
David M. Arbogast (SBN 167571)
darbogast@law111.com
19510 Ventura Boulevard, Suite 200
Tarzana, CA 91356
Phone: (818) 961-2000
Fax: (818) 867-4820

**KIESEL BOUCHER LARSON LLP**
Paul R. Kiesel (SBN 119854)
kiesel@kbla.com
Patrick DeBlase (SBN 167138)
deblase@kbla.com
Michael C. Eyerly (SBN 178693)
eyerly@kbla.com
8648 Wilshire Blvd.
Beverly Hills, CA 90211
Phone: (310) 854-4444
Fax: (310) 854-0812

*Attorneys for Plaintiffs*

DREIER LLP
499 PARK AVENUE
NEW YORK, NY
10022

- 54 -

SECOND AMENDED CLASS ACTION COMPLAINT – C-07-04491 JW RS