**E-Filed 7/27/2010**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| BERTHA ROMERO, et al., | Case Number C 07-4491 JF (PVT) |
| Plaintiff, | ORDER[1] GRANTING COUNTRYWIDE DEFENDANTS' |
| v. | MOTION TO DISMISS |
| COUNTRYWIDE BANK, N.A., COUNTRY WIDE HOME LOANS, INC., and DOES 7 through 10 inclusive, | [re: docket no. 95] |
| Defendants. | |

**I. BACKGROUND**

**A. The Loan Documents**

Between June 1, 2005 and December 7, 2006 Plaintiffs Bertha Romero, James Ruiz, Margarita Castro, Teresa Aguilera, Gilbert Gomez, Edward Tenorio, and Donna Tenorio applied for primary residence mortgages through First Magnus.[2]   Third Amended Complaint ("TAC") ¶¶ 2-6.  In each instance, the parties' obligations are governed by a Note and a Truth-in-Lending

---

[1] This disposition is not designated for publication in the official reports.

[2] First Magnus has filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Arizona.  Accordingly, First Magnus no longer is a defendant in this action.

1   Disclosure Statement ("TILDS") (collectively, the "Loan Documents").  Plaintiffs allege that

2   First Magnus provided them with the Loan Documents, but that Defendants Countrywide Bank,

3   N.A. ("Countrywide Bank") and Countrywide Home Loans, Inc. ("CHL") (collectively, "the

4   Countrywide Defendants") "dictated the terms of, selected, pre-approved, and/or drafted" them.

5   *Id.* ¶54(e).  The TAC states that after closing, Plaintiffs' Adjustable Rate Mortgages ("Option

6   ARM loans") were sold to the Countrywide Defendants. *Id.* ¶ 7.

7       With respect to each Option ARM loan, the Note states "I will make a payment every

8   month" and "I will make these payments every month until I have paid all the Principal and

9   Interest and any other charges described below that I may owe under this Note." *Id.*, Exs. 1-5 ¶

10  3(A).[3]  Plaintiffs claim that the TILDS contains an annual percentage rate ("APR") that they

11  anticipated would be the interest rate for the life of the loan, and also provided a payment

12  schedule that purported to reflect the amounts due each month under the loan terms.  *See* TAC

13  Exs. 1-5 ("Your payment schedule will be").  However, Plaintiffs allege that in fact the payment

14  schedule was not based upon or related to the APR listed in their TILDS but rather was based

15  upon a rate specified in the Note that would apply only for the first thirty days. *Id.* ¶ 74-76.

16  Plaintiffs also assert that the only payment amount reflected in the Note was one based upon this

17  "teaser rate." *Id.* ¶ 22, Exs. 1-5, ¶ 3(B).

18      Plaintiffs allege that after the first thirty days, the applicable interest rate for their loans

19  increased so dramatically that the monthly payments they made pursuant to the payment schedule

20  were not even sufficient to cover the monthly interest. *Id.* ¶¶ 23, 26-27, 78.  This led to negative

21

22      [3]  The Court may consider, under the incorporation by reference doctrine, documents that

23  are connected to the loan transaction at issue as to which both Plaintiffs and the Countrywide

    Defendants make unopposed requests for judicial notice.  For purposes of a motion to dismiss

24  under Rule 12(b)(6), the pleadings are deemed to include "documents whose contents are alleged

25  in a complaint and whose authenticity no party questions, but which are not physically attached

    to the pleading." *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *cert. denied*, overruled

26  on other grounds by *Galbraith v. City of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also In

27  re Stac Elcs. Sec. Litig.*, 89 F. 3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of

    documents whose contents are alleged in the complaint may be considered in connection with a

28  motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).  Accordingly, the Court takes judicial

    notice of the copies of Plaintiffs' Loan Documents which are attached to the TAC as exhibits one

    through five.

2

amortization.  *Id.* ¶¶ 23-25.

The TAC claims that the Loan Documents failed to disclose clearly and conspicuously that negative amortization was certain to occur under the terms of the loans, indicating instead that the "Minimum Payment could be less" than the full amount of monthly interest owed.  *Id.* ¶¶ 23-24, 31, Exs. 1-5 ¶3(E).  Along with this allegedly inconspicuous disclosure, the initial monthly payment in the Note and the payment schedule in the TILDS were premised upon a minimum payment that would guarantee negative amortization.  Plaintiffs allege that the combined effect of these misleading statements has resulted in their stated principal balances increasing substantially over time, despite the fact that they have made all of their required payments. *Id.* ¶ 24.

**B. Countrywide's alleged role in the option arm loan origination process**

The TAC asserts that "Countrywide is in the business of...securitizing home mortgage loans by packaging those loans into trusts or other vehicles in order to sell bonds to investors based on the income to be derived from those loans."  *Id.* ¶ 54(a).  Plaintiffs allege that the Countrywide Defendants developed a plan to have third-party originators such as First Magnus sell loans on their behalf in order to increase the number of loans they could securitize.  *Id.* ¶ 54(b).  The TAC alleges that First Magnus agreed with the Countrywide Defendants that it would sell certain Option ARM loans to homeowners and that First Magnus funded those Option ARM loans using monies available to it through its warehouse lines of credit (often provided by the Countrywide Defendants) or through other means.  The Countrywide Defendants then would purchase the loans from the originators. *Id.* ¶ 54(d).   Plaintiffs allege that pursuant to this arrangement, First Magnus would collect fees from the homeowners to whom it sold the Option ARM loans as well as from the Countrywide Defendants, while the Countrywide Defendants would collect revenues through the securitization process and in connection with servicing rights they retained on the loans after the loans were securitized.  *Id.*

Plaintiffs allege that the Countrywide Defendants dictated the terms of, selected, pre-approved, and/or drafted the Loan Documents at issue in this case with the intention that First Magnus would utilize and provide them to Plaintiffs and putative class members in conjunction

3

with originating and selling the Option ARM loans. *Id.* ¶ 54(e). The TAC asserts that the Countrywide Defendants and First Magnus jointly approved the characteristics of the Option ARM loans First Magnus sold to Plaintiffs and that the use of these Loan Documents by First Magnus was a precondition the Countrywide Defendants imposed for purchasing the loans. *Id.* Plaintiffs allege that it was only by using the Loan Documents prepared by and/or pre-approved by the Countrywide Defendants that First Magnus could be assured that it would be able to resell quickly the Option ARM loans it issued to Plaintiffs. *Id.* ¶ 54(g).

**C. Procedural History**

Plaintiff Romero filed her original class action complaint on August 30, 2007, asserting claims under the Truth in Lending Act ("TILA") and California law against First Magnus and Does one through ten. First Magnus did not answer or otherwise respond to the complaint. On October 11, 2007, Romero filed a first amended complaint ("FAC") against First Magnus and Does one through ten asserting the same claims. On December 10, 2007, before First Magnus responded to the FAC, Romero filed a Notice of Bankruptcy Filing by First Magnus. Thereafter, on September 22, 2008, Romero moved for leave to file a second amended complaint ("SAC"), asserting, upon information and belief, that the Countrywide Defendants purchased Plaintiffs' mortgage loans and "serviced or currently services" the mortgage loans of Romero, Castro and the Tenorios. The Court granted the motion.

Romero filed her SAC on November 17, 2008, adding Ruiz, Castro, Aguilera, Gomez and the Tenorios as plaintiffs, deleting First Magnus as a defendant, and naming the Countrywide Defendants, Homecomings Financial LLC, Washington Mutual Bank, Aurora Loan Services, and Does six though ten as additional defendants. On March 9, 2009, Plaintiffs moved for leave to file a third amended complaint. After receipt of that motion, Defendants' counsel advised Plaintiffs' counsel of certain deficiencies in the proposed pleading. On April 20, 2009, Plaintiffs withdrew their motion for leave to file the then-proposed third amended complaint. On July 10, 2009, Plaintiffs filed a new motion for leave to file a revised third amended complaint, asserting, upon information and belief, that First Magnus had sold Plaintiffs' mortgage loans to the Countrywide Defendants. The Court granted that motion on August 21, 2009. Finally, the

4

operative TAC was filed on September 14, 2009 against the Countrywide Defendants and Does

seven through ten, alleging violations of TILA and California's Unfair Competition Law

("UCL"), Bus. & Prof. Code § 17200 *et seq*., as well as a fraudulent omissions claim.  The

Countrywide Defendants, who are the only remaining named defendants, move to dismiss for

failure to state a claim upon which relief may be granted.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

*Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to

dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843,

23 L.Ed.2d 404 (1969). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ---

U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Thus, a court need not accept as

true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted

deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752,

754-755 (9th Cir.1994).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

be cured by amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir.1995). When

amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*,

90 F.3d 386, 393 (9th Cir.1996).

## III. DISCUSSION

### A. General deficiency of Plaintiffs' claims

The Countrywide Defendants contend that all of Plaintiffs' claims are insufficiently pled

because the only allegations that even attempt to connect them to Plaintiffs' loans are:  "that

1  CHL, Countrywide Bank *and/or* one or more of the four unnamed Doe defendants subsequently

2  became a 'purchaser and/or assignee' of the Loans (TAC ¶¶ 9, 12, 16), and. . .CHL *and/or*

3  Countrywide Bank 'selected, preapproved, and/or drafted' some unidentified 'loan and disclosure

4  documents' First Magnus purportedly provided to its borrowers at some unidentified time (*id.* ¶

5  54)." Countrywide Defendants' Motion to Dismiss ("MTD") at 6.

6       However, this is not an entirely accurate characterization of Plaintiffs' allegations.  The

7  TAC also contains a general allegation that *all* defendants, including Countrywide Banks, CHL,

8  and Does seven through ten, subsequently became a purchaser and/or assignee of the loans and

9  that *all* defendants, including Countrywide Banks, CHL and Does seven through ten "selected,

10  preapproved, and/or drafted" some unidentified "loan and disclosure documents."  TAC ¶¶ 54,

11  56.  While these allegations claim that Defendants generally performed these bad acts, they do

12  not, as the Countrywide Defendants contend, fail to allege any cognizable wrongdoing at all.

13      At the same time, Plaintiffs' allegations that *all* Defendants "selected, preapproved,

14  and/or drafted" the Loan Documents that govern the mortgage transactions in dispute are

15  insufficient to meet the"showing" requirement of Rule 8.  Treating disparate parties identically

16  without explanation, as Plaintiffs do throughout the TAC, deprives each individual party of a fair

17  and meaningful opportunity to defend itself.  *Twombly*, 550 U.S. at 553-55.

18      The same pleading deficiencies also infect Plaintiffs' allegations of "selection, pre-

19  approval, and/or drafting" of unspecified "loan and disclosure documents."  These allegations are

20  vague and conclusory in nature.  Plaintiffs never specify if the Countrywide Defendants became

21  purchasers or assignees of the loans, when or whether the purchase or assignment occurred, or

22  what rights or loan documents were purportedly sold.  The Countrywide Defendants also point

23  out that in their SAC, Plaintiffs alleged that Homecomings, Washington Mutual and Aurora were

24  assignees of Plaintiffs loans.  SAC ¶¶ 12-14.  Plaintiffs do not dispute that the TAC is

25  inconsistent with their previous representations as to which entities purportedly had a post-

26  closing connection to their loans.

27      Plaintiffs must plead their factual allegations with enough particularity to put the

28  Countrywide Defendants on notice of the claims asserted against them, and the facts alleged must

6

be specific enough to be more than speculation. *Twombly*, 550 U.S. at 535-55; *Iqbal*, 129 S.Ct. at 1949. Because Plaintiffs may be able to cure these pleading deficiencies by amendment, the Court turns to the Countrywide Defendants' motion as it applies to each of the individual claims.

### B. TILA

Plaintiffs allege that the Loan Documents violate TILA because they failed to disclose clearly and conspicuously 1) the certainty of negative amortization if only the minimum payments were made; 2) the interest rate underlying the payment schedule; 3) that the initial interest rate was discounted; and 4) the actual interest rate.

### 1. Disclosure of the certainty of negative amortization

Plaintiffs allege that the Countrywide Defendants violated 12 C.F.R. § 226.19(b) by failing to disclose that negative amortization was *certain* to occur if they made only the minimum payments shown in their payment schedules. § 226.19 requires that a lender disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). In addition, with respect to variable-rate loans with payment caps, such as Plaintiffs' loans, the Commentary states that "[i]f a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor *must* fully disclose the rules relating to the option, including the effects of exercising the option (*such as [the fact that] negative amortization will occur and the principal loan balance will increase*)." 12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

The Countrywide Defendants argue that the requirements of § 226.19 apply exclusively to the Disclosure, and not to the Note, TILDS or any other document provided in connection with the loan transaction. See Def.'s Mot. to Dismiss at 9-10. The TAC does not allege any defects in the Disclosure[4], but rather asserts that the certainty of the negative amortization is not properly disclosed in the TILDS. TAC ¶ 70. While the Countrywide Defendants' reading of the

---

[4] Plaintiffs' Program Disclosures contain all of the required disclosures concerning negative amortization. For example, Romero's Adjustable Rate Mortgage Program Disclosure states, "If you pay less than the Full Payment, then the payment may not be enough to cover the interest due, and any difference will be added to your principle balance. This means the balance of your loan could increase. This is known as 'negative amortization.'" MTD at 12 n. 1, Exs. D-F.

regulations is not unreasonable, this Court concludes, as it did in *Amparan v. Plaza Home Mortg., Inc.,* 678 F.Supp.2d 961, 969-70 (N.D. Cal. 2008) and *Ralston v. Mortgage Investors Group, Inc.*, 2009 WL 688858, at *4 (N.D. Cal. Mar. 16, 2009), that § 226.19 also applies to the TILDS.  The Staff Commentary to Regulation Z makes clear that *no* disclosure may cause another disclosure to be obscured or made ambiguous. See 12 C.F.R. Pt. 226, Supp. I, ¶ 17(a)(1)-1.  In addition, at least three circuit courts have held that TILA prohibits conflicting or inconsistent disclosures, including situations in which the inconsistency arises from statements in multiple documents. *See, e.g., Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (noting that where a lender provided a borrower with both a correct and an incorrect disclosure, the disclosure was unclear in violation of TILA); *Roberts v. Fleet Bank*, 342 F.3d 260, 267-68 (3d Cir. 2003) (holding that in determining whether a required disclosure is clear, a court may consider other information that the lender provided to the borrower); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1381 (11th Cir. 1984) (stating that description of loan terms in TILA disclosure statement that conflicts with description of loan terms contained in note violates TILA).

District courts therefore have applied the requirements of § 226.19 to loan documents beyond the actual Disclosure, such as note agreements. *See, e.g., Plascencia v. Lending 1st Mortgag*, No. C 07-4485 CW, 2008 WL 1902698, at *4-6 (N.D. Cal. Apr. 28, 2008) (*Plascencia I*) (denying motion to dismiss § 226.19 claim predicated on alleged lack of clarity in note agreement with respect to disclosure of APR and possibility of negative amortization); *Pham v. T.J. Fin., Inc.,* No. CV 08-275 ABC, 2008 WL 3485589, at *2 (C.D. Cal. Aug.11, 2008) (denying motion to dismiss with respect to claim for failure to disclose negative amortization because the "note suggests that negative amortization was a 'possibility' ... but Plaintiff alleges that, under the note, negative amortization was certain to occur").

The Countrywide Defendants also contend that Plaintiffs' negative amortization allegations are belied by the actual terms of Plaintiffs' loans and by the disclosures and Notes provided by First Magnus.  Plaintiffs allege that the Notes treat negative amortization as a mere possibility when in fact it was a certainty if they followed the TILDS Payment Schedule.

8

1    However, the Countrywide Defendants contend that nothing in TILA requires disclosure of that

2    consequence because whether negative amortization occurred would depend on the payment

3    option Plaintiffs selected.[5]   Moreover, they argue that the Notes disclosed expressly that negative

4    amortization would occur *only* if Plaintiffs elected to pay the minimum payment, as opposed to

5    the interest-only or 15- or 30-year amortizing payment. TAC Exs. 1-5, ¶ 3(C), (H).  The

6    Countrywide Defendants argue that it was entirely accurate for First Magnus to disclose that the

7    possibility of negative amortization was just that – a possibility.  In a similar action, the court in

8    *Carroll v. Homecomings Financial LLC*, CV 07-3775 AHS (FMOx) slip op. at 3 (C.D. Cal. Mar.

9    23, 2009) dismissed Plaintiffs claim predicated on a lender's alleged non-disclosure of the

10   certainty of negative amortization, observing that the lender's statement "is technically accurate

11   because plaintiffs could have elected a different payment option which would eliminate negative

12   amortization."

13          However, in almost identical factual scenarios in *Amparan* and *Ralston*, this Court

14   concluded that while the defendant's disclosures might be accurate in the abstract, "there was

15   never a possibility that the payments listed on the Payment Schedule would cover all of the

16   interest at the rate required to repay the loan. Accordingly, Plaintiff may be able to show that the

17   certainty of negative amortization during the first year of the loan, based on the Payment

18   Schedule, rendered Defendant's disclosures incomplete or misleading."  *Amparan,* 678 F.Supp.2d

19   at 972; *see also Ralston*, 2009 WL 688858, at *6 ("A number of courts have recognized the

20   viability of claims for failure clearly and conspicuously to disclose the certainty of negative

21   amortization"), citing  *Mincey v. World Savings Bank*, 614 F.Supp.2d 610, 636-38 (D.S.C.

22

23          [5]   The Countrywide Defendants point to multiple places in the Loan Documents where the

possibility of negative amortization is indicated: (1) the first paragraph of the Note states, in all

24   capital letters, that "the principal amount to repay could be greater than the amount originally

borrowed;" (2) paragraph (3)(c) of the Notes discloses that, "[i]f the minimum payment is not

25   sufficient to cover the amount of the interest due then negative amortization will occur;" TAC,

Ex, 1-5, ¶ 3(c); and (3) a provision in the Notes entitled, "Additions to My Unpaid Principal

26   Balance," states, "my Minimum Payment could be less than...the amount of the interest portion

of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the

27   monthly payment date...For each month that my monthly payment is less than the interest

portion, the Note Holder will subtract the amount of my monthly payment from the amount of

28   the Interest portion and will add the difference to my unpaid Principal." *Id.*, ¶ 3(E).

Aug.15, 2008); *Plascencia I*, 2008 WL 1902698, at *5-6.

### 2. The Payment Schedule

Plaintiffs allege that the Loan Documents violated § 226.17(c) by failing to disclose clearly and conspicuously the interest rate upon which the payment schedule is based, as the payments for the first four to five years of the loan are based not on the APR in the TILDS but rather on an interest rate listed in the Note that Defendants knew would apply to Plaintiffs' loans only for thirty days. TAC ¶¶ 73-76.  § 226.17, which governs the form and content of disclosures, states that "[t]he disclosures shall reflect the terms of the legal obligation between the parties," 12 C.F.R. § 226.17(c)(1), meaning "the credit terms to which the parties are legally bound as of the outset of the transaction," Commentary, 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c) (1)-1. "The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-2.  More specifically, "[t]he Payment Schedule should reflect all components of the finance charge," *id.* ¶ 18(g)-1, and "in a variable rate transaction with ... a discounted or premium rate, disclosure should not be based solely on the initial terms," *id.* ¶ 17(c)(1)-8 (emphasis added).  Plaintiffs have alleged adequately that the Statement contains a payment schedule basing several years of payments on the initial low interest rate and thus does not reflect clearly the legal obligation evidenced by the Note.

### 3. Disclosures that the initial rate was discounted

Plaintiffs allege that the Loan Documents violated TILA by failing to disclose that the initial interest rate was discounted. TAC  ¶¶ 77-78 ("Rather than disclose that the interest rate would increase after only one month, the Loan Documents stated that the initial payment was based on a 'yearly rate' of 1-3.5%.")  A "discounted" rate is one "that is not determined by the index or formula used to make later interest rate adjustments." 12 C.F.R. Pt. 226, Supp. I, ¶ 19(b)(2)(v)-1. "If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact."  *Id.*  Such a disclosure must be "clear[ ] and conspicuous[ ]." 12 C.F.R. § 266.17(a)(1).  Again, in *Ralston* and *Amparan*, this Court addressed identical claims against lenders.  *Ralston,* 2009 WL 688858, at *5, *Amparan*, 678 F.Supp.2d at 971.  As the Court concluded in those cases, Plaintiffs here may be able to prove that Defendants' disclosures, taken

1    as a whole, obscured the nature of the discount.

2        For example, Paragraph 2(A) of Romero's Note states: "I will pay interest at a yearly rate

3    of 1.500%. The interest rate I will pay *may* change." TAC, Ex. 1, ¶ 2(A) (emphasis added).

4    Paragraph 2(B) then states that "[t]he interest rate I will pay may change on the 1st day of May,

5    2006, and on that day every month thereafter." *Id.* ¶ 2(B).  That section of the Note goes on to

6    state that "[e]ach date on which my interest rate could change is called an "Interest Rate Change

7    Date." *Id.*  The following paragraph, ¶ 2(C), states that "[b]eginning with the first Interest Rate

8    Change Date, my adjustable interest rate will be based on an Index." *Id.* ¶ 2(C).  Finally,

9    paragraph ¶ 2(D) states that "[b]efore each Interest Rate Change Date, the Note Holder will

10   calculate my new interest rate by adding THREE AND 450/1000THS percentage point(s)

11   3.450% ("Margin") to the Current Index." *Id.* ¶ 2(D).

12       Because the language of ¶ 2(A) states that the yearly interest rate will be 1.500%, the

13   average consumer might well take this to mean that the 1.500% rate actually would apply for a

14   year or term of years. The language of ¶ 2(B) reinforces this notion, stating that the 1.500%

15   yearly rate "may" or "could" change after a month.  Only if one carefully parses the language of ¶

16   2 does one realize that Defendants are calling the first day of each month an "Interest Rate

17   Change Date," and that on the first such "Interest Rate Change Date" – after the 1.500% rate has

18   been in place for only one month – the rate *will* increase to an "Index" plus "Margin" of 3.450%.

19   Nowhere does the Note, the Disclosure or any of the other loan documents state clearly that "I

20   will pay interest at a yearly rate of 1.500%" actually means "I will pay interest at a discounted

21   yearly rate of 1.500% for one month and after that will pay interest at a significantly higher rate."

22   Accordingly, the Court concludes that Plaintiffs may be able to prove that they were not

23   informed in clear and conspicuous terms that the initial interest rate disclosed in their Note was a

24   discounted rate.

25                        **4. Disclosure of the actual interest rate**

26       Plaintiffs claim that the Countrywide Defendants violated TILA by failing to disclose the

27   true interest rate of their loans.  TAC ¶¶ 79-94.  15 U.S.C. § 1638(a)(4) requires lenders to

28   disclose the cost of a loan to the borrower "as an 'annual percentage rate' using that term." 15

U.S.C. § 1638(a)(4).  TILA defines the term "APR" as the "cost of your credit as a yearly rate." 12 C.F.R. § 226.18(e).  Where, as here, a loan's initial interest rate subsequently is adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." Commentary, 12 C.F.R. Pt. 226.17(C)-6.  Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[ ]" of the APR.  *See also* 12 C.F.R. § 226.18(e).  The disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and conspicuous.  Commentary, 12 C.F.R. Pt. 226.17(a)(1)-1.

Plaintiffs contend that material information was obscured because the APR in each of their Notes conflicted with the APR in the TILDS.  Romero's Note, for example, states "I will pay interest at a yearly rate of 1.500%."  TAC, Ex. 1.  The TILDS states that the APR was 7.505%, describing this figure as the "[t]he cost of your credit as a yearly rate."  However, the Note itself states: "I will pay interest at a yearly rate of 1.500%."  Note ¶ 2(A).  Plaintiffs claim that this inconsistency renders the disclosure of the actual APR unclear and violates § 226.19. Several courts have permitted similar claims.  *See*, *e.g*, *Amparan,* 678 F.Supp.2d at 970-71; *Plascencia I,* 2008 WL 1902698, at *4; *Pham,* 2008 WL 3485589, at *4.

The Countrywide Defendants nonetheless contend that Plaintiffs' non-disclosure claim is untenable based upon detailed interest rate disclosures in their Notes that were not addressed specifically by this Court in *Amparan* and *Ralston*.  Indeed, the Notes bear the title, "ADJUSTABLE RATE NOTE" and contain, in their first paragraph, an express disclosure by First Magnus, in bold-faced, all capital letters, that "THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT." Exs. 1-5 at 1.  In Paragraph 2(A), the Notes disclose (1) the yearly "Interest Rate" the borrower will pay "until the full amount of Principal has been paid," and (2) that the disclosed interest rate is subject to change.  *Id.*, ¶ 2(A).  In Paragraphs 2(B)-(D), the Notes disclose the adjustable rate features of Plaintiffs' loans, including the fact that the interest rate set forth in Paragraph 2(A) is subject to change monthly beginning after the second month of the loan term.  *Id.*, ¶2(B)-(D).

However, while the Court did not cite these provisions specifically in *Amparan* or

12

*Ralston.* the same or similar terms in fact were included in the notes at issue in those cases.  As the Court concluded in *Amparan* and *Ralston*, Plaintiffs successfully allege a material inconsistency in the disclosures and other language in the Note, making the above cited disclosures unclear in violation of § 226.19.[6]

### 5. Assignee Liability

TILA provides for assignee liability if the violation is "apparent on the face of the loan documents."  *Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1163 (S.D. Cal. 2009), citing 15 U.S.C. § 1641(a) (assignee liability lies "only if the violation ... is apparent on the face of the disclosure statement...")  "Although the Ninth Circuit does not appear to have addressed this question, TILA's assignee liability provision has been interpreted by other courts as meaning that a TILA claim may be asserted against an assignee only for 'violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents.'" *White v. Homefield Financial, Inc.*, 545 F.Supp.2d 1159, 1168 (W.D. Wash. 2008), quoting *Taylor v. Quality Hyundai, Inc.,* 150 F.3d 689, 694 (7th Cir. 1998).  The Countrywide Defendants contend that Plaintiffs have failed to plead factual allegations sufficient to implicate assignee liability, but rather plead the opposite – that the purported violations are not of the type that would be apparent to a reasonable person.  The TAC alleges:

> For the Defendants who are in the business of making, purchasing and securitizing loans, the violations of TILA and Regulation Z described in this Complaint are objectively and reasonably apparent on the face of the Loan Documents provided to Plaintiffs and Class Members, because the Loan Documents provided can be determined to be incomplete and inaccurate by a comparison among the Loan Documents.

TAC ¶ 94.  The Countrywide Defendants argue that Plaintiffs thus effectively concede that the

---

[6] All of the information provided to Plaintiffs must be considered in assessing whether the disclosures were clear, conspicuous, and complete.  *See, Handy*, 464 F.3d at 764.  Viewed in isolation, many of the Countrywide Defendants' disclosures were accurate.  However, the information must be viewed in context of how it was disclosed to Plaintiffs.  The Ninth Circuit's holding in *Hauk v. JP Morgan Chase*, 552 F.3d 114, 1121 (9th Cir. 2009) is not to the contrary.  *Hauk* held that a disclosure cannot be rendered misleading by the existence of other information that was neither disclosed nor required by TILA to be disclosed.  Here, as discussed above, the information at issue – negative amortization, the payment schedule, that the interest rate was discounted, and the actual interest rate – was required by TILA to be disclosed.

alleged disclosure violations could not "reasonably... [be] discovered. . ." by a reasonable person. *Id.* ¶ 125.  The Court agrees.

### 6. TILA Rescission Claim

#### a. Ability to Tender

The Countrywide Defendants contend that Plaintiffs' TILA rescission claims are insufficient because Plaintiffs do not plead an ability to tender.  12 C.F.R. § 226.23(d)(3). Although the Ninth Circuit has not addressed the issue directly, it has held that a court may require a borrower seeking rescission of a mortgage transaction under TILA to demonstrate the ability to tender the loan proceeds.  *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1168 (9th Cir. 2003) (holding that it is within a district court's "discretion to condition rescission on tender by the borrower of the property he had received from the lender") (internal quotation marks and citation omitted).

District courts within the circuit are split.  A number of them have extended *Yamamoto* to hold that a claim for rescission under TILA is subject to dismissal at the pleading stage if the borrower fails to allege a present ability to tender the loan proceeds.  *See, e.g., Garcia v. Wachovia Mortg. Corp.,* 676 F.Supp.2d 895, 901-905 (C.D. Cal. 2009); *Del Valle v. Mortg. Bank of California,* No. CV-F-09-1316 OWW/DLB, 2009 WL 3786061, at *8 (E.D. Cal. Nov. 10, 2009); *ING Bank v. Korn,* No. C09-124Z, 2009 WL 1455488, at *1 (W.D. Wash., May 22, 2009); *Garza v. American Home Mortg.*, No. CV F 08-1477 LJO GSA, 2009 WL 188604, at *5 (E.D. Cal. Jan. 27, 2009) (granting motion to dismiss TILA rescission claim in light of complaint's failure to allege ability to tender, since "[r]escission is an empty remedy without [plaintiff]'s ability to pay back what she has received").  However, other courts have held that failure to allege ability to tender is not fatal to a TILA rescission claim.  *See, e.g., Botelho v. U.S. Bank,* 692 F.Supp.2d 1174, 1180-81 (N.D. Cal. 2010); *Singh v. Washington Mut. Bank,* No. C-09-2771 MMC, 2009 WL 2588885, at *4 (N.D. Cal. Aug. 19, 2009) ("Notably, *Yamamoto* does not hold that a claim for rescission cannot survive a motion to dismiss until the right to rescind is adjudicated in the plaintiff's favor."); *ING Bank v. Ahn,* No. C 09-995 THE, 2009 WL 2083965, at *2 (N.D. Cal. July 13, 2009) (noting that "*Yamamoto* did not hold that a district

14

1   court must, as a matter of law, dismiss a case if the ability to tender is not pleaded.  Rather, all of

2   these cases indicate that it is within the trial court's discretion to choose to dismiss where the

3   court concludes that the party seeking rescission is incapable of performance."); *Pelayo v. Home*

4   *Capital Funding,* No. 08-CV-2030 IEG (POR), 2009 WL 1459419, at *7 (S.D. Cal. May 22,

5   2009) (rejecting argument that, under *Yamamoto,* claim for rescission was subject to dismissal

6   where plaintiff "failed to offer tender in the complaint of the funds she borrowed"); *Harrington v.*

7   *Home Capital Funding, Inc.*, No. 08cv1579 BTM (RBB), 2009 WL 514254, at *3 (S.D. Cal.

8   Mar. 2, 2009) (holding "[t]ender by the borrower is not always a precondition to rescission and

9   does not have to be pled to state a claim for rescission"); *Burrows v. Orchid Island TRS, LLC*,

10  No. 07CV1567-BEN (WMC), 2008 WL 744735, at *6 (C.D. Cal. Mar.18, 2008) (rejecting, on

11  motion to dismiss, defendant's argument that "there [was] no evidence" that plaintiff could return

12  loan proceeds).

13          This Court finds the second line of cases more persuasive in that they appear to be more

14  consistent with the liberal pleading standard of Fed. R. Civ. P. 8.  However, the Court agrees

15  with the reasoning of the first line of cases that "it was not the intent of Congress to reduce the

16  mortgage company to an unsecured creditor," *Del Valle*, 2009 WL 3786061 at *8, and that

17  "[r]escission is an empty remedy without [plaintiff]'s ability to pay back what she has received,"

18  *Garza*, 2009 WL 188604 at *5.  Accordingly, the Court will exercise the discretion conferred

19  upon it by *Yamamoto* to require that Plaintiffs allege either the present ability to tender the loan

20  proceeds or the expectation that they will be able to tender within a reasonable time.[7]  At the end

21  of the day, Plaintiffs "will not be entitled to rescission" unless they can tender the principal

22  balance of their loans.  *See Clemens v. J.P. Morgan Chase Nat. Corporate Services, Inc.,* No.

23  09-3365 EMC, 2009 WL 4507742, at *5 (N.D. Cal. Dec. 1, 2009).  It makes little sense to let the

24  instant rescission claim proceed absent some indication that the claim will not simply be

25

26          [7] For example, a TILA plaintiff might be able to allege that while she lacks the liquidity
27  to tender the loan proceeds at the time she files the rescission claim, she has sufficient equity in
    the home and a willingness to sell that would render it likely that she could tender the loan
28  proceeds if given a reasonable period of time.

1  dismissed at the summary judgment stage after needless depletion of the parties' and the Court's

2  resources.

3                          **b. "Material Disclosure" Violation**

4       The Countrywide Defendants also argue that the TAC does not allege any defects in First

5  Magnus' "material" disclosures – a prerequisite to a TILA rescission claim. 12 C.F.R. §

6  226.23(a)(3).  The material disclosures include, "the annual percentage rate, the finance charge,

7  the amount financed, the total of payments, the payment schedule, and the disclosures and

8  limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)."  *Id.*  Consistent with the

9  foregoing discussion, *see supra* III.B.1-4, the Court concludes that this element of Plaintiffs'

10  claim is alleged sufficiently.

11                          **7. Ruiz's TILA Damages Claim**

12       The applicable limitations period for a TILA damages claim is one year, *see* 15 U.S.C. §

13  1640(e).  Plaintiffs concede that any TILA claims for civil damages by Romero, Aguilera,

14  Gomez and the Tenorios are time-barred, but they contend that Ruiz's TILA damages claim is

15  viable.  TAC ¶ 104.  However, the Countrywide Defendants were not named as defendants in this

16  action until November 17, 2008, and Ruiz's argument that the claim relates back to the filing of

17  the original complaint is unpersuasive.

18       Whether a proposed amendment to a complaint relates back to a previous complaint is

19  governed by Fed. R. Civ. P. 15(c).  Rule 15(c)(1) provides that an amended complaint naming a

20  new party relates back to the filing date of the original complaint only if:

21          (A) the law that provides the applicable statute of limitations allows relation back;
            (B) the amendment asserts a claim or defense that arose out of the conduct,

22          transaction, or occurrence set out–or attempted to be set out–in the original
            pleading; or

23          (C) the amendment changes the party or the naming of the party against whom a
            claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided

24          by Rule 4(m) [120 days] for serving the summons and complaint, the party to be
            brought in by amendment:

25              (i) received such notice of the action that it will not be prejudiced in
                defending on the merits; and

26              (ii) knew or should have known that the action would have been brought
                against it, but for a mistake concerning the proper party's identity.

27  Fed. R. Civ. P. 15(c)(1).

28       While the Countrywide Defendants do not contend that Ruiz has failed to satisfy Rule

                                              16

15(c)(1)(A) or (B), they do argue persuasively that Ruiz has failed to satisfy either requirement of Rule 15(c)(1)(C).

**a. Notice**

The TAC alleges no facts tending to show that the Countrywide Defendants actually received notice of Ruiz's claim within the 120-day period specified by Rule 4(m). Instead Ruiz's theory is premised entirely on an alleged pooling and servicing agreement covering the sale of Ruiz's loan to Countrywide in which First Magnus was required to inform Countrywide of the instant lawsuit when it was served with the FAC. TAC ¶ 103. This allegation fails to satisfy Rule 15(c)(1)(C).

First, Plaintiffs do not allege *at all* that the Countrywide Defendants had notice of the lawsuit. Second, the TAC does not allege facts to support a finding that a "community of interest" existed between the Countrywide Defendants and First Magnus. The Ninth Circuit has held that notice to a named defendant will be imputed to an unnamed defendant where there is a "community of interest" between the parties. *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1502-03 (9th Cir. 1994); *see also Bailey v. U.S.*, 289 F.Supp.2d 1197, 1208 (D. Haw. 2003. However, such a community, or identity, of interest exists between two companies only when "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Brink v. First Credit Res.*, 57 F.Supp.2d 848, 854 (D. Ariz. 1999), quoting *G.F.*, 23 F.3d at 1053 (citations omitted). As the court in *Brink* noted, "[t]hat definition applies to a situation in which notice to a subsidiary is imputed to a parent corporation." *Id.*

Plaintiffs do not allege that there is a parent-subsidiary or other similarly close business relationship between the Countrywide Defendants and First Magnus. Instead, Plaintiffs contend that the requisite identity of interest exists because the securitized lending at the heart of this suit was possible only with the support and funding of subsequent assignees that also profited from the improperly originated loans. This conclusory statement is insufficient to support a finding of a community of interest. Plaintiffs do not attach the purported agreement between First Magnus and the Countrywide Defendants to the TAC, do not allege which Countrywide Defendant was a

17

party to that agreement, do not allege the date of the agreement, and do not identify the terms of the agreement that allegedly required First Magnus to notify an unspecified "Countrywide" entity of Ruiz's claim. *See* TAC ¶¶ 96-104.

### b. Mistake

Even if he could satisfy the requirements of Rule 15(c)(1)(C)(i) regarding notice, Ruiz still would have to satisfy subsection (ii), which requires that the unnamed defendant or defendants "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  Plaintiff fails to allege this requirement adequately as well, stating only that knowledge of the identity of the Countrywide Defendants was "exclusively within the control of First Magnus."  TAC ¶ 102.

Even assuming that Ruiz was not *aware* of the Countrywide Defendants' potential liability for alleged violations of TILA, lack of knowledge is not a mistake of the kind required by Rule 15(c)(1)(C)(ii), formerly Rule 15(c)(3)(B).  *Brooks v. ComUnity Lending, Inc.,* No. 5:07-cv- 04501-JF (slip op.) at 10 (N.D. Cal. Sept. 29, 2009), *Butler v. Robar Enters., Inc.*, 208 F.R.D. 621, 623-24 (C.D. Cal. 2002); *see also Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998) ("[F]or a 'John Doe' defendant, there was no 'mistake' in identifying the correct defendant; rather, the problem was not being able to identify that defendant.")  As the TAC contains no other alleged mistake, it fails to meet this requirement for relation back.[8]

---

[8]  Plaintiffs contend that the Court should abandon its holding in *Brooks* and adopt the reasoning in *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 159 (N.D. Cal. 2005).  In that case, the court held that "because plaintiff did not make a tactical choice to exclude defendants, and because defendants 'failed to provide the information sooner', the plaintiff was entitled to amend the complaint to add new defendants." *Id.*, citing *Brink v. First Credit Res.*, 57 F.Supp.2d 848, 853 (D. Ariz. 1999).  However, in *Abels*, the mistakenly unnamed defendant was the true owner of plaintiff's debt.  Thus, it was clear to the court that plaintiff had intended to name the true owner of the debt since the commencement of the action.  The facts of the instant action are distinguishable.  Here, Plaintiffs originally sued First Magnus, the party with whom they entered into mortgage transactions.  Plaintiffs claim that they learned later that the Countrywide Defendants prepared and/or drafted the Loan Documents and are purchasers and/or assignees of the loans.  These alleged new facts may have given rise to Plaintiffs' current litigation theory that the Countrywide Defendants prepared the documents, but they do not show that Plaintiffs were mistaken as to the identity of the owner of their loan.  As discussed previously, Plaintiffs also fail to allege facts that would support a finding that the Countrywide Defendants are assignees of the loans.

18

### 8. The Tenorios' TILA claim for rescission

The Countrywide Defendants contend that the Tenorios' TILA rescission claim also should be dismissed because it is time-barred.  The limitations period for a TILA rescission claim is three years.  15 U.S.C. § 1635(f).  Although the Tenorios' loan closed on June 1, 2005, they were not named as plaintiffs in this case until November 17, 2008.  Plaintiff Romero's initial class action complaint was filed on August 30, 2007, and it contained a rescission claim on behalf of all class members.  Complaint at 29.  However, the Countrywide Defendants were not named in that pleading, but were added at the same time as the Tenorios on November 17, 2008.

The parties dispute whether Romero's initial complaint tolled the statue of limitations for the Tenorios as members of the putative class.  In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of [the] class who would have been members had the suit been permitted to proceed as a class action."  However, "[c]ourts are in uniform agreement that rescission may not be sought on a class-wide basis." *Amparan v. Plaza Home Mortg., Inc.*, 678 F.Supp.2d 961, 979 (N.D. Cal. 2008), citing *Andrews v. Chevy Chase Bank,* 545 F.3d 570, 571 (7th Cir.2008) (holding that "the rescission remedy prescribed by TILA is procedurally and substantively incompatible with the class-action device" and "may not be pursued on a class basis"); *see also  McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 427 (1 st Cir.2007); *James v. Home Constr. Co. of Mobile,* Inc., 621 F.2d 727, 728 (5th Cir.1980).  Accordingly, the Tenorios could not have been members of a purported rescission class tolling the three year statutory time-period.  Moreover, the Ninth Circuit has recognized that "§ 1635 is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three year limitation period." *See Miguel v. Country Funding Corp*., 309 F.3d 1161, 1164 (9th Cir. 2002).  Accordingly, the Tenorios' rescission claim will be dismissed without leave to amend.[9]

---

[9]  Finding in favor of the Tenorios on this point would allow for, "a complaint that was never served on Countrywide, was abandoned by Plaintiffs, and that did not even name the

### C. The Countrywide Defendants' liability for fraudulent omissions in the Loan Documents

The Countrywide Defendants contend that Plaintiffs' fraudulent omissions and UCL claims must be dismissed because the Countrywide Defendants had no duty to disclose information about loans made by another entity, and Plaintiffs do not allege they acted in reliance on the Countrywide Defendants' alleged conduct. Plaintiffs argue that a duty existed because the Countrywide Defendants aided and abetted the alleged misconduct of First Magnus.

To establish an aiding and abetting claim, Plaintiffs must allege that the Countrywide Defendants "[1] *kn[e]w*[] the other's conduct constitute[d] a breach of a duty and [2] g[a]ve[] substantial assistance or encouragement to the other to so act." *In re First Alliance Mortg. Comp.*, 471 F.3d 977, 993 (9th Cir. 2006) (emphasis in original), quoting *Casey v. U.S. Bank National Assn.*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401 (2005) (citation omitted). Thus, Plaintiffs must plead factual allegations that each of the Countrywide Defendants knew of First Magnus' alleged misconduct in advance, knew that the alleged misconduct constituted a breach of duty owed by First Magnus to Plaintiffs, and gave substantial assistance or encouragement to First Magnus to engage in the alleged misconduct as to each of their loans.

The TAC does not specify which Countrywide entity prepared and/or reviewed the unspecified loan documents at issue or which Countrywide entity purchased and/or was assigned Plaintiffs' loans. Such speculative, non-specific allegations are insufficient. *Twombly*, 550 U.S. at 553-55. Plaintiffs also argue that the Countrywide Defendants should be liable for First Magnus' alleged misconduct and omissions as a subsequent assignee. However, for the reasons discussed above, Plaintiffs fail to allege facts that would support a claim of assignee liability against the Countrywide Defendants. These defects may be curable, provided that Plaintiffs can address them consistent with Fed. R. Civ. P. 11.[10]

---

Tenorios as plaintiffs [to] somehow constitute a proper notice of rescission for them under the statute." Reply at 10.

[10] In *Plascencia II,* 583 F.Supp.2d at 1099-1100, Judge Wilken upheld plaintiffs' fraudulent omissions claim against EMC, the assignee of plaintiff's Option ARM loan:

> [T]he complaint...alleges that EMC was engaged in a fraudulent scheme with Lending 1st pursuant to which loans with unfavorable terms were sold to

20

The Countrywide Defendants also contend that Plaintiffs have failed to plead actual reliance.  To plead and prove reliance, a plaintiff need only "establish a complete causal relationship between the alleged [fraudulent omission] and the harm claimed to have resulted therefrom."  *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092 (1993).  "It is not necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct...It is enough that the representation has played a substantial part, and so has been a substantial factor in influencing his decision."  *Engalla v. Permanente Med. Group.* 15 Cal.4th 951, 976-77 (1997).  Plaintiffs can demonstrate reliance by showing that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently."  *Mirkin*, 5 Cal.4th at 1093.

**D.  UCL Claim**

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent."  *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544, 1554 (2007).

For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999); *see also Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  However, such allegations "must state with reasonable particularity the facts

---

customers without those terms being properly disclosed.  EMC then bought, serviced and securitized those loans.  In *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994-95 (9th Cir. 2006), the Ninth Circuit upheld a jury verdict finding a secondary lender liable for fraud based on the "substantial assistance" it provided to a fraudulent scheme by virtue of its role in the securitization of loans that were originated fraudulently.  Although EMC's liability for fraud will ultimately turn on the exact nature of its involvement in the allegedly unlawful lending practices, the allegations in the complaint are sufficient to withstand dismissal at this early stage of the proceedings.

While the Court agrees with this reasoning, it concludes that the allegations of the TAC are too speculative to establish liability by way of substantial assistance.

1  supporting the statutory elements" of the alleged violation.  *Silicon Knights, Inc. v. Crystal*

2  *Dynamics, Inc*., 983 F. Supp. 1303, 1316 (N.D. Cal. 1997), quoting *Khoury v. Maly's of Cal.,*

3  *Inc*., 14 Cal. App. 4th 612, 619 (1993).  Plaintiffs' allegations are insufficient to support this

4  claim for the reasons provided above.  *See supra* III.A, B, C.

5         Plaintiffs also allege a UCL claim accusing Defendants of unfair business practices.  TAC

6  ¶¶ 132-135.  "[A] practice may be deemed unfair even if not specifically proscribed by some

7  other law." *Cel-Tech*, 20 Cal. 4th at 180.  Plaintiffs argue that their allegations satisfy the

8  elements of an unfair business practices claim under *Camacho v. Automobile Club of Southern*

9  *California*, 142 Cal. App. 4th 1394 (2006), in which the court stated that a viable claim for relief

10  may exist if the following conditions are met:  "1) the consumer injury must be substantial; (2)

11  the injury must not be outweighed by any countervailing benefits to consumers or competition;

12  and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.*

13  at 1403.  However, the allegations of the TAC with respect to the role of the Countrywide

14  Defendants in creating the alleged omissions and misleading terms in the Loan Documents are

15  speculative.  Because the TAC does not distinguish between the Countrywide Defendants, the

16  allegations of reliance upon their actions are insufficient as well.

17         Finally, Plaintiffs allege that the Countrywide Defendants violated the UCL's fraud

18  prong.  These allegations must meet the heightened pleading standards of Rule 9(b), which apply

19  to all actions sounding in fraud, including UCL actions.  *See Kearns v. Ford Motor Co.*, 567 F.3d

20  1120, 1125 (9th Cir. 2009).  Accordingly, for the same reasons that the Court found their

21  allegations of fraudulent omissions too speculative and insufficiently specific, Plaintiffs'

22  allegations with respect to their UCL fraud claim also fall short under Rule 9(b).  Plaintiffs do

23  not allege the time, place, and/or specific content of any alleged false representations, nor do they

24  indicate which Countrywide Defendant allegedly made which false statements. *Glen Holly*

25  *Entm't, Inc. v. Tektronic, Inc.,* 100 F.Supp.2d 1086, 1095 (C.D. Cal. 1999) ("Mere conclusory

26  allegations of fraud are insufficient. Statements of time, place, and nature of the fraudulent

27  activities are required, so that defend[ant] can prepare an adequate answer to the allegations."),

28  citing *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987).

1

**E. Preemption of state law claims**

2          Plaintiffs' common-law fraud and UCL claims both are predicated on the Countrywide

3  Defendants' alleged failure to meet their disclosure obligations under TILA.  Defendants disagree

4  strenuously with the holding of this Court and numerous other district courts that TILA does not

5  necessarily preempt state-law claims predicated on violations of TILA. *See, e.g., Amparan v.*

6  *Plaza Home Mortgage, Inc.,* 678 F.Supp.2d at 97-76.  Defendants argue that Plaintiffs' state-law

7  claims are preempted both because they conflict with TILA's substantive requirements and

8  because they "supplement" TILA by providing a more generous limitations period and additional

9  remedies. In propounding these arguments, Defendants rely on *Nava v. Virtualbank*, No. 08-069,

10  2008 WL 2873406 (E.D. Cal. July 16, 2008), in which the district court concluded that

11  TILA-based UCL claims are preempted (1) by 12 C.F.R. § 560.2[11] because that regulation

12  preempts the entire field and (2) by TILA itself because such UCL claims "supplement"

13  impermissibly TILA's remedial scheme.  As explained below, Defendants do not argue that 12

14  C.F.R. § 560.2 applies in the instant case, and properly pled claims for violations of TILA also

15  may serve as the basis for UCL claims, as such claims are inherently consistent with TILA.  To

16  the extent that *Nava* holds that TILA preempts UCL claims that "supplement" TILA's remedial

17  scheme, this Court respectfully disagrees, as "supplementation" is forbidden only in the context

18  of field-preemptive statutes and not in connection with conflict-preemptive statutes such as

19  TILA.

20          **1.  TILA-based state-law claims are consistent with TILA's substantive
                provisions**

21          Following *Silvas v. E\*Trade Mortg. Corp.,* 514 F.3d 1001, 1006 (9th Cir. 2008), *Nava*

22  concluded that TILA-based UCL claims are preempted by 12 C.F.R. § 560.2, a regulation issued

23  by the Office of Thrift Supervision ("OTS") pursuant to the Home Owner's Loan Act ("HOLA").

24  *Nava*, 2008 WL 2873406, at \*7.  In *Silvas*, the Ninth Circuit considered whether certain types of

25  UCL claims premised on alleged TILA violations are preempted by HOLA. 514 F.3d at 1006.

26  HOLA gives the OTS broad authority to issue regulations governing thrifts, and the OTS has

27

28

──────────

[11] As discussed below, 12 C.F.R. § 560.2 is a regulation separate from TILA.

23

1   exercised that authority to declare the "entire field of lending regulation for federal savings

2   associations" preempted.  12 C.F.R. § 560.2(a). The OTS also has provided a list of specific

3   types of state laws that are preempted.  *See* 12 C.F.R. § 560.2(b).  *Silvas* applied the preemption

4   framework contained in the OTS regulations, which calls initially for a determination as to

5   whether the state law in question is among those considered preempted expressly by the

6   regulations.  *See Silvas,* 514 F.3d at 1005, citing OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67

7   (Sept. 30, 1996).  *Silvas* concluded that disclosure-based UCL claims are preempted expressly by

8   12 C.F.R. § 560.2(b).  *Id.* at 1006.  Here, because the OTS regulations are not at issue,

9   Defendants argue that Plaintiff's state-law claims are preempted not by OTS regulations but by

10  TILA itself.

11      TILA's savings clause states expressly that TILA does not preempt any state law unless

12  that law is inconsistent with TILA. 15 U.S.C. § 1610(b).[12]  *Silvas* did not conclude that TILA

13  based state-law claims are preempted by a conflict with TILA 's substantive provisions, and this

14  proposition has been rejected by the majority of district courts that have considered it. In

15  *Plascencia*, the court concluded that UCL claims premised on TILA violations are not

16  necessarily preempted because "[t]he UCL does not, on its face, relate to the disclosure of

17  information in connection with credit transactions, let alone impose disclosure requirements that

18  are different than TILA's in any way." *Plascencia v. Lending 1st Mortgage,* 583 F.Supp.2d 1090,

19  1099 (N.D. Cal. 2008) ("*Plascencia II*" ) (holding that because "[t]he UCL does not mandate

20  additional disclosures that are substantively inconsistent with TILA's, [it] does not bring the UCL

21  within the scope of TILA's preemption provision").  Similarly, in *Quezada v. Loan Center of*

22  *California,* Inc., No. CIV. 08-177 WBS KJM, 2008 WL 5100241, at *4 (E.D. Cal. Nov.26,

23

24      [12]  TILA's preemption clause states that "[e]xcept as provided in subsection (e) of this
25  section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any
    State relating to the disclosure of information in connection with credit transactions, except to the
26  extent that those laws are inconsistent with the provisions of this subchapter and then only to the
    extent of the inconsistency." 15 U.S.C. § 1610(a)(1) (emphasis added). Subsection (e) contains
27  provisions inapplicable in the instant case.

28

2008), the court explained that while "plaintiff's UCL claims are predicated upon TILA violations[,] she does not contend that the UCL required defendants to 'make disclosures' or use 'term[s] or form[s]' that would contradict TILA's requirements."  *See also Black v. Financial Freedom Senior Funding Corp.,* 92 Cal.App.4th 917, 936, 112 Cal.Rptr.2d 445 (2001) ("[A]n inconsistency or contradiction with federal law does not exist merely because the state requires disclosures in addition to those required by and under TILA." (emphasis in the original)).

### 2. TILA-based state-law claims may supplement TILA's framework

Defendants' argument regarding the "supplementation" of TILA's framework rests on a misapplication of *Silvas* and conflates field and conflict preemption. Several district courts have recognized that enforcement of TILA through the UCL may well supplement TILA's framework. *See, e.g., Plascencia II*, 583 F.Supp.2d at 1099 ("[T]he fact that the UCL allows a claim to be brought within four years or may provide remedies not available under TILA ... provides an additional level of protection for consumers."); *In re First Alliance Mortgage Co.,* 280 B.R. 246, 250-51 (C.D. Cal. 2002) ( "Additional penalties ... provide greater protection to consumers. [The UCL] does not provide inconsistent disclosure requirements."); *Quezada*, 2008 WL 5100241, at *5 (concluding that TILA did not preempt the plaintiff's disclosure-based UCL claims).  *Nava* reasons that "plaintiff's UCL claim based on violation of TILA is also preempted by federal law since its application would supplement TILA by changing TILA's framework," 2008 WL 2873406, at *7, citing *Silvas,* 514 F.3d at 1007 n. 3, but the prohibition on supplementing federal statutory schemes with state law applies only to areas in which Congress has occupied the field, *Silvas,* 514 F.3d at 1007 n. 3 ( "When federal law preempts a field, it leaves 'no room for the States to supplement it.'" (emphasis added and citation omitted)).  Unlike the OTS regulations, TILA was not intended to occupy any field. *See, e.g., In re First Alliance Mortg. Co.,* 280 B.R. at 250 ("TILA neither expressly nor impliedly occupies the whole field of regulation."); *Heastie v. Community Bank of Greater Peoria,* 690 F.Supp. 716, 720 (N.D. Ill. 1988) ("Congress did not intend to fully occupy the field regulating such transactions."); *Black*, 92 Cal.App.4th at 937, 112 Cal.Rptr.2d 445 ("TILA preempts only 'inconsistent' state laws, thus implicitly negating occupation of the field.").  Indeed, outside of the shadow cast by HOLA, the Ninth Circuit has

25

held with respect to UCL claims predicated on TILA that the "vitality of [plaintiffs'] claim under the Truth In Lending Act gives vitality as well to their state claim." *Jones v. E*Trade Mortg. Corp.*, 397 F.3d 810, 813 (9th Cir. 2005).

If through their fraudulent omissions and UCL claims Plaintiffs ultimately seek to impose requirements that are inconsistent or contradictory to TILA, the claims indeed will be preempted by TILA. *See Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008) (concluding that disclosures that comply with TILA may not serve as the basis for UCL claims). However, the claims as currently pled are predicated on facts that, if proved, could support a conclusion that Defendants' disclosures did not comply with TILA because they were misleading.

## IV. ORDER

Good cause therefor appearing, the motion to dismiss is GRANTED, with leave to amend except as to the Tenorios' TILA rescission claim.  Any amended complaint shall be filed within thirty (30) days of the date this order is filed.

**IT IS SO ORDERED.**

Dated: 7/27/2010

_____
JEREMY FOGEL
United States District Judge