\*\*E-Filed 2/3/2011\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| BERTHA ROMERO, et al., | Case Number C 07-4491 JF (PVT) |
| Plaintiff, | ORDER[1] DENYING MOTION TO DISMISS |
| v. | [re: docket no. 113] |
| COUNTRY WIDE HOME LOANS, INC., and DOES 7 through 10 inclusive, | |
| Defendants. | |

## I. BACKGROUND

**A. The Loan Documents**

Between June 1, 2005 and December 7, 2006 Plaintiffs Bertha Romero, James Ruiz, Margarita Castro, Teresa Aguilera, Gilbert Gomez, Edward Tenorio, and Donna Tenorio applied for residential mortgages through First Magnus.[2]  Fourth Amended Complaint ("FAC") ¶¶ 3-7. Plaintiffs obtained adjustable rate mortgages ("Option ARMs") that included a promissory note ("Note") and a Truth-in-Lending Disclosure Statement ("TILDS") (collectively, the "Loan

---

[1] This disposition is not designated for publication in the official reports.

[2] First Magnus has filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Arizona and no longer is a defendant in this action.

Case Number C 07-4491 JF (PVT)
ORDER DENYING MOTION TO DISMISS
(JFLC3)

Documents"). Each of the loans offered a low "teaser" interest rate ranging from 1% to 3.5% for the first thirty days; the interest rate then adjusted to the sum of an "index" and a "margin." FAC ¶ 20. Because the margin rate of each loan was higher than the teaser rate, the new rates were guaranteed to be higher than the teaser rate even if the index fell to zero. *Id.* ¶ 23. However, the payment schedule in the TILDS for the first three to five years of the loan was based upon a fully amortizing payment at the lower "teaser" rate. *Id.* ¶ 18. Because of the increase in the ultimate interest rate, the monthly payments described in the Note and TILDS were insufficient to pay all of the interest accruing on the Note after the first month. As a result, negative amortization (the addition of unpaid interest to the loan principal) was certain to occur if Plaintiffs continued to make the disclosed monthly payments. *Id.* ¶ 22. Despite this certainty, the Note disclosed only the possibility of negative amortization, stating that the "Minimum Payment *could be less* than or greater than the amount of the interest portion of the monthly payment." *Id.* ¶ 28, Ex. 1-5, ¶ 3(E) (emphasis added).

Plaintiffs allege that although First Magnus provided them with the Loan Documents, Defendant Countrywide Home Loans, Inc. ("Countrywide") "dictated the terms and pre-approved loan and disclosure terms and documents." *Id.* ¶37(e). After closing, the mortgages were sold to Countrywide. *Id.* ¶ 3-7.

**B. Countrywide's alleged role in the option arm loan origination process**

The FAC asserts that "Countrywide is in the business of . . . securitizing home mortgage loans by packaging those loans into trusts or other vehicles in order to sell bonds to investors based on the income to be derived from those loans." *Id.* ¶ 37(a). Plaintiffs allege that Countrywide and others developed a scheme to have third-party originators such as First Magnus sell loans on their behalf in order to increase the number of loans they could securitize. *Id.* ¶ 37(b). They claim that because First Magnus funded their Option ARM loans using monies borrowed through warehouse lines of credit (including those offered by Countrywide Warehouse Lending, an affiliate of Countrywide Home Loans), its business depended on its ability promptly to resell the loans it originated to institutions like Countrywide. *Id.* ¶ 37(c)-(d).

Plaintiffs allege that Countrywide insisted upon the use of its preapproved loan terms and

documents as a condition to its purchase of their loans. FAC ¶ 37(e). Specifically, they assert that Countrywide made the Loan Documents available to First Magnus, which merely filled in the specific details of their respective loan transactions. *Id.* ¶ 37(f). Countrywide then provided First Magnus with access to Countrywide's secure proprietary website, which identified the specific loan terms Countrywide would accept. *Id.* ¶ 37(g). Under its Loan Purchase Agreement with First Magnus, Countrywide only would purchase loans that were originated using loan and disclosure documents that Countrywide had approved and that complied with underwriting guidelines and rate sheets available on the website. *Id.* ¶ 45, 49.

Plaintiffs also claim that while the Option ARM loan documents it designed and required suggested only a possibility of negative amortization, Countrywide identified the loans as "negative amortization loans" in its prospectus for the sale of mortgage-backed securities. FAC ¶ 51. The "Risk Factors" section of the prospectus explains that

> after the introductory interest rates expire and until the initial annual adjustment to the scheduled monthly payment made by the borrower . . . *the scheduled monthly payment made by the borrower will not be sufficient to pay the amount of interest accruing on the mortgage loan.* . . . If borrowers only make their scheduled monthly payments, a portion of the accrued interest on negatively amortizing loans will become deferred interest.

FAC ¶ 53 (emphasis added).

**C. Procedural History**

On August 30, 2007, Plaintiff Romero filed her original class action complaint, asserting claims against First Magnus under the Truth in Lending Act ("TILA") and California law. First Magnus did not answer or otherwise respond to the complaint. On October 11, 2007, Romero filed a first amended complaint. First Magnus subsequently filed for bankruptcy protection. The Court then granted Plaintiffs' motion for leave to file a second amended complaint adding Ruiz, Castro, Aguilera, Gomez and the Tenorios as plaintiffs, deleting First Magnus as a defendant, and naming Countrywide Bank, N.A., Countrywide Home Loans (collectively, "the Countrywide Defendants"), and Homecomings Financial LLC, Washington Mutual Bank, Aurora Loan Services, and Does six though ten as additional defendants.

On July 10, 2009, Plaintiffs moved for leave to file a third amended complaint asserting, upon information and belief, that First Magnus had sold Plaintiffs' mortgage loans to the

3

1  Countrywide Defendants. The Court granted that motion. The third amended complaint was
2  filed on September 14, 2009 against the Countrywide Defendants and Does seven through ten,
3  alleging violations of TILA and California's Unfair Competition Law ("UCL"), Bus. & Prof.
4  Code § 17200 *et seq.*, as well as a fraudulent omissions claim.

5        The Countrywide Defendants moved to dismiss the third amended complaint for failure
6  to state a claim upon which relief may be granted. The Court granted the motion on the basis
7  that Plaintiffs' factual allegations lacked sufficient particularity to satisfy the requirements of
8  Fed. R. Civ. Pro. 9(b). Order of July 27, 2010 at 6. In particular, the Court concluded that
9  Plaintiffs had not pled with particularity which Countrywide entity "selected, pre-approved,
10 and/or drafted" the loan disclosure documents at issue. *Id.* The Court also found Plaintiffs
11 allegations with respect to the selection, preapproval, or drafting of loan documents by the
12 Countrywide Defendants to be "vague and conclusory in nature." *Id.* Plaintiffs were given leave
13 to amend their pleadings to address these deficiencies.

## II. LEGAL STANDARD

15       "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a
16 cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*
17 *Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to
18 dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in
19 the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). "To
20 survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,
21 to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the
22 plaintiff pleads factual content that allows the court to draw the reasonable inference that the
23 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937,
24 1949,, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007). Thus, a court need not accept
25 as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted
26 deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752,
27 754-755 (9th Cir. 1994).

28

Case Number C 07-4491 JF (PVT)
ORDER DENYING MOTION TO DISMISS
(JFLC3)

### III. DISCUSSION

**A. Countrywide's liability for fraudulent omissions in the Loan Documents**

Under California law, the elements of a common-law claim for fraudulent omission are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007).

**1. Concealment or suppression of a material fact**

Rule 9(b) requires that allegations of fraud be "stated with particularity." The purpose of the rule is to require a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (internal quotation marks and citation removed).

Plaintiffs allege that even though Countrywide knew that negative amortization was certain to occur in Plaintiffs' Option ARM loans, it suppressed that fact by requiring First Magnus to use loan forms and terms that described negative amortization as a mere possibility.[3] Plaintiffs' present pleading specifically identifies the role that Countrywide is alleged to have played in crafting the Loan Documents at issue here. These allegations include the following: "CHL dictated the terms of and pre-approved the loan and disclosure documents, including the Loan Documents at issue in this action, with the intention that First Magnus would provide them

---

[3] As the Court noted with respect to Plaintiffs earlier complaint, this Court as well as others have recognized the viability of claims for failure to disclose clearly and conspicuously the certainty of negative amortization. *See* Order of July 27, 2010 at 9 (quoting *Ralston v. Mortgage Investors Group, Inc.*, No. C 08-536 JF(PVT), 2010 WL 3211931, at *6 (N.D. Cal. Aug. 12, 2010)).

5

to Plaintiffs and Class Members in connection with Option ARM loans originated by First Magnus," FAC ¶ 49; "CHL made the pre-approved loan and disclosure documents available" to First Magnus, *id.* ¶ 37(f), and required the use of "loan and disclosure documents that CHL approved as a condition to CHL's purchase of those loans," *id.* ¶ 49; and "First Magnus was required to comply with CHL's underwriting guidelines and the rate sheets made available to First Magnus on CHL's proprietary, secure website." *Id.* ¶ 37(g).

Countrywide argues these allegations fail to identify the specific terms in their loan documents that Countrywide purportedly dictated, drafted, or preapproved. Defendant's Reply at 3. It contends that Plaintiffs must identify exactly what terms it drafted or pre-approved, how it did so, and when it did so. *Id.* However, Plaintiffs' amended allegations are sufficiently specific to put Countrywide on notice of the particular misconduct that constitutes its alleged fraud.

**2. Duty to disclose**

Countrywide next contends that Plaintiffs' fraudulent omissions and UCL claims must be dismissed because it had no duty to disclose information about loans made by another entity. Plaintiffs argue that a duty existed because Countrywide aided and abetted the alleged misconduct of First Magnus.

To establish an aiding and abetting claim, Plaintiffs must allege that the Countrywide "[1] *kn[e]w*[] the other's conduct constitute[d] a breach of a duty and [2] g[a]ve[] substantial assistance or encouragement to the other to so act." *In re First Alliance Mortg. Comp.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting *Casey v. U.S. Bank National Assn.*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401 (2005) ) (emphasis in original). Thus, Plaintiffs must plead facts tending to show that (1) First Magnus breached a duty it owed to Plaintiffs to disclose omitted facts, (2) Countrywide knew in advance that First Magnus' alleged misconduct constituted a breach of duty, and (3) Countrywide gave substantial assistance or encouragement to First Magnus to engage in the alleged misconduct as to each of their loans.

Countrywide argues first that Plaintiffs have not alleged adequately that First Magnus had a duty to disclose the omitted facts. It contends that under California law a lender owes no

6

fiduciary duty to a borrower because the parties are engaged in an arms length transaction. *Pension Trust Fund of Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002). However, Plaintiffs observe correctly that affirmative representations made in loan documents may give rise to a duty to disclose relevant information. *See Warner Constr. Corp. v. L.A.*, 2 Cal. 3d 285, 294 (1970) ("In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise . . . [where] the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or render his disclosure likely to mislead."); *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997). Plaintiffs allege that "the Loan Documents' partial representations that omitted material facts created a duty to disclose all material facts concerning Plaintiffs' and Class Members' Option ARM loans." FAC ¶ 67. They also assert that First Magnus provided the Loan Documents to them when it originated the loan. *See id.* ¶ 3-7. These factual allegations are sufficient to support a claim that First Magnus owed Plaintiffs a duty to disclose relevant material facts during the loan transaction.

     Next, Countrywide contends that Plaintiffs do not plead sufficient facts to support the conclusion that Countrywide had advance knowledge of First Magnus's omissions or partial representations. It argues that because First Magnus inserted the specific terms of each loan into the loan documents, it is implausible that Countrywide would have known of First Magnus's alleged misconduct. However, Plaintiffs allege that Countrywide *required* that First Magnus use particular loan forms and loan terms on all loans First Magnus intended to resell to Countrywide. FAC ¶ 45. They also allege that through its proprietary website, Countrywide identified "all of the possible loan options offered by Countrywide available to a particular borrower, *including different pricing, documentation requirements, and terms*." FAC ¶ 41 (emphasis added). Plaintiffs thus allege adequately that the statements and omissions at issue were dictated by Countrywide before Plaintiffs' transactions with First Magnus occurred.

     Finally, Countrywide contends that Plaintiffs have not sufficiently alleged that Countrywide provided "substantial assistance" to First Magnus. However, Plaintiffs assert specifically that the Loan Purchasing Agreement, under which Countrywide agreed to buy loans

7

from First Magnus that conformed to its specifications (including loan terms), allowed First Magnus to obtain the warehouse lines of credit it needed to originate Plaintiffs' loans. FAC ¶ 37(i). Countrywide argues that the mere fact that it purchased loans from First Magnus does not rise to the level of substantial assistance, especially where Plaintiffs have not alleged that its was the *only* purchaser of loans made by First Magnus. Countrywide relies upon *In re Software Toolworks, Inc. Securities Litig.*, No. C-90-2906 FMS, 1991 WL 319033, at *3 (N.D. Cal. June 17, 1991), in which the court found that "providing routine investment banking services" in connection with an initial public offering was insufficient to state a claim for aiding and abetting. Here, in contrast, Plaintiffs allege that Countrywide *required* First Magnus use conforming loan terms and disclosures as a condition of the Loan Purchase Agreement. They also allege that it was this particular arrangment that allowed First Magnus to obtain funding for their loans. This Court has found has found similar allegations sufficient to allege aiding and abetting liability. *See, e.g.*, *Ralston*, 2010 WL 3211931, at *8 (concluding that allegations that "Countrywide provided . . . loan originators with substantial assistance in pushing the fraudulent loans by providing lines of credit and guarantees that Countrywide would purchase the Option ARM loans when made" sufficient to state a claim under aiding and abetting).

### 3. Remaining Elements

Plaintiffs allege that Countrywide concealed or suppressed the certainty of negative amortization deliberately, with intent to defraud them and those similarly situated. FAC ¶¶ 51-59; *see* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Plaintiffs also allege that the omitted information was material as to both the interest rate and the amount of payments and that they would not have entered into the loans if the certainty of negative amortization had been disclosed. FAC ¶ 77; *see Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092 (1993) (holding that plaintiffs can demonstrate reliance by showing that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently"). Finally, Plaintiffs allege adequately that they suffered damages, including the loss of equity in their homes. FAC ¶ 78,

### B. UCL Claim

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Plaintiffs claim that Countrywide's conduct violated all three prongs.

Countrywide contends that to the extent that Plaintiffs' UCL claim is based on fraudulent conduct, it fails to meet the heightened pleading standard of Rule 9(b). However, as discussed above, the Court concludes Plaintiffs have stated a claim for fraudulent omission.

### C. Tenorios' Fraudulent Omissions Claim

Countrywide argues that the Tenorios' fraudulent omissions claim should be dismissed as time-barred. It argues that because their claim challenges conduct that occurred at or prior to the inception of their loan, a reasonable person in the Tenorios' position would have discovered the basis of the claim. The Tenorios' loan closed in June 2005, FAC ¶ 7, but they did not file their claim until November 17, 2008. The applicable limitations period is three years. *See* Cal. Code Civ. Pro. § 338(d) (providing that the statute of limitations for common law fraud runs three years from the discovery of the facts constituting fraud).

In its order dated July 27, 2010, the Court discussed whether Romero's initial complaint tolled the statue of limitations for the Tenorios' rescission claim. The Court noted that in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of [the] class who would have been members had the suit been permitted to proceed as a class action." However, this Court also observed that the "the rescission remedy prescribed by TILA is procedurally and substantively incompatible with the class-action device" and "may not be pursued on a class basis." Order of July 27, 2010 at 19 (citing *Amparan v. Plaza Home Mortg., Inc.*, 678 F. Supp.2d 961, 979 (N.D. Cal. 2008)).

The Tenorios' state law claims do not suffer from the same infirmity as their rescission claim. Romero's initial class action complaint was filed August 30, 2007. On November 17, 2008, the complaint was amended to add additional class representatives, including the Tenorios.

"An amendment adding a party plaintiff relates back to the date of the original pleading only when: 1) the original complaint gave adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." *Immigrant Assistance Project of the L.A. County Fed'n of Labor v. INS*, 306 F. 3d 842, 857 (9th Cir. 2001).  Here, the Tenorios' fraud claim relates back to Romero's initial complaint.  The loan documents used in the Tenorios' transaction are identical in all relevant respects to the documents used in the Romero transaction.  Accordingly, the original complaint provided adequate notice of the Tenorios' claims, and there is an identity of interests between Romero and the Tenorios.  As a practical matter, because Countrywide was first named as a defendant in the same pleading that added the Tenorios as plaintiffs, Countrywide could not have been prejudiced by the addition of the Tenorios as class representatives in November 2008 rather than August of 2007.

## IV. ORDER

Good cause therefor appearing, the motion to dismiss is DENIED.[4]  Countrywide shall file its answer within thirty (30) days of the date this order is filed.

**IT IS SO ORDERED.**

Dated: February 3, 2011

_____
JEREMY FOGEL
United States District Judge

---

[4] The Court previously dismissed the Tenorios' rescission claim.

10

Case Number C 07-4491 JF (PVT)
ORDER DENYING MOTION TO DISMISS
(JFLC3)